# EXHIBIT 21

| | |
|---|---|
| **From:** | Blake, Sam |
| **Sent:** | Monday, September 20, 2021 12:02 PM |
| **To:** | Russell.Mangas@lw.com; #Comet_XPPower |
| **Cc:** | xppowerlitigation.lwteam@lw.com |
| **Subject:** | RE: Comet v XP - Malackowski Report |

Russ,

XP's request that Mr. Malackowski withdraw portions of his expert report six weeks after the report was served and two weeks after XP's own damages expert served her rebuttal report is both unfounded and untimely. Mr. Malackowski does not rely on information that was not made available to XP during discovery. As XP acknowledges, Mr. Grede was designated on topic 37 regarding "[a]ll facts relating to your investment of time, money, and resources, including your research and development expenses and any studies or analysis of such costs, relating to the Alleged Comet Information." Indeed, Comet designated Mr. Grede on this topic specifically in response to XP's follow-up from Mr. Pfeiffer's deposition and consistent with Comet's representation at Mr. Pfeiffer's deposition that it would do so. And when Comet designated Mr. Grede on topic 37 (along with topics 29, 30, and 36), Comet specifically stated that Mr. Grede would "be prepared to explain how the project codes relate to Comet's trade secrets." July 6, 2021 Email from P. Park to D. Tauber. To facilitate XP's questioning on this topic, Comet provided an interrogatory response on July 27, 2021, prior to Mr. Grede's deposition that set forth, among other things, the relationship between Comet's project codes in its R&D costs-tracking spreadsheets and the asserted trade secrets. *See* Plaintiffs' Supp. Objections and Resps. to Interrogatory No. 7, July 27, 2021 at 15-19. At Mr. Grede's deposition, Mr. Grede testified that he spoke with Mr. Russell in preparation for his deposition, including with respect to Comet's R&D projects. Grede Tr. at 11-12. Although XP now attempts to argue that Mr. Grede was unprepared to testify on this topic, XP did not ask Mr. Grede any questions about Comet's R&D project codes. XP also failed to ask Mr. Grede about Comet's interrogatory response or even mark the document as an exhibit. Moreover, the testimony to which XP now points relates to two questions about a single, specific agreement between ▓▓▓▓▓▓▓ not how the cost codes were allocated to Comet's trade secrets. Grede Tr. at 279:15-282:12 ("I think this is within the scope of the 30(b)(6) topics about the development of the generator. So two questions: The first one is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And then, second, . . . if he could be able to find out how much this project cost, we think both of those are within the scope of the topics.").

XP's reference to Mr. Russell's testimony is also misleading. Mr. Russell explained that Comet did not have annual budgets for its R&D but rather worked on approval of costs. Russell Tr. at 123. Mr. Yeh then asked Mr. Russell if he had "a rough understanding of . . . how much money Doug's group was spending, you know, on a year-to-year basis." Russell Tr. at 123:23-124:2. Mr. Park appropriately objected that Mr. Yeh's question was outside of the scope of XP's topic 47, which was limited to: "All facts known to Comet about Beuerman's projects and budget *at XP*." As Mr. Park explained to Mr. Yeh after Mr. Yeh asserted that he thought there was "a typo" in the topic, Mr. Park had addressed the very topic with Ms. Young and Ms. Tauber who confirmed that the topic was related to Mr. Beuerman's budget at XP. Russell Tr. at 124:3-125:9. Mr. Yeh then changed his line of questioning from Mr. Beuerman's role at Comet to ask about Mr. Beuerman's budget at XP. Russell Tr. at 125:10-25.

Accordingly, we disagree that Mr. Malackowski's expert report relies on information not made available during discovery, and XP identifies nothing to demonstrate otherwise. Moreover, as mentioned above, your request that Mr. Malackowski withdraw portions of his expert report comes six weeks after opening reports were served and two weeks after XP served its rebuttal expert reports. XP's delay in raising this issue belies its claim that it needed additional information in order to rebut Comet's theories.

Best,
-Sam

**Samuel Blake**

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

**KIRKLAND & ELLIS LLP**
555 South Flower Street, Los Angeles, CA 90071
**T** +1 213 680 8115 **M** +1 213 479 1668
**F** +1 213 680 8500

2049 Century Park East, 1400 N, Los Angeles, CA 90067
**F** +1 310 552 5900

[Samuel.blake@kirkland.com](mailto:Samuel.blake@kirkland.com)

**From:** Russell.Mangas@lw.com <Russell.Mangas@lw.com>
**Sent:** Friday, September 17, 2021 8:36 AM
**To:** #Comet_XPPower <Comet_XPPower@kirkland.com>
**Cc:** xppowerlitigation.lwteam@lw.com
**Subject:** Comet v XP - Malackowski Report

 **> This message is from an EXTERNAL SENDER - be cautious, particularly with links and attachments.**

Counsel:

I write regarding the reliance of Comet's expert, Mr. Malackowski, on discussions with Mr. Gary Russell in his expert report.

In that report, Mr. Malackowski relies on discussions with Mr. Russell to determine the costs involved in developing Comet trade secrets, information which Comet's corporate representative(s) were not prepared to provide to XP at their depositions. As you know, Mr. Pfieffer was designated to discuss Topic 37, which includes "[a]ll facts relating to your investment of time, money, and resources, including your research and development expenses and any studies or analysis of such costs, relating to the Alleged Comet Information."

During his deposition, Mr. Pfeiffer was not prepared to answer questions regarding the relationship between development costs and specific alleged trade secrets and a variety of other topics. *See, e.g.,* 64:24-65:4; 123:2-17; 197-24:198:7; 215:13-217:8. Specifically, When Mr. Pfieffer was asked whether there is a way to correlate development project costs specifically to each of the alleged trade secrets, Mr. Pfieffer testified that this "is more a question on the R & D side." Pfieffer Tr. 51:3-13. Ms. Schmidt then agreed on the record that Comet would "provide witnesses who can provide more specifics on, you know, like the trade secrets, how they relate to the investments, as an example." 230:29-25. Thereafter, Comet redesignated Mr. Grede as its corporate representative for Topic 37. *See* July 14, 2021 Email from P. Park to D. Tauber.

Mr. Grede, however, was also unprepared to answer questions on this topic. For example, when asked "roughly how much ██████ development project cost Comet," Mr. Grede did not know and stated that Mr. Pfieffer would be a better witness to ask. Grede Tr. at 276:22-278:10. When Mr. Yeh noted on the record that Mr. Pfieffer was unprepared to answer questions on this topic for which he was the corporate representative, Mr. Calhoun objected that Mr. Yeh's questions were too specific. Id. at 279:15-282:12. Mr. Calhoun's objection is belied, however, by the fact that Mr. Russell apparently provided information with that level of specificity, including a detailed accounting of the R&D costs and project codes that went into developing each of Comet's alleged trade secrets ████████████████████ ████████████████████████████████████ *See, e.g.*, Malackowski Rpt. at 44 ("Appendix 5.2.2 summarizes the annual costs recorded to the individual R&D projects Mr. Russell identified as contributing to the development of the ████████████ Asserted Trade Secret (A)." *See also id.* at pages 23, 25-26 (describing how ████████ "leverages years of development and knowledge"). Notably, when Mr. Russell was asked a question regarding budgeting and costs, Mr. Park objected to the scope of the question. *See* Russell Tr. 123:23-124:3.

Comet's experts cannot rely on information that Comet refused to provide in discovery. *See, e.g., Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 3155574, at *3-7 (N.D. Cal. Aug. 2, 2012) (denying motion for relief from order striking portions of expert reports that relied on evidence not disclosed during discovery). Therefore, please confirm that Comet will withdraw those portions of Mr. Malackowski's report that rely on any discussion with Mr. Russell relating to Comet's cost to develop its alleged trade secrets. If Comet refuses to do so, XP Power reserves the right to move to strike the portions of Mr. Malackowski's opinions that rely on that information.

Regards,

**Russell Mangas**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7697
Fax: +1.312.993.9767
Email: russell.mangas@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.