1
2
3
4
5
6
7             UNITED STATES DISTRICT COURT

8           NORTHERN DISTRICT OF CALIFORNIA

9

10  COMET TECHNOLOGIES USA INC.,        Case No. 20-cv-06408-NC
    and others,
11                                      **ORDER GRANTING PLAINTIFFS'**
                 Plaintiffs,            **MOTION FOR PARTIAL**
12                                      **SUMMARY JUDGMENT AND**
           v.                           **DENYING DEFENDANT'S**
13                                      **MOTION FOR SUMMARY**
                                        **JUDGMENT**
14  XP POWER LLC,
                                        Re:  ECF 111, 121
15               Defendant.

16

17        Before the Court are Plaintiffs' Motion for Partial Summary Judgment, ECF 121, and

18  Defendant's Motion for Summary Judgment, ECF 111.  In the Motion for Partial Summary

19  Judgment, Plaintiff asks the Court to conclude that the Defendant's unclean hands affirmative

20  defense fails as a matter of law, and that no genuine dispute of material fact remains about it. In

21  the Motion for Summary Judgment, Defendant moves for judgment on the trade secrets

22  misappropriation claims under the Defend Trade Secrets Act (DTSA), as well as the California

23  Uniform Trade Secrets Act (CUTSA).  Defendant further seeks a judgment that Plaintiff does not

24  own certain contested trade secrets, and therefore cannot recover for any misappropriation of those

25  secrets.  For the reasons discussed below, Plaintiffs' Motion is GRANTED and Defendant's

26  Motion is DENIED.

27  **I.      BACKGROUND**

28        Unless otherwise noted, the following facts are undisputed.  In 2017, XP, which had

*(left margin, rotated)* United States District Court Northern District of California

traditionally sold AC/DC power supplies and DC/DC converters, sought to enter the RF generator and matching network market.  ECF 123-4 (D. Penny Dep. Tr.) at 324:24–327:12.  XP acquired a small RF power company called Comdel but realized shortly thereafter that Comdel did not have a meaningful market share in the RF market.  *Id.*; ECF 1 ¶ 4.  In late 2017, XP began the process of hiring several of competitor Comet's lead RF engineers, Doug Beuerman, Chris Mason, and Eiji Mori.  *Id.* ¶ 5.  Beuerman, Mason, and Mori received job offers from XP.  *Id.*  In the weeks leading up to Beuerman, Mason, and Mori's departure from Comet, Comet became aware that Mr. Beuerman was accessing and downloading certain confidential and proprietary materials from Comet's document repository.  ECF 122-4 (R. Jardim Dep. Tr.) at 85:2–86:9; ECF 1 ¶¶ 55-58.

On January 23, 2018, Michael Kammerer, President of Comet's Plasma Control Technologies Group, was notified by one of Comet's chief engineers, that Mr. Beuerman had been "intensively active on Confluence and downloaded a lot" of Comet confidential information.  ECF 122-5 at 2.  After this discovery, Comet analyzed Mr. Mason's Comet laptop to determine whether Mr. Beuerman had accessed information from Mr. Mason's computer, and in the process discovered evidence certain of Mr. Mason's materials were downloaded onto external drives.  ECF 122-4 at 95:7–97:17.  Comet later learned that Beuerman and Mason had also downloaded certain Comet information.  Thereafter, Comet engaged a third-party to conduct a forensic search of Mr. Mori's Comet laptop for any evidence of additional downloads.  *Id.* at 142:16–147:19.

Comet confronted Beuerman in his exit interview about accessing and viewing Comet's proprietary information.  ECF 1 ¶ 83.  In response, during that exit interview, Mr. Beuerman assured Comet that he had only downloaded them onto his work laptop and no other devices.  *Id.*  He also did not inform Comet of his intention to work at XP.  *Id.*  Mason and Mori made similar representations to Comet in their exit interviews, and each also executed a certification attesting to them.  ECF 122-7 (Mason's Termination Certification); ECF 122-8.  (Mori's Termination Certification). Comet discovered that between January 14 and 26, 2018, Mr. Beuerman had in fact used external memory devices to take Comet's trade secret materials.  *Id.* ¶ 86, 87.

Thereafter, Comet filed suit against Beuerman.  CAND Case No. 18-cv-01441-LHK.  On May 17, 2018, based on additional investigation and analysis, Comet amended its Complaint to

1    add claims of trade secret misappropriation against Mason and Mori, *Id.* at ECF 34, and amended

2    again on November 1, 2018 to add such claims against XP. *Id.* at ECF 60. Litigation in that case

3    continued until early 2019, when the parties jointly stipulated to dismiss the action without

4    prejudice in order to pursue mediation. *Id.* at ECF 89. The mediation efforts were unsuccessful,

5    and Comet filed the instant action against XP on September 11, 2020. ECF 1.

6          In its Answer to Comet's Complaint, XP raised sixteen affirmative defenses. *See* ECF 13

7    at 13–15. XP's third affirmative defense is titled "unclean hands." The only allegation in support

8    of that defense included in the Answer is the claim that Comet had allegedly engaged in "attempts

9    at stifling fair competition." *Id.* at 13. No explanation or factual basis for that claim is provided.

10         On February 26, 2021, Comet served its first set of interrogatories on XP. Interrogatory

11   No. 1 requested that XP "[i]dentify all factual and legal bases for XP's Affirmative Defenses in

12   this case." ECF 121-19 (Comet's Feb. 26, 2021 First Set of Interrogatories to Defendant) at 7.

13   XP's response stated the following as the basis for its unclean hands defense: (i) Comet's alleged

14   "attempt at stifling fair competition" and (ii) Comet's alleged "deliberate failure to mitigate based

15   on Mr. Beuerman's exit interview and departure from Comet as discussed above." ECF 123-3

16   (XP's Mar. 29, 2021 Resp. to Comet's Interrogatory No. 1) at 8.

17         Above that, with reference to affirmative defenses other than "unclean hands" (including

18   estoppel and waiver, which XP has now dropped), XP stated that Comet "failed to retrieve

19   information from Mr. Beuerman that it was aware Mr. Beuerman had downloaded prior to his

20   departure from Comet," and as such Comet "failed to take reasonable efforts to protect their

21   alleged trade secret information . . . [and] further concealed their position that [Comet] believed

22   Mr. Beuerman, Mr. Mori and Mr. Mason's alleged actions constituted trade secret

23   misappropriation." *Id.* On May 5, 2021, XP supplemented its response to Comet's first

24   interrogatory, but added nothing to support its unclean hands defense, lumping the words "unclean

25   hands" into a section heading also referring to seven other defenses (including several now

26   dropped), but never mentioning "unclean hands" in the body of the supplemental response, which

27   simply referred to the contention that Comet "was aware of all of Mr. Beuerman's [and Mr. Mason

28   and Mori's] alleged actions before [they] left Comet and started working at XP." In response on

United States District Court
Northern District of California

3

1    Summary Judgment, XP asserts that Comet's own practice of hiring competitors constitutes

2    unclean hands.  ECF 174 at 3.

3    **II.    LEGAL STANDARD**

4         Summary judgment may be granted only when, drawing all inferences, and resolving all

5    doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed.

6    R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S.

7    317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the

8    outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about

9    a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

10   the nonmoving party."  *Id.*  Bald assertions that genuine issues of material fact exist are

11   insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

12        The moving party bears the burden of identifying those portions of the pleadings,

13   discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*,

14   477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go

15   beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that

16   a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*,

17   897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.

18   1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the

19   nonmoving party.  *Tolan*, 572 U.S. 651 (citing *Liberty Lobby*, 477 U.S. at 255).

20   **III.   DISCUSSION**

21        A.    Plaintiffs' Motion for Partial Summary Judgment

22        Comet moves for partial summary judgment, arguing that XP's unclean hands defense fails

23   as a matter of law, and that no genuine disputes of material fact remain about it.  Specifically,

24   Comet argues that XP has not identified any evidence of alleged bad faith by Comet, let alone any

25   bad faith conduct with an immediate and necessary relationship to the remedies in this case, or that

26   proximately caused any legally cognizable injury.  Instead, XP's true argument is that Comet's

27   claims are unwarranted, which is inadequate to establish unclean hands. Comet further argues that

28   the scope and factual basis of XP's "unclean hands" theory has changed since discovery and

United States District Court
Northern District of California

4

1    should be rejected for that reason. Further, to the extent that "unclean hands" was raised in

2    discovery, it was about stifling unfair competition and failure to mitigate harm from Beuerman's

3    alleged misappropriation. By contrast, the claim as briefed here focuses on Comet's hiring

4    practices.  This does not give Comet adequate notice or an opportunity to respond.  ECF 121 at 7.

5        XP responds that Comet engages, and has engaged in, the same type of misconduct that it

6    now accuses XP of engaging in by hiring employees from competitors.  According to XP, Comet's

7    inequitable conduct immediately relates to the subject matter of its claims.  XP further argues that

8    it does not need to show that it was actually harmed by the practice.  ECF 174-2.

9        The Court concludes that the unclean hands defense raised by XP against Comet fails as a

10   matter of law, and that no genuine dispute of material fact remains about it.  To prove unclean

11   hands, a defendant must demonstrate that (1) the plaintiff engaged in unconscionable, bad faith, or

12   inequitable conduct, and (2) the plaintiff's conduct directly relates to the claim which it has

13   asserted against the defendant.  *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip.*

14   *(Shanghai) Co.,* 2009 WL 10709718, at *2 (N.D. Cal. Nov. 24, 2009) (internal citations omitted).

15   A defendant must also show injury.  *See, RingCentral, Inc. v. Nextiva, Inc.*, 2021 WL 2476879, at

16   *5 (N.D. Cal. June 17, 2021) ("RingCentral must also show that Nextiva's inequitable conduct

17   caused injury.") (internal quotation marks and brackets omitted).

18       The Court agrees that the bases for and scope of the unclean hand defense has shifted to

19   some extent since discovery.  Nonetheless, the Court concludes that no offered basis gives rise to

20   unclean hands, and the affirmative defense fails as a matter of law.  The Court will briefly address

21   each alleged basis.

22       XP first accuses Comet in its Answer of "attempts at stifling fair competition." ECF 13 at

23   13, Third Aff. Defense. This basis is easily done away with.  First, XP never identifies precisely

24   what it believed Comet did to stifle competition.  Second, to the extent the XP suggests that Comet

25   stifles fair competition in filing this lawsuit, Plaintiffs' motive for filing the suit is not relevant to

26   the unclean hands defense. *See, id.* at *3 (so holding).

27       With respect to the hiring patterns allegedly employed by Comet, the argument appears to

28   be that the practices undertaken by Comet are parallel to those that it accuses XP of, not that the

1    two practices are actually intertwined. 174-2 at 3. *See, e.g., Applied Materials, Inc. v. Advanced*

2    *Micro-Fabrication Equip. (Shanghai) Co.,* 2009 WL 10709718 (N.D. Cal. Nov. 24, 2009*)* (it is

3    not enough that the alleged misconduct "pertain[s] to the very subject matter" of the litigation, it

4    must also "affect the equitable relations between the litigants"). XP is also not specific about

5    when the alleged similar hiring practices took place or what they consisted of, without more, the

6    Court cannot conclude that this constituted unclean hands. Also, without more, it is impossible to

7    assess whether XP was injured by the similar hiring practices it attributes to Comet.

8         B.    Defendant's Summary Judgment-Trade Secret Misappropriation

9         Under both the CUTSA and DTSA, trade secret misappropriation requires either (i) the

10   acquisition "by a person who knows or has reason to know that the trade secret was acquired by

11   improper means," or (ii) "disclosure or use of a trade secret . . . by a person who [] used improper

12   means to acquire knowledge of the trade secret," or "knew or had reason to know that the

13   knowledge" was gained through a person who had improperly acquired it or owed a duty to

14   maintain its secrecy. Cal. Civ. Code § 3246.1(b)(1); 18 U.S.C. § 1839(5).

15        XP moves for summary judgment, arguing that Comet has not met its burden to show a

16   genuine dispute of material fact as to misappropriation. ECF 111. Specifically, XP argues that

17   there is no evidence that XP ever acquired or used documents obtained from Comet. *Id.* at 15-16.

18   Although it is undisputed that the Comet employees possessed documents from Comet, they were

19   on those employees' personal devices and there is no evidence that they were disclosed to anyone

20   at XP. *Id.* at 15-16. *Applied Materials, Inc.* 2009 U.S. Dist. LEXIS 147126 *20-21 ("[a]lthough it

21   is undisputed that the files in question remain in [defendants'] possession, a showing of something

22   more than mere possession is necessary for a trade secret misappropriation claim."). XP also

23   asserts that Comet did not designate its trade secrets with adequate particularity, ECF 111 at 17,

24   and that Comet did not own all the disputed trade secrets. ECF 111 at 22.

25        Comet responds that there is substantial evidence suggests that XP employees did access

26   Comet documents listed in Appendix A in developing XP products. ECF 173 at 9; ECF 113-2,

27   Shanfield Decl. ¶¶ 423-25. Having reviewed the record, the Court concludes that there is

28   significant evidence from which a reasonable trier of fact could conclude that XP accessed and

United States District Court
Northern District of California

1   used Comet trade secrets to develop XP products. *See, e.g., id.* (concluding that XP did access

2   Comet trade secrets); ECF 183-45 (Ex. C - Faulkner Reply Report) at 28, 29, 32-35 (same).  That

3   evidence alone defeats summary judgment for XP.

4          Finally, XP requests summary judgment with regard to the trade secrets that it asserts

5   Comet did not own.  ECF 122 at 17.  A plaintiff cannot recover for an alleged misappropriation of

6   something- here a trade secret- that the plaintiff never owned.  *Intellisoft, Ltd. v. Acer Am. Corp.*

7   No. 1 7-cv-06272-PJH, 2018 U.S. Dist. LEXIS 206508, at *7 (N.D. Cal. Dec. 6, 2018) (vacated on

8   other grounds); *see also Cal. Police Activities League v. Cal. Police Youth Charities, Inc*., No. 08-

9   1991, 2009 U.S. Dist. LEXIS 20507, at *11 (N.D. Cal. Mar. 3, 2009) (dismissing action where

10   plaintiff failed to allege "the factual basis of ownership of the trade secret.").  The Court concludes

11   that, at minimum, genuine disputes of material fact exist as to ownership of the disputed trade

12   secrets.  In this posture, it is XP's burden to show that no reasonable trier of fact could find that

13   Comet owned the disputed trade secrets. XP has not carried that burden here. ECF 173.

14   Accordingly, XP's motion for summary judgment is DENIED.

15   **IV.    CONCLUSION**

16          Comet's Motion for Partial Summary Judgment on XP's affirmative defense of unclean

17   hands is GRANTED.  XP's Motion for Summary Judgment as to trade secret misappropriation is

18   DENIED.

19          **IT IS SO ORDERED.**

20   Dated:  February 7, 2022                    _____

21                                              NATHANAEL M. COUSINS
                                                United States Magistrate Judge

22

23

24

25

26

27

28