Adam Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay S. Deoras (SBN: 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Sharre Lotfollahi (SBN: 258913)
slotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Leslie M. Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (213)446-4900

Attorneys for Plaintiffs COMET TECHNOLOGIES
USA INC., COMET AG AND YXLON
INTERNATIONAL GmbH

Joseph B. Farrell (SBN: 137435)
joe.farrell@lw.com
Thomas W. Yeh (SBN: 287118)
thomas.yeh@lw.com
Dixie C. Tauber (Bar No. 321692)
dixie.tauber@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Patricia Young (SBN: 291265)
patricia.young@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
Russell Mangas (*pro hac vice*)
russell.mangas@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant XP POWER LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

COMET TECHNOLOGIES USA INC., a
Delaware corporation, COMET AG, a Swiss
corporation, and YXLON INTERNATIONAL
GmbH, a German corporation,

       Plaintiffs,

    v.

XP POWER LLC, a California Limited Liability
Company,

       Defendant.

CASE NO. 5:20-CV-06408-NC

**JOINT PRETRIAL STATEMENT**

# TABLE OF CONTENTS

Page

I.      SUBSTANCE OF THE ACTION ................................................................................ 1

II.     RELIEF REQUESTED .............................................................................................. 3

III.    UNDISPUTED FACTS .............................................................................................. 4

IV.     DISPUTED FACTUAL ISSUES ................................................................................ 5

V.      STIPULATIONS ....................................................................................................... 6

VI.     FACT WITNESS LIST ............................................................................................. 9

VII.    EXPERT WITNESS LIST ....................................................................................... 21

VIII.   EXHIBITS AND SCHEDULES ............................................................................... 22

IX.     DISPUTED LEGAL ISSUES ................................................................................... 22

X.      PENDING MOTIONS OR MATTERS ..................................................................... 24

XI.     USE OF DISCOVERY RESPONSES ....................................................................... 24

XII.    ESTIMATE OF TRIAL TIME ................................................................................ 24

XIII.   SETTLEMENT DISCUSSIONS .............................................................................. 25

XIV.    VOIR DIRE QUESTIONS ...................................................................................... 25

XV.     MISCELLANEOUS ................................................................................................ 25

## I.      SUBSTANCE OF THE ACTION

COMET TECHNOLOGIES USA INC. ("Comet USA"), Comet AG ("Comet AG"), and YXLON International GmbH ("YXLON") (collectively, "Comet" or "Plaintiffs") allege that XP Power LLC ("XP" or "Defendant") misappropriated trade secrets related to Comet's RF power generators and RF matching networks.  XP denies that Comet is claiming any legally protectable trade secrets and that it misappropriated any such alleged trade secrets.

The operative pleadings are Comet's Complaint (Dkt. 1) and XP's Answer to the Complaint (Dkt. 13). The parties request to proceed with a jury trial.

### Comet's Position

Comet is an industry-leading company in the research, design, and development of RF power technology.  Over the course of two decades, Comet spent millions of dollars to develop its innovative RF power generators and RF matching networks used by the semiconductor industry for manufacturing silicon computer chips.  In fact, several of the world's largest vendors of semiconductor processing equipment rely on Comet's RF power technology.  Comet is a leader in this field and has made significant efforts to guard its proprietary and confidential trade secrets.

XP's theft is striking: After facing years of stagnant growth, XP decided to enter the RF power business, not by developing its own technologies, but by luring senior engineers from Comet to mass download Comet's trade secrets, bring them to XP, take their place as the senior-most leaders of XP's new RF power team, and make copycat RF power products based on Comet's trade secret technologies. XP's CEO, Executive Vice President, Chief Technology Officer, Director of Engineering, and many others at XP all set and kept this plan in motion, and knew exactly what was happening—as extensive internal XP documents and XP witness testimony repeatedly confirm.  Even after this theft was uncovered by Comet, XP *continued* to use Comet's trade secrets, for years and to this day.  XP has no answer for its misconduct.[1]

---

[1] Comet objects to XP's inclusion of the last sentence in its position below because XP's defense is not part of the action.

**XP's Position**

Founded in 1991, XP is a leader in designing and manufacturing high-reliability power supplies. In October 2017, XP acquired Comdel for $23 million, expanding its product offerings into the RF (radio frequency) power market.  Founded in 1966, Comdel possesses over 40 years of experience designing and manufacturing RF matches and power generators, the products at issue in this litigation. To complement the RF expertise acquired through Comdel, XP hired several engineers from Comet who possess decades of experience in designing RF matching networks, including from their time at Advanced Energy, the market leader in the RF power field.

Comet seeks a significant monetary windfall from XP based primarily on (i) the retention of certain Comet files downloaded by two former Comet employees, Doug Beuerman and Christopher Mason, while they were still employed at Comet without XP's knowledge, and (ii) their alleged use of a small subset of those documents, which include marketing documents that Comet itself did not treat as confidential prior to the litigation.  After years of discovery and litigation, neither Comet nor its experts have identified any of its alleged trade secrets in the substantial volume of engineering documents that XP produced regarding its next generation products.  Instead, discovery has demonstrated that XP's next generation products do not copy Comet's products as Comet alleges.   Comet's "evidence" of alleged misappropriation against XP boils down to XP's use of a well-known, publicly-available third-party chip that Comet once considered for its own next generation products (but is not actually using), coupled with vague assertions that XP's "consideration" of the alleged trade secrets saved some undefined amount of time in XP's development efforts.  On top of that, XP has recently uncovered evidence that a significant portion of Comet's alleged trade secrets were actually developed at Advanced Energy and improperly brought over to Comet by Mr. Mason, a former Advanced Energy employee; these facts bear on the disputed issues of whether Comet owns certain of its alleged trade secrets and the reasonableness of XP's actions when viewed in light of Comet's own (given Comet's assertion that XP did not act reasonably in view of certain alleged "industry standard").

1

## II.  RELIEF REQUESTED

### Comet's Position

Comet seeks the following relief concerning its suit for misappropriation of trade secrets against XP:

1. Find XP liable for trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*);

2. Find XP liable for trade secret misappropriation under the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*);

3. Award Comet its actual damages in an amount to be determined at trial.  Specifically, Comet seeks $32.5 million in compensatory damages or a reasonable royalty of at least $32.5 million, through the date of the verdict;

4. Award Comet punitive damages in an amount to be determined at trial;

5. Require XP to return all stolen information and documents (and all material derivative from such information);

6. Enjoin XP from misappropriating Comet's trade secrets and confidential information;

7. Enjoin XP from continuing to use Comet's trade secrets and confidential information;

8. Award Comet pre- and post-judgment interest;

9. Award Comet its costs in bringing this action and its attorneys' fees;

10. Provide such other relief as the Court may deem just and proper.

### XP's Position

XP denies that it is liable for trade secret misappropriation under either the Defend Trade Secrets Act (DTSA) or the California Uniform Trade Secrets Act (CUTSA), denies that Comet is entitled to compensatory or punitive damages, injunctive relief, or any of its fees or costs, and maintains that Comet's request for relief should be denied in its entirety.  Moreover, even if XP were found liable for trade secret misappropriation under DTSA or CUTSA, Comet would not be entitled to the damages it

claims, all of which are untethered to its alleged trade secrets and XP's purported use of such alleged trade secrets.  Moreover, Comet would not be entitled to both damages and injunctive relief because injunctive relief is not available for harm that is compensable by damages.  Further, Comet's requests for injunctive relief are overbroad to the extent they seek to require the return of or enjoin the use of information that does not constitute Comet trade secrets.  XP seeks an award of attorneys' fees, costs, and any additional relief the Court deems just and proper.

### III.    UNDISPUTED FACTS

The following is a non-exclusive list of undisputed facts:

1. Comet USA is a Delaware corporation with a principal place of business located at 100 Trap Falls Road Extension, Shelton, Connecticut 06484.

2. Comet AG is a Swiss corporation with a principal place of business located at Herrengasse 10, 3175 Flamatt, Switzerland.

3. YXLON is a German corporation with a principal place of business located at Essener Bogan 15, 22419 Hamburg, Germany.

4. XP is a California Limited Liability Company with a principal place of business located at 990 Benecia Avenue, Sunnyvale, California 84085.

5. Mr. Douglas Beuerman was hired by Comet in 2011, and his last day of employment with Comet was January 26, 2018.

6. Mr. Beuerman began working at XP on February 12, 2018, and his last day of employment with XP was on February 11, 2020.

7. Mr. Christopher Mason was hired by Comet in 2013, and his last day of employment with Comet was February 1, 2018.

8. Mr. Mason began working at XP on February 12, 2018, and his last day of employment with XP was July 7, 2021.

9. Mr. Eiji Mori was hired by Comet in 2016, and his last day of employment with Comet was February 7, 2018.

10. Mr. Mori began working at XP on February 12, 2018, and is currently still employed at XP.

## IV.    DISPUTED FACTUAL ISSUES

### Comet's Position

The following is a non-exclusive list of factual issues that are contested and remain to be litigated at trial:

1. Whether XP misappropriated the trade secrets.

2. The extent of damages flowing from XP's unlawful conduct.

3. If XP is found liable for misappropriation, whether XP's conduct was willful or malicious.

4. The amount of punitive damages (if any) that should be awarded based on XP's unlawful conduct.

### XP's Position

The following is a non-exclusive list of factual issues that are contested and remain to be litigated at trial:

1. Whether Comet owns the alleged trade secrets.

2. Whether Comet has described its trade secrets with sufficient particularity to separate them from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade.

3. Whether the information Comet claims to be their trade secrets constituted the general skills, talents, experience, and abilities of the former Comet employees.

4. Whether the accused actions taken by the former Comet employees were taken within the scope of their employment with XP.

5. Whether each of the asserted trade secrets qualify as trade secrets under the DTSA or CUTSA, including whether Comet owns and took reasonable measures to keep each alleged trade secret secret, whether each alleged trade secret was secret, whether each alleged trade secret was not generally known and not readily ascertainable through proper means, and whether each alleged trade secret derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of each alleged trade secret.

6.      Whether XP misappropriated the alleged trade secrets.

7.      Whether XP independently developed the technologies and/or products that Comet alleges were developed with its alleged trade secrets.

8.      Whether XP was unjustly enriched by its alleged misappropriation of alleged trade secrets, and the amount of unjust enrichment (if any) to XP.

9.      If XP is found liable for misappropriation and XP's misappropriation caused Comet harm, whether XP's conduct was willful or malicious.

10.     If punitive damages are found to be appropriate, the amount of punitive damages (if any) that should be awarded based on XP's alleged unlawful conduct, to be determined by the Court.

## V.    STIPULATIONS

*Stipulated Facts.* The parties stipulate to the facts set forth in Section III (Undisputed Facts), above so that they need not be separately proven at trial.  The parties may during trial present the facts set forth in Section III for purposes of background and context, and all objections to such presentation are reserved.

*Use of Trial Exhibits.*  To facilitate the use of exhibits at trial, the parties stipulate to not object on authenticity or hearsay grounds to exhibits that have been produced by either party, produced by a party or third party pursuant to a Court order, or produced by a third party pursuant to subpoena, and appear on their face to be business records (*e.g.*, internal emails, financials, PowerPoint presentations created by the producing party in the ordinary course of their business), unless the party has a good faith belief disputing the exhibit's authenticity.  For clarity, the produced documents are documents that were served on the other party (via document production, email, deposition exhibit, court filing, or discovery response).  Such documents are admissible if used with a witness, including an expert witness, subject to resolution of other objections to the admissibility of these exhibits, including but not limited to Fed. R. Evid. 106, 401, 402, 403, 408, 805 (hearsay within hearsay objections), 1002, and any applicable order granting a motion *in limine*, as well as objections on the grounds that the documents were not timely produced, were not timely disclosed, or were not within the scope of an expert's report, pursuant to Fed. R. Civ. P. 26.  The stipulation would not waive other objections to the admissibility of these exhibits.

The parties further stipulate not to object on foundation grounds to the admission of an exhibit through an expert witness as long as the requirements of Fed. R. Civ. P. 26 have been met, including but not limited to being within the scope of the opinions of an expert's report, timely produced, and timely disclosed.  This stipulation does not waive the parties' other objections to exhibits admitted through an expert witness.

### *__Examinations of Witnesses__.*

1.      The Parties agree in principle that to the extent possible each live witness may testify once.

### *__Schedule for Trial Disclosures.__*  The parties stipulate to the following schedule for exchange of witness and exhibit information during trial:

1.      *__Witnesses/deposition designations__*:  The parties will identify witnesses to be called live and by deposition, in order of call, by 6:00 p.m. two nights before the intended testimony.  For example, if a witness will be called Monday, live or by designation, that witness must be disclosed by 6:00 p.m. Saturday.  For deposition testimony, the disclosure will also include what testimony is designated.  The parties will exchange counter-designations (and objections to the deposition testimony to the extent objections are not resolved pretrial) by 8:00 p.m. two nights before the intended testimony.  The party that seeks to play the deposition testimony will provide the opposing party with a copy of the actual video file to be played by 6:00 p.m. the night before its intended use.  The video file must include all designated and counter-designated testimony (combined) in chronological order, regardless of which party designated the testimony.  For any witness whose testimony was recorded by video, the designating parties must play the video file and not, for example, perform a live reading by counsel.  For clarity, and absent good cause, all designations and counter-designations must be from those previously disclosed as part of the pretrial exchange process.

2.      *__Exhibits__*: The parties will exchange lists of exhibits they intend to use with live and by-designation witnesses during direct examination—but not for cross-examination—by 6:00 p.m. the night before their intended use.  The disclosure will identify which witness each disclosed exhibit will be used with.  The parties will exchange any unresolved objections to those exhibits by 8:00 p.m. the night

before their intended use.  Exhibits to be used on cross examination, including for impeachment purposes, need not be disclosed in advance of the witness' examination.

3. ***Demonstratives***:  The parties will exchange copies of all demonstratives they plan to use at trial for direct examination—but not for cross-examination—by 6:00 p.m. the night before their intended use.  The parties will exchange objections to demonstratives by 8:00 p.m. the night before their intended use.  The parties will exchange copies of all demonstratives they plan to use at trial for opening statements at a time to be set by the attorneys presenting opening statements.  This paragraph does not apply to demonstratives that are created in the courtroom (*e.g.*, drawings on whiteboards, lists written on easels, etc.).  Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

4. ***Meet and Confer***:  The parties will promptly meet and confer at 9:00 p.m. each night to resolve objections and regarding possible additional stipulations that will streamline trial.

5. ***Other Stipulations***:  The parties further stipulate to the following:

- Neither party will refer to any settlement discussions between the parties.
- Neither party will offer expert opinions or bases for those opinions not disclosed in the expert's reports, in violation of Federal Rules of Civil Procedure 26.
- Neither party will offer opinion testimony from lay witnesses, in violation of Federal Rules of Civil Procedure 26.
- Neither party will play to the jury any objections or other attorney colloquy as part of the party's deposition designations and/or counter-designations.
- Neither party will reference the use any party's expert by the party or their counsel in any other cases, or the use of any party's expert by any opposing party or their counsel other than in this case.
- Neither party will reference Comet's change of counsel, unless Comet opens the door to such issue.
- The parties will work cooperatively on a schedule for the mutual disclosure of physical exhibits at least 1 week prior to trial.

- The parties agree that Mr. Eiji Mori, a native Japanese speaker for whom English is a second language, may have an interpreter present to translate questions posed to him at trial if he testifies live.  Mr. Mori will answer questions in English, and XP will bear all costs for the interpreter.

## VI.   FACT WITNESS LIST

The parties submit their witness lists as of February 16, 2022 identifying those witnesses they expect they will call, or may call, at trial, other than witnesses for rebuttal or impeachment purposes.

The parties have listed in good faith the witnesses that they expect to call or may call to testify live or by prior testimony (including possibly by video) at trial.  For prior deposition testimony that is expected to be, or may be, read or played into evidence, the parties have set forth separately those portions of designated testimony.  *See* Schedules 3 and 4.  The parties have attached the designated transcripts in their entirety to provide necessary context for resolving disputes.  *See id.* The parties are continuing to meet and confer and expect to substantially narrow their affirmative and counter-designations.

The parties reserve the right to submit, as appropriate, additions and/or revisions to their witness list as the pretrial and trial process evolves, including meeting and conferring on trial management issues and receiving the Court's rulings on matters such as the parties' respective *Daubert* motions and motions *in limine*.  The parties reserve the right to add witnesses to these lists, if needed, at least for the authentication of documents.  The parties reserve the right to examine the witnesses on topics other than those primarily listed.  The parties are identifying these witnesses in their individual and, if applicable, their 30(b)(6) capacities. The parties reserve the right to designate and present the prior deposition testimony of any witness that the other party has indicated it expects to testify live at trial should such witnesses not come to trial, and furthermore the parties expressly reserve their right to introduce deposition testimony in accordance with Fed. R. Civ. P. 32(a)(3).  The parties also reserve the right to call any witness on the other party's witness list and any witness called by the other party.

**Comet's List**

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| Kevin Crofton (will call live) | Comet's business; Comet's customers; the market for Comet's technologies; Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features; Comet's investment in research and development and the importance of its intellectual property, including its trade secrets; Comet's financial information and systems; harm to Comet caused by XP's misappropriation; measures taken by Comet to protect its proprietary information. | Comet's direct: 1 hour<br><br>XP's cross: 15 min. |
| Gary Russell (will call live) | Design, development, structure, and/or operation of technology used in conjunction with, or otherwise relating to, Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features, including any hardware or software trade secrets; Comet's awareness of its competition and the products of its competitors, including XP and Comdel; XP's misappropriation and/or copying of Comet's proprietary technologies; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; costs associated with research and development related to Comet's trade secrets asserted against XP in this action and the resulting harm to Comet; Comet's reasonable measures to maintain the confidentiality of its trade secrets; Comet's efforts to respect the intellectual property rights of others; Messrs. Beuerman, Mason, and Mori's access to Comet's confidential information and trade secrets; Messrs. Beuerman, Mason, and Mori's agreements with Comet, including their confidentiality and non-disclosure obligations; Comet's customers; the market for Comet's technologies. | Comet's direct: 1 hour<br><br>XP's cross: 30 min. |
| Andre Grede (will call live) | Design, development, structure, and/or operation of technology used in conjunction with, or otherwise relating to, Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features, including any hardware, manufacturing, or software trade secrets; Comet's awareness of its competition and the products of its competitors, including XP and Comdel; XP's misappropriation and/or copying of Comet's proprietary technologies; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; costs associated with research and development related to Comet's trade secrets asserted against XP in this action and the resulting harm to Comet; Messrs. Beuerman, Mason, and Mori's access to Comet's confidential information and trade secrets, including all aspects of a database exchange and collaboration system called Jira/Confluence; Messrs. Beuerman, Mason, and Mori's duties and responsibilities at Comet; Comet's | Comet's direct: 1.5 hours<br><br>XP's cross: 30 min. |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| | reasonable measures to maintain the confidentiality of its trade secrets; Comet's efforts to respect the intellectual property rights of others; Comet's customers; the market for Comet's technologies. | |
| Elisabeth Pataki (may call live) | Comet's business; Comet's customers; the market for Comet's technologies; Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features; Comet's investment in research and development and the importance of its intellectual property, including trade secrets; Comet's financial information and systems; harm to Comet caused by XP's misappropriation. | |
| Michael Kammerer (may call live or by deposition) | Comet's business; Comet's customers; the market for Comet's technologies; Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features; Comet's investment in research and development and the importance of its intellectual property, including trade secrets; Comet's financial information and systems; harm to Comet caused by XP's misappropriation; measures taken by Comet to protect its proprietary information. | |
| Markus Pfeiffer (may call live or by deposition) | Marketing, strategic, and financial information relating to Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; costs associated with research and development related to Comet's trade secrets asserted against XP in this action and the resulting harm to Comet. | |
| Paul Smith (may call live) | Design, development, structure, and/or operation of technology used in conjunction with, or otherwise relating to, Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features, including any hardware or software trade secrets; marketing and strategic information relating to Comet's RF generators and impedance matching products and technologies; Comet's awareness of its competition and the products of its competitors, including XP and Comdel; XP's misappropriation and/or copying of Comet's proprietary technologies; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; costs associated with research and development related to Comet's trade secrets asserted against XP in this action and the resulting harm to Comet; Comet's reasonable measures to maintain the confidentiality of their trade secrets; Comet's efforts to respect the intellectual property rights of others; Comet's customers and market; Comet's innovations, and industry and consumer praise for them. | |
| Shawn Joseph (may call live) | Comet's reasonable measures to maintain the confidentiality of its trade secrets, including Comet's IT security policies; Messrs. | |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| | Beuerman, Mason, and Mori's access to Comet's confidential information and trade secrets. | |
| Robert Jardim (may call live or by deposition) | Information related to Comet's corporate structure, business operations, and technologies and products; Comet's awareness of its competition and the products of its competitors, including XP and Comdel; XP's misappropriation and/or copying of Comet's proprietary technologies; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; Messrs. Beuerman, Mason, and Mori'ss access to Comet's confidential information and trade secrets; Comet's reasonable measures to maintain the confidentiality of its trade secrets; Messrs. Beuerman, Mason, and Mori's responsibilities and duties at Comet; Messrs. Beuerman, Mason, and Mori's agreements with Comet, including their confidentiality and non-disclosure obligations. | |
| Michael Bonner (may call live or by deposition) | The marketing and sale of Comet's products and technologies, Comet's competitors, sales-related information including sales orders, sales quotes, sales training, sales forecast, Comet's customer relationships. | |
| Anthony Olivetti (may call live or by deposition) | Design, development, structure, and/or operation of technology used in conjunction with, or otherwise relating to, Comet's RF matching products, technologies, and trade secrets, including any hardware and manufacturing trade secrets; facts and circumstances concerning the value of Comet's trade secrets asserted against XP in this action; development time associated with research and development related to Comet's trade secrets asserted against XP in this action. | |
| Roland Schlierf (may call live or by deposition) | Design, development, structure, and/or operation of technology used in conjunction with, or otherwise relating to, Comet's products, technologies, and trade secrets, including RF generators and impedance matching networks and related features, including any software trade secrets; Comet's  competitors, including XP and Comdel; facts and circumstances concerning the value of Comet's trade secrets. | |
| Doug Beuerman (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets. | |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| Christopher Mason (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets. | |
| Eiji Mori (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets. | |
| Duncan Penny (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information;  facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | |
| Brent Irvine (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential | |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| | information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information;  facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets. | |
| Paul Rummel (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information;  facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; facts and circumstances related to Comdel's RF generator and impedance matching network technologies before and after acquisition by XP. | |
| John Morin (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | |
| Lee Harwood (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; facts and circumstances related to XP's investigation into Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential | |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| | information, and trade secrets; facts and circumstances related to XP's efforts to preserve documents, ESI, and data relevant to litigation between Comet and XP; fact and circumstances related to XP's collection of Messrs. Beuerman, Mason, and Mori's devices, ESI, and data. | |
| Mike Laver (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | |
| Jay Warner (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or measures taken to prevent use and dissemination of Comet's trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP. | |
| Yibing Ma (may call live or by deposition) | Confidential information, trade secrets, and/or source code that Messrs. Beuerman, Mason, and Mori accessed and took from Comet to XP; Messrs. Beuerman, Mason, and Mori's access, distribution, discussion, and use of Comet's confidential information, and trade secrets; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's improper acquisition and use of Comet's trade secret information; facts and circumstances related to XP's purported investigation or | |

| Comet's Witnesses | Substance of Testimony | Time Estimate for Examination |
|---|---|---|
| | measures taken to prevent use and dissemination of Comet's trade secrets. | |

**XP's List**

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| Duncan Penny (will call live) | Expected to testify about: XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to RF generators and impedance matching network markets; facts and circumstances related to XP's alleged misappropriation of Comet's trade secret information; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of Comet's alleged trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | XP's direct: 2 hours<br><br>Comet's cross: 45 min. |
| Paul Rummel (will call live) | Expected to testify about Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research, development, design, implementation, and testing of XP products related to RF generators and impedance matching networks; facts and circumstances related to XP's measures taken to prevent use and dissemination of the alleged trade secrets; facts and circumstances related to XP's acquisition of Comdel; facts and circumstances related to Comdel's RF generator and impedance matching network technologies before and after acquisition by XP. | XP's direct: 1.5 hours<br><br>Comet's cross: 30 min. |
| Jay Warner (may call live or by deposition) | Expected to testify about: Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's alleged misappropriation of Comet's alleged trade secret information;  facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of Comet's alleged trade secrets; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP. | |
| John Morin (may call live or by deposition) | Expected to testify about: the development of XP's products and history of product development at Comdel and XP Power; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances | |

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| | related to XP's acquisition of Comdel; facts and circumstances related to RF generators and impedance matching network markets; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | |
| Eiji Mori (may call live or by deposition) | Expected to testify about: Comet information alleged to be misappropriated by XP; Messrs. Beuerman, Mason, and Mori's job responsibilities at Comet; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to Comet's allegations of misappropriation of alleged Comet information; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of Comet's alleged trade secrets. | |
| Yibing Ma (may call live or by deposition) | Expected to testify about: Mr. Ma's job responsibilities at Comet; Mr. Ma's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to XP's alleged misappropriation of Comet's alleged trade secret information; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of Comet's alleged trade secrets. | |
| Christopher Mason (may call live or by deposition) | Expected to testify about: Messrs. Beuerman, Mason, and Mori's job responsibilities at Comet; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to Comet's allegations of misappropriation of alleged Comet information; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of alleged Comet information. | |
| Doug Beuerman (may call live or by deposition)[2] | Expected to testify about: Messrs. Beuerman, Mason, and Mori's job responsibilities at Comet; Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks; facts and circumstances related to Comet's allegations of misappropriation of Comet information; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of alleged Comet information. | |
| Lee Harwood (may call live or by deposition) | Expected to testify about: alleged access and use of alleged Comet information; facts and circumstances related to XP's investigation into Messrs. Beuerman, Mason, and Mori's purported access, distribution, discussion, and use of alleged Comet information; facts and circumstances related to XP's collection of Messrs. Beuerman, Mason, and Mori's devices, ESI, and data. | |

---

[2] XP objects to Comet playing any portion of Mr. Doug Beuerman's May 3, 2018 deposition transcript under FRCP Rule 32(a)(1)(A).

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| Brent Irvine (may call live or by deposition) | Expected to testify about: Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development related to RF generators and impedance matching networks, including the history of XP and Comdel products and development work; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of alleged Comet information | |
| Mike Laver (may call live or by deposition) | Expected to testify about: Messrs. Beuerman, Mason, and Mori's job responsibilities and customer interactions at XP; XP's research and development and financial information related to RF generators and impedance matching networks; facts and circumstances related to XP's investigation or measures taken to prevent use and dissemination of alleged Comet information; facts and circumstances related to the recruitment of Messrs. Beuerman, Mason, and Mori to XP; facts and circumstances related to XP's acquisition of Comdel; financial information related to XP's sales, revenue, and profits from its RF generator and impedance matching network products. | |
| Zahra Awasthi (may call live or by deposition) | Expected to testify about: exit interview for Messrs. Beuerman, Mason, and Mori. | |
| Kevin Crofton (may call live or by deposition) | Expected to testify about: Comet's business; Comet's customers; the market for RF impedance matching and generator technologies; Comet's products, technologies, and alleged trade secrets, including RF generators and impedance matching networks and related features; Comet's investment in R&D; Comet's financial information and systems; purported harm to Comet caused by XP's alleged misappropriation; purported measures taken by Comet to protect its alleged proprietary information. | |
| Gary Russell (may call live or by deposition) | Expected to testify about: design, development, structure, and operation of technology used in conjunction with or relating to Comet's products, technologies, and alleged trade secrets, including RF generators and impedance matching networks and related features; Comet's awareness of its competition and the products of its competitors, including XP, Comdel, Advanced Energy, MKS, and Trumpf; XP's alleged misappropriation of Comet's alleged trade secrets; facts and circumstances concerning the purported value of Comet's alleged trade secrets; purported costs associated with research and development related to Comet's alleged trade secrets and the purported harm to Comet; Comet's purported reasonable measures to maintain the confidentiality of its alleged trade secrets; Messrs. Beuerman, Mason, and Mori's access to Comet's alleged confidential information and alleged trade secrets while at Comet; Comet's customers and the market for RF impedance matching and generator technologies. | |

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| Andre Grede (may call live or by deposition) | Expected to testify about: design, development, structure, and operation of technology used in conjunction with, or otherwise relating to, Comet's products, technologies, and alleged trade secrets, including RF generators and impedance matching networks and related features; Comet's awareness of its competition and the products of its competitors, including XP, Comdel, Trumpf, MKS, and Advanced Energy; XP's alleged misappropriation of Comet's technologies; facts and circumstances concerning the value of Comet's alleged trade secrets; costs associated with research and development related to Comet's alleged trade secrets and the resulting harm to Comet; Messrs. Beuerman, Mason, and Mori's access to alleged Comet information; Messrs. Beuerman, Mason, and Mori's duties and responsibilities at Comet; Comet's purported measures to maintain the confidentiality of its alleged trade secrets; Comet's customers; the market for RF impedance matching and generator technology. | |
| Elisabeth Pataki (may call live or by deposition)[3] | Expected to testify about: Comet's business; Comet's customers; the market for RF impedance matching and generator technology; Comet's investment in research and development; Comet's financial information and systems; purported harm to Comet caused by XP's alleged misappropriation. | |
| Michael Kammerer (may call live or by deposition) | Expected to testify about: Comet's business; Comet's customers; the market for RF impedance matching and generator technology; Comet's products and technologies, including RF generators and impedance matching networks and related features; Comet's investment in research and development; Comet's financial information and systems; purported harm to Comet caused by XP's alleged misappropriation; purported measures taken by Comet to protect its alleged confidential information. | |
| Markus Pfeiffer (may call live or by deposition) | Expected to testify about: marketing, strategic, and financial information relating to Comet's products, technologies, and alleged trade secrets, including RF generators and impedance matching networks; facts and circumstances concerning the purported value of Comet's alleged trade secrets asserted against XP; costs associated with research and development related to Comet's alleged trade secrets asserted against XP and the purported harm to Comet. | |
| Paul Smith (may call live or by deposition) | Expected to testify about: design, development, structure, and operation of technology used in conjunction with, or otherwise relating to, Comet's products, including RF generators and impedance matching networks and related features; marketing and strategic information relating to Comet's RF generators and | |

---

[3] Should Comet call Ms. Pataki at trial, XP requests that Ms. Pataki be made available for a two-hour pre-trial deposition since she was not previously deposed due to the deposition limitations in this case and the number of witnesses Comet identified in this case.

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| | impedance matching products and technologies; Comet's awareness of its competition and the products of its competitors, including XP, Comdel, Advanced Energy, MKS, and Trumpf; XP's alleged misappropriation of alleged Comet information; facts and circumstances concerning the purported value of Comet's alleged trade secrets asserted against XP; costs associated with research and development related to Comet's alleged trade secrets asserted against and the purported harm to Comet; Comet's purported measures to maintain the confidentiality of their purported trade secrets; Comet's customers and market. | |
| Shawn Joseph (may call live or by deposition)[4] | Expected to testify about: Comet's purported measures to maintain the confidentiality of its alleged trade secrets, including Comet's IT security policies; Messrs. Beuerman, Mason, and Mori's access to alleged Comet information and while employed at Comet. | |
| Robert Jardim (may call live or by deposition) | Expected to testify about: information related to Comet's corporate structure, business operations, technologies and products; Comet's awareness of its competition and the products of its competitors, including XP, Comdel, Advanced Energy, MKS, and Trumpf; XP's alleged misappropriation of Comet's alleged trade secrets; facts and circumstances concerning the purported value of Comet's alleged trade secrets asserted against XP; Messrs. Beuerman, Mason, and Mori's access to Comet's confidential information while employed at Comet; Comet's purported measures to maintain the confidentiality of its alleged trade secrets; Messrs. Beuerman, Mason, and Mori's responsibilities and duties at Comet. | |
| Michael Bonner (may call live or by deposition) | Expected to testify about: the marketing and sale of Comet's products and technologies, Comet's competitors, sales-related information including sales orders, sales quotes, sales training, sales forecast, Comet's customer relationships. | |
| Anthony Olivetti (may call live or by deposition) | Expected to testify about: design, development, structure, and operation of technology used in conjunction with, or otherwise relating to, Comet's RF matching products, technologies, and alleged trade secrets; facts and circumstances concerning the purported value of Comet's alleged trade secrets asserted against XP; development time associated with research and development related to the alleged trade secrets asserted against XP. | |
| Roland Schlierf (may call live or by deposition) | Expected to testify about: design, development, structure, and operation of technology used in conjunction with, or otherwise relating to, Comet's products, including RF generators and impedance matching networks and related features; Comet's competitors, including XP, Comdel, Advanced Energy, MKS, and | |

---

[4] Should Comet call Mr. Joseph at trial, XP requests that Mr. Joseph be made available for a pre-trial deposition since he was not previously deposed due to the deposition limitations in this case and the number of witnesses Comet identified in this case.

| XP's Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| | Trumpf; facts and circumstances concerning the purported value of Comet's alleged trade secrets. | |

## VII.    EXPERT WITNESS LIST

The parties submit their expert witness lists as of February 16, 2022.  Mr. Kevin Faulkner's expert reports, including *curriculum vitae*, are attached as Exhibit A.  Dr. Stanley Shanfield's expert reports, including *curriculum vitae*, are attached as Exhibit B.  Dr. Dariush Rafinejad's expert reports, including *curriculum vitae*, are attached as Exhibit C.  Mr. James Malackowski's expert reports, including *curriculum vitae*, are attached as Exhibit D.

| Comet's Expert Witnesses | Substance of Testimony | Estimate Time for Examination |
|---|---|---|
| Kevin Faulkner (will call live) | Comet's expert witness concerning forensic analysis and other issues per Mr. Faulkner's expert reports and deposition; critique of Mr. Cowen's opinions, and opinions of XP's witnesses that are inconsistent with Mr. Faulkner's opinions. | Comet's direct: 1 hour XP's cross: 15 min. |
| Stanley Shanfield (will call live) | Comet's technical expert witness, particularly in the field of RF generators and matching networks, and other issues per Dr. Shanfield's expert reports and deposition, including Comet's trade secrets at issue; critique of Drs. Phinney and Spencer's opinions, and opinions of XP's witnesses that are inconsistent with Dr. Shanfield's opinions. | Comet's direct: 2 hours XP's cross: 1 hour |
| Dariush Rafinejad (will call live) | Comet's industry expert witness, particularly in the field of RF generators and matching networks, and other issues per Dr. Rafinejad's expert reports and deposition; critique of Dr. Spencer's opinions, and opinions of XP's witnesses that are inconsistent with Dr. Rafinejad's opinions. | Comet's direct: 1 hour XP's cross: 45 min. |
| James Malackowski (will call live) | Comet's expert witness concerning damages suffered by Comet, and other issues per Mr. Malackowski's expert reports and deposition; critique of Ms. Irwin's opinions, and opinions of XP's witnesses that are inconsistent with Mr. Malackowski's opinions. | Comet's direct: 1 hour XP's cross: 45 min. |

Mr. David Cowen's *curriculum vitae* and expert reports are attached as Exhibit E.  Dr. Joshua Phinney's *curriculum vitae* and expert reports are attached as Exhibit F.  Dr. John Spencer's *curriculum vitae* and expert reports are attached as Exhibit G.  Ms. Carlyn Irwin's *curriculum vitae* and expert reports are attached as Exhibit H.

| XP's Expert Witnesses | Substance of Testimony | Estimate Time for Examination |
| --- | --- | --- |
| David Cowen (will call live) | Expert Witness for XP Power – Testimony specific to forensic analysis of computer data and other issues per Mr. Cowen's expert reports and depositions, including evaluation of evidence proffered by Plaintiff regarding forensic analysis of computer data and independent analysis completed with respect to various computer data deriving from XP Power, Comet, and Chris Mason. | XP's direct: 30 min.<br><br>Comet's cross: 15 min. |
| John Spencer (will call live) | Expert Witness for XP Power – Testimony specific to the RF match and generator industry and other issues per Dr. Spencer's expert reports and deposition, including evaluation of evidence proffered by Plaintiff and independent opinions based on first-hand knowledge of the same. | XP's direct: 1.5 hours<br><br>Comet's cross: 30 min. |
| Joshua Phinney (will call live) | Expert Witness for XP Power – Testimony specific to scientific evaluation of evidence related to Comet's alleged trade secret materials allegedly misappropriated by XP Power and other issues per Dr. Phinney's expert reports and deposition, including the evaluation of evidence proffered by Plaintiff and an independent evaluation of evidence . | XP's direct: 2 hours<br><br>Comet's cross: 45 min. |
| Carlyn Irwin (will call live) | Expert Witness for XP Power – Testimony specific to evidence of and analysis related to potential damages and other issues per Ms. Irwin's expert reports and deposition, including an evaluation of evidence proffered by Plaintiff regarding alleged damages and an independent analysis of potential damages. | XP's direct: 1 hour<br><br>Comet's cross: 30 min. |

## VIII.   EXHIBITS AND SCHEDULES

Attached as Schedule 1 is Comet's exhibit list, which includes XP's objections.

Attached as Schedule 2 is XP's exhibit list, which includes Comet's objections.

## IX.   DISPUTED LEGAL ISSUES

The following is a non-exhaustive list of issues of law that are contested and remain to be litigated at the appropriate time:

**Comet's Position**

1. Whether XP misappropriated the trade secrets;

2. If XP is found liable for misappropriation, whether to enjoin XP from misappropriating Comet's trade secrets, including by continuing to use them;

3. If XP is found liable for misappropriation, whether to award Comet compensatory damages;

4. If XP is found liable for misappropriation, whether to award Comet punitive damages;

5. If XP is found liable for misappropriation, whether to award Comet pre- and post-judgment interest;

6. Whether to award Comet its costs in bringing this action and its attorneys' fees.

**XP's Position**

The following is a non-exhaustive list of issues of law that are contested and remain to be litigated at the appropriate time:

1. Whether Comet owns each of its alleged trade secrets;

2. Whether each of Comet's alleged trade secrets satisfies the elements for protection as a "trade secret" under the DTSA and CUTSA;

3. Whether XP misappropriated the alleged trade secrets;

4. If XP is found liable for misappropriation, whether to enjoin XP from misappropriating Comet's alleged trade secrets, including by continuing to use them;

5. If XP is found liable for misappropriation, whether to award Comet compensatory damages;

6. If XP is found liable for misappropriation, whether to award Comet punitive damages;

7. If XP is found liable for misappropriation, whether to award Comet pre- and post-judgment interest;

8.  If XP is found liable for misappropriation, whether Comet should be entitled to both damages and injunctive relief (to be determined by the Court), since injunctive relief is not available for harm that is compensable by damages.

9.  Whether the prevailing party is entitled to its costs and attorneys' fees.

## X.    PENDING MOTIONS OR MATTERS

Before the Court are the following pending motions:

- XP's *Daubert* motions to exclude certain testimony of Comet's experts (Dkts. 112, 115, 118) filed on November 19, 2021;

- Comet's motion to exclude certain expert testimony related to XP's unclean hands defense (Dkt. 125) filed on November 20, 2021;

- Two omnibus proposed orders on sealing motions (Dkts. 198, 241) filed on December 10, 2021 and December 22, 2021.

- The parties' motions *in limine* that are being filed on February 16, 2022.

## XI.    USE OF DISCOVERY RESPONSES

Attached as Schedule 3 are Comet's initial deposition designations, XP's objections to the same, XP's counter deposition designations, and Comet's objections to the same.

Attached as Schedule 4 are XP's initial deposition designations, Comet's objections to the same, Comet's counter deposition designations, and XP's objections to the same.

Attached as Schedule 5 are Comet's initial discovery designations and XP's objections to the same.

Attached as Schedule 6 are XP's initial discovery designations and Comet's objections to the same.

## XII.    ESTIMATE OF TRIAL TIME

The parties estimate that trial will take 8-10 court days inclusive of *voir dire*, opening and closing statements, and the jury charge.  The parties understand that the Court's trial schedule is Monday through Friday from 9:00 a.m. to 4:00 p.m.  The parties stipulate to divide trial time equally.  The parties stipulate that each side is allocated 1 hour for opening and 1.5 hours for closing.

**XP's Position**

The parties stipulated to divide trial time equally.  The time should be limited to 15 hours per side (including openings and closing), but not including jury selection.

**XIII.   SETTLEMENT DISCUSSIONS**

The parties participated in a private mediation with Judge Gary Feess on November 30, 2021.  The mediation was unsuccessful.

Despite the fact that no settlement has been reached, discussions remain open.

**XIV.   VOIR DIRE QUESTIONS**

Attached as Schedule 7 is the parties' joint proposed jury questionnaire.

**XV.   MISCELLANEOUS**

**A.   Alleged Trade Secrets**

**XP's Position**

Comet continues to maintain that XP misappropriated over thousands of documents, grouped into one or more of 20 alleged trade secrets, each of which comprises additional alleged trade secrets made up of some undefined combination of documents.  Comet has not identified which specific combinations of documents they intend to assert as trade secrets at trial or which portions of those thousands of documents constitute the trade secret information.  Simply dropping thousands of documents onto the jury at trial and asking the jurors to figure it out is unworkable.  Conversely, withholding the specific allegations plaintiffs intend to advance at trial is unfair.  For these reasons courts have routinely required plaintiffs to narrow the number of alleged trade secrets advanced at trial to ensure that trial can proceed in an orderly and efficient fashion.

For example, in *TNS Media*, the trial court "ordered the parties to reduce the number of … trade secrets" because the plaintiff "asserted hundreds of pages of documents in support of 25 alleged trade secrets, with little to no indication as to how these documents combined to form trade secrets." *TNS Media Research, LLC v. TRA Global, Inc.*, 977 F. Supp. 2d 281, 313 (S.D.N.Y. Oct. 3, 2013).  And in *AMEC*, the court ordered the plaintiff "to narrow its trade secrets" because the plaintiff's alleged trade secrets "comprise thousands of documents" rendering trial "unmanageable."  *AMEC Env't &*

1  *Infrastructure, Inc. v. Geosyntec Consultants Inc.*, No. C 12-cv-2973, 2013 WL 3923459 (N.D. Cal. July

2  26, 2013) *3.

3          Analogously, here, Comet cannot credibly plan to present thousands of separate documents as

4  comprising an undefined number of alleged trade secrets and trade secret combinations at trial, given

5  Comet's burden to establish the required elements for trade secret protection under the DTSA and

6  CUTSA for each document and each combination claimed as a trade secret.  Accordingly XP asks the

7  Court to order Comet to (i) narrow the alleged trade secrets it intends to present to the jury to a

8  reasonable number (XP proposes 10), and (ii) clearly and specifically identify any such alleged trade

9  secrets.

10          **Comet's Position**

11          Comet fully specified its trade secrets and the confidential documents that support its

12  identification of each individual and grouped trade secrets.  Given the volume of trade secrets and

13  confidential documents that XP misappropriated, the number of trade secrets is commensurate with the

14  theft.  Contrary to XP's implication, courts do not set limits on the number of trade secrets that are

15  disputed or universally hold that a certain number of trade secrets such a twenty exceeds an arbitrary,

16  threshold number.  *See, e.g., Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192,

17  1212-16 (N.D. Cal. 2012) (hearing summary judgment on 20 trade secrets).  Nevertheless, in an effort to

18  streamline the issues for the jury, Comet will make a good faith effort to reduce the number of trade

19  secrets and their corresponding exhibits by February 23, 2022.

20

21

22

23

24

25

26

27

28

DATED: February 16, 2022

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Sharre Lotfollahi*
Adam Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay S. Deoras (SBN: 301962)
akshay.deoras@kirkland.com
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Sharre Lotfollahi (SBN: 258913)
slotfollahi@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Leslie M. Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (213)446-4900

Attorneys for Plaintiffs

COMET TECHNOLOGIES USA INC.,
COMET AG AND YXLON
INTERNATIONAL GmbH

1   DATED: February 16, 2022                Respectfully submitted,

2                                            LATHAM & WATKINS LLP

3                                            By: */s/ Patricia Young*

4                                            Joseph B. Farrell (SBN: 137435)
                                             joe.farrell@lw.com
5                                            Thomas W. Yeh (SBN: 287118)
                                             thomas.yeh@lw.com
6                                            Dixie C. Tauber (Bar No. 321692)
                                             dixie.tauber@lw.com
7                                            355 South Grand Avenue, Suite 100
                                             Los Angeles, CA 90071
8                                            Telephone: (213) 485-1234
                                             Facsimile: (213) 891-8763

9                                            Patricia Young (SBN: 291265)
                                             patricia.young@lw.com
10                                           LATHAM & WATKINS LLP
                                             140 Scott Drive
11                                           Menlo Park, CA 94025
                                             Telephone: (650) 328-4600
12                                           Facsimile: (650) 463-2600

13                                           Matthew W. Walch (*pro hac vice*)
                                             matthew.walch@lw.com
14                                           Russell Mangas (*pro hac vice*)
                                             russell.mangas@lw.com
15                                           LATHAM & WATKINS LLP
                                             330 North Wabash Avenue, Suite 2800
16                                           Chicago, IL 60611
                                             Telephone: (312) 876-7700
17                                           Facsimile: (312) 993-9767

18                                           Attorneys for Defendant
                                             XP POWER LLC
19

20

21

22

23

24

25

26

27

28