UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMET TECHNOLOGIES USA INC., and others,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>XP POWER LLC,<br><br>　　　　Defendant. | Case No. 20-cv-06408-NC<br><br>**ORDER ON *DAUBERT* MOTIONS**<br><br>ECF: 112, 115, 118, 125 |

In this trade secret misappropriation case, Defendant XP Power, LLC moves to exclude four of Plaintiff Comet Technologies USA Inc.'s experts. ECF 112, 115, and 118. Comet moves to exclude testimony about the unclean hands defense. ECF 125.

**I.     LEGAL STANDARD**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"The duty falls squarely upon the district court to 'act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), overruled on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020), (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). In *Daubert*, the United States Supreme Court identified "four factors that may bear on the analysis: (1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017).

Importantly, the Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* The Court has broad discretion and flexibility in assessing an expert's reliability. *Id.*

**II.   DISCUSSION**

For the reasons discussed below, XP's Motions to Exclude Comet experts Dr. Rafinejad and Dr. Shanfield, ECF 112, Mr. Faulkner, ECF 115, and Mr. Malackowski, ECF 118 are DENIED, as XP's objections go to the weight to be given to this testimony and not its admissibility. Comet's Motion to Exclude Expert Testimony About Unclean Hands, ECF 125 is GRANTED, as the Court has previously granted summary judgment for Comet on this issue. ECF 247.

**A.   Dr. Rafinejad and Dr. Shanfield (ECF 112)**

Dr. Shanfield, Comet's technical expert, has broad experience in the semiconductor

2

1    process equipment industry, having worked at the Draper Lab in Cambridge, MA since
2    2003, and specifically working with, and designing, equipment incorporating RF sources,
3    including equipment for semiconductor plasma etching, plasma CVD, and plasma
4    sputtering systems for both commercial and government customers.  ECF 205-4 ¶¶ 4–5.  In
5    addition, Dr. Shanfield has managed and on-boarded engineering and product development
6    teams and has extensive experience in the proper handling of intellectual property,
7    including trade secrets.  ECF 204 at 8.  Dr. Rafinejad, Comet's technical expert, has
8    approximately thirty years of applied and practical experience in the semiconductor
9    process equipment industry, both at market leaders in the industry Lam Research
10   Corporation and Applied Materials, Inc. (AMAT), and as president of Blue Dome
11   Consulting, a firm specializing in consulting with companies, primarily in the
12   semiconductor industry, on new product development and leadership.  ECF 205-5 ¶¶ 14–
13   25.  In support of its trade secret misappropriation allegations against XP, Comet served its
14   opening expert reports on August 6, 2021, including an "industry" expert report by Dr.
15   Rafinejad, and a "technical" expert report by Dr. Shanfield.  Dr. Rafinejad and Dr.
16   Shanfield also served reply expert reports on September 24, 2021.

17       These experts offer opinions about three things: (1) an industry standard of
18   confidentiality or "implied NDA," (2) an industry standard of care for investigating
19   allegations of trade secret misappropriation, and (3) an industry standard of clean room
20   procedures to separate employees hired from competitors.  XP objects to all of this
21   testimony.  ECF 112, 115,118 at 1.

22       With respect to industry standards of confidentiality and implied NDAs, XP argues
23   that the opinions should be excluded because they rely on their experience as opposed to
24   evidence of industry standards.  It cites as instructive in that analysis *Cisco Systems Inc. v.*
25   *Arista Networks, Inc.*, No. 14-CV-05344-BLF, 2016 WL 11752975 at *2-3 (N.D. Cal.
26   Nov. 16, 2016) (excluding witnesses because opinion not testable and "is offered without
27   any objective criterion").  XP next argues that opinions about industry standards of care for
28   trade secret misappropriation should be excluded because they reflect the experts' "own

3

personal opinion[s] as to what a [company] *should* do" rather than being "based on any objective standards establishing what a [company] is *required* to do." *Carrier v. City of Amite*, 50 So. 3d 1247, 1250 (La. 2010) (emphasis in original).

For largely the same reasons, XP argues that Dr. Rafinejad's and Dr. Shanfield's opinions regarding an "industry standard to establish clean room procedures" are inadmissible because they lack any evidentiary basis and may prejudice XP. ECF 112 at 16-17. With regard to prejudice, XP notes the "potential of great prejudice" when experts apply unsupported labels of industry standard because they are significantly persuasive to a jury. *Cisco Systems Inc.*, 2016 WL 11752975 at *3.

XP also argues that the opinions about what constitutes a trade secret should be excluded because they constitute an improper legal conclusion. And information about certain trade secrets should be excluded because it is likely to confuse the jury.

Comet responds that, to the extent that XP disagrees with the conclusions reached by the experts, or questions the reliability of their methods, those subjects can be appropriately discussed on cross-examination. In addition, Comet disagrees that the opinions expressed about industry standards for confidentiality, clean room procedures and misappropriation are solely based on experience. Instead, for example, "Dr. Rafinejad specifically articulates the applicable industry standards about confidentiality, practices and customs—in a manner directly relevant to those opinions—along with his bases for his articulation of them, including the party's public disclosures, internal correspondence and memoranda, technical documents, contracts with third-party suppliers and customers, as well as extensive deposition testimony from both party's key witnesses." ECF 204 at 10.

The Court agrees with Comet that the appropriate forum to address substantive disagreements about the testimony is on cross-examination. Further, courts within the Ninth Circuit have commonly allowed "industry standards" testimony when supported by relevant experience. *See, e.g. Martin ex rel. Heckman v. Midwest Exp. Holdings*, 555 F.3d 806, 815–16 (9th Cir. 2009) (holding that "expert testimony of common industry practices . . . should be admitted so a factfinder might determine what reasonable care means" in a

1    particular case); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir.
2    2004) (holding that an industry expert's "'experience, training, and education' provided a
3    sufficient foundation of reliability for his testimony"); *In re Twitter, Inc. Securities*
4    *Litigation*, 19-CV-07149 YGR, 2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) (stating that
5    where an expert has "decades of relevant experience" and his "opinions are also based on
6    his review of relevant" evidence, these alone are "sufficient to conclude that the opinions
7    at issue are reliable"). Courts have similarly held in the trade secret context specifically.
8    *See e.g.*, *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 785-786 (N.D. Ohio 2013) (finding
9    expert testimony regarding "breach of industry standard" in a trade secret misappropriation
10   case was "relevant because it will help the jury determine whether [defendant] knew or had
11   reason to know that" information he "used was derived through . . . violation of the
12   industry standard of confidentiality").

13   In arguing to the contrary, XP relies on *Cisco Systems Inc*. and *Aztec Motel Corp.*,
14   2011 WL 6132188, at *4 (D.N.J. Dec. 7, 2011). The Court concludes that this case is
15   distinguishable because *Cisco Systems* occurred in a completely different factual scenario.
16   What constitutes a "de facto industry standard" there is something that requires an
17   objective analysis, the question of whether something is a trade secret does not. Reliance
18   on *See Mendler v. Aztec Motel Corp.*, 2011 WL 6132188, at *4 (D.N.J. Dec. 7, 2011) is
19   also inapposite because the expert there did not cite any insight "gained from research or
20   design experience," but instead only relied on antiquated guidance. The same is not true
21   here. The record indicates that both experts are familiar with applicable industry standards
22   and applied them assessing this case and conducting research. ECF 204 at 10.

23   In addition to its critique of industry standards testimony, XP argues that trade
24   secret identification testimony should be excluded because it constitutes an improper legal
25   conclusion. ECF 112 at 18. Comet argues that Dr. Rafinejad and Dr. Shanfield's trade
26   secret opinions are admissible, noting that courts have allowed similar testimony on
27   similar terms in the trade secret context. ECF 204 at 22-23.

28   The Court agrees that the testimony is admissible and the appropriate mechanism to

5

1  challenge this testimony is cross-examination.  Courts, facing similar factual records, have
2  allowed testimony about whether something qualifies as a trade secret, as well as whether
3  trade secrets were misappropriated.  *See, e.g.*, *Copart, Inc. v. Sparta Consulting, Inc.*, 2018
4  WL1871414, at *12, *14 (E.D. Cal. Apr. 19, 2018) (denying plaintiffs' motion in limine to
5  "exclude testimony or expert opinions from defendants' expert . . . about . . . 'whether
6  ZCL_IMAGING qualifies as a trade secret,'" because "[v]igorous cross-examination,
7  presentation of contrary evidence, and careful instruction on the burden of proof are the
8  traditional and appropriate means of attacking shaky but admissible evidence"); *OTR*
9  *Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 2016 WL 3626383, at *3 (E.D. Wash. Jan.
10 20, 2016) (holding that the defendants' expert is allowed to testify to the jury that the
11 plaintiffs' trade secrets were not misappropriated, and that plaintiffs' expert can "opine
12 that Plaintiffs have trade secrets which were misappropriated by Defendants"); *Xtec, Inc. v.*
13 *Cardsmart Technologies, Inc.*, 2014 WL 10268426, at *11 (S.D. Fla. 2014) (stating "[an]
14 expert opinion concluding that Defendants misappropriated Xtec's trade secrets . . . could
15 be relied upon by the jury to find in favor of Xtec").

16  For these reasons, XP's Motion to Exclude the Testimony of Dr. Rafinejad and Dr.
17 Shanfield is DENIED.

18  **B.   Mr. Faulkner (ECF 115)**

19  XP next moves to exclude the testimony of Comet's digital forensics expert, Mr.
20 Faulkner.  ECF 115.  Mr. Faulkner is a forensics expert with over seventeen years of
21 experience in forensic analysis.  See ECF 201-4 ¶¶ 6–7.

22  In summarizing his findings, he asserts "[m]y forensic analysis of the various
23 computer hard drives and external devices confirms that thousands of Comet-related files
24 were transferred onto various external devices shortly before the XP Employees left
25 Comet.  My review also confirms that anti-forensic measures were taken on computer hard
26 drives and USB devices alike.  This resulted in the complete wiping of at least two USB
27 devices. . . My review of the XP Laptop forensic artifact listings and various XP-produced
28 documents confirm that at least Beuerman and Mason's user accounts both accessed

6

Comet-related files on external devices connected to their XP laptops and put multiple Comet-related files onto the local hard drives while employed by XP." *Id.* at ¶ 14.

In arguing for exclusion, XP asserts that Mr. Faulkner performed no forensic analysis nor methodology in coming to a conclusion about whether files were transferred and whether those files were "Comet-related." Instead, he reviewed a list of documents and selected those which a Comet employee informed him had "Comet-related" terms in the name. ECF 117-1 at 1. XP asserts that Mr. Faulkner "intends to testify that XP may have deleted relevant information from Mr. Beuerman's XP laptop and that Mr. Beuerman may have transferred relevant information from two of his external devices prior to reformatting them." XP asserts that these allegations are not grounded in fact and would confuse the jury because the case focuses on allegations about the former Comet employees, not the actions of XP as a company. ECF 115-1.

Comet responds that XP in its Motion mischaracterizes the facts and scope of Mr. Faulkner's report. "Mr. Faulkner opines that he searched for files and folders that are 'Comet-related' in order to explain the methodology he employed to identify the specific files he determined were accessed or copied and saved on Beuerman and Mason's XP laptops. Mr. Faulkner's explanation that he searched for 'Comet-related' materials is not the final word on whether those documents originated at Comet." ECF 199 at 11. Instead, both Mr. Faulkner understood the tracing-back to be the within the purview of the Shanfield report, not challenged by this motion. *Id.; see also* ECF 200-4 (Faulkner Reply Report) ¶¶ 75, 78 (clarifying scope of report).

Having considered the arguments of both parties and reviewed the disputed expert reports, the Court agrees that questions over the reliability of methodologies are best addressed using cross-examination, not exclusion. This approach is consistent with that taken by other courts within the Ninth Circuit when faced with similar factual scenarios. *See Hangarter*, 373 F.3d at 1017, n.14 ("Although Defendants during voir dire argued that [Plaintiff's expert's] selection of documents to review went to the reliability of his 'methodology' as an expert, the district court correctly surmised that questions regarding

1  the nature of [that expert's] evidence went more to the 'weight' of his testimony—an issue
2  properly explored during direct and cross-examination.") (internal citations and quotations
3  omitted); *Regents of Univ. of California v. Affymetrix, Inc.*, 2019 WL 1298094, at *4 (S.D.
4  Cal. Mar. 21, 2019) (finding that the plaintiff's argument that the defendant's experts'
5  opinions failed to consider relevant data in conducting his analysis goes to the weight of
6  the expert testimony, not its admissibility). ECF 199 at 13.

7  Accordingly, the Court DENIES XP's Motion to Exclude Mr. Faulkner.

### C. Mr. Malackowski (ECF 118)

XP next moves to exclude the testimony of Comet's damages expert, Mr. Malackowski. ECF 118. Mr. Malackowski concludes that XP has been unjustly enriched or, in the alternative, that XP should pay a lump sum royalty to Comet. ECF 118 at 8. According to XP, this number is neither the value of the trade secrets, nor payment avoided by XP.

XP asserts that the damages opinions are speculative and not based on sufficient evidence. ECF 118 at 22-29. According to XP, this includes significant upward revisions, based, not on financial data, but on the statements of two Comet employees. *Id.* XP also critiques Mr. Malackowski's model because it is not dependent on XP's use of Comet's trade secrets. Instead, it allows damages to Comet regardless of whether, and to what extent, the trade secrets were misappropriated. *Id.* XP also asserts that Mr. Malackowski fails to account for depreciation of trade secrets or to exclude non-development costs. *Id.* at 11-12. XP also asserts that the analysis fails to account for XP's existing technologies in the development of the contested trade secrets. *Id.* at 13. With respect to Mr. Malackowski's proposed alternative payment of a "reasonable royalty," XP objects that he neglected to apportion avoided costs between XP and Comet." *Id.* He also doesn't consider comparable licenses. *Id.* at 23. Mr. Malackowski's "Option Value" theory was not disclosed in discovery and is not based on reliable methodology. ECF 31-32.

Comet responds both that Mr. Malackowski's avoided cost analysis and his reasonable royalty analysis are reliable and proper. ECF 207 at 9, 16. Further, Comet

8

argues that his opinions based on injunctive relief are permissible. With respect to unjust enrichment, Comet notes that Mr. Malackowski made downward adjustments to avoid capturing R&D not directly related to trade secrets, and to account for the iterative nature of the development process. ECF 207 at 6. With respect to reasonable royalties, Comet notes that Mr. Malackowski applied the factors set forth in *Univ. Computing Co. v. Lykes-Youngtown Corp.*, 504 F.2d 518 (5th Cir. 1974). *Id.* at 7. With respect to injunctive relief, Comet argues that Mr. Malackowski analyzed whether the misappropriation caused irreparable harm. With respect to the inadequacy of monetary damages, "Mr. Malackowski determined that XP's misappropriation would cause price erosion, would harm Comet's goodwill, would cause Comet to lose market share, and would cause Comet to lose business opportunities; all of which cannot be adequately remedied through monetary relief in this case." *Id.* at 8. Further, Comet argues that they did disclose all of the bases for Mr. Malackowski's conclusions. *Id.* at 22-23.

The Court agrees that the opinions are permissible. For the purposes of *Daubert*, "'[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful' to the trier of fact." *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6615050, at *5 (N.D. Cal. Dec. 17, 2018); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("battle of the experts" not appropriate for *Daubert*). Additionally, the Court agrees that Comet did adequately disclose during discovery the basis for each conclusion reached by Mr. Malackowski.

**D.  Motion to Exclude XP's Experts Related to Unclean Hands (ECF 125)**

Comet argues that because the Court has granted partial summary judgment in favor of Comet and excluded the unclean hands defense, at ECF 247, expert testimony related to that defense should be stricken. *See* Section V.A of Mr. Cowen's sur-reply report, Section IV of Dr. Spencer's sur-reply report, Section VII of Dr. Phinney's sur-reply report at ¶¶ 127–148, and Section VI of Dr. Phinney's sur-reply report at ¶¶ 116, 118. The Court agrees. Accordingly, the Motion is GRANTED.

### III. CONCLUSION

For the reasons discussed above, XP's Motions to Exclude Comet experts Dr. Rafinejad and Dr. Shanfield (ECF 112), Mr. Faulkner (ECF 115), and Mr. Malackowski (ECF 118) is DENIED, as XP's objections go to weight and not admissibility. Comet's Motion to Exclude Expert Testimony About Unclean Hands is GRANTED, as the Court has previously granted summary judgment for Comet on this issue. *See* ECF 247.

**IT IS SO ORDERED.**

Dated: March 2, 2022

_____
NATHANAEL M. COUSINS
United States Magistrate Judge