United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COMET TECHNOLOGIES USA INC., and others,

Plaintiffs,

v.

XP POWER LLC,

Defendant.

Case No. 20-cv-06408-NC

**CLOSING JURY INSTRUCTIONS**

**Jury Instructions # 1: DUTY OF THE JURY**

Members of the Jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with the law or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Jury Instruction # 2: WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence; and
3. any facts to which the lawyers have agreed (these are called "stipulations").

**Jury Instruction # 3: STIPULATIONS OF FACT**

The parties have agreed to certain facts to be placed in evidence. You must therefore treat these stipulated facts as having been proved. A copy of the stipulated facts will be provided to you in the admitted exhibit binder that will be provided for your deliberations.

**Jury Instruction # 4: DEPOSITION IN LIEU OF LIVE TESTIMON**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Jury Instruction # 5: WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony, fact stipulations, and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list things for you that are not evidence:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them from admissible evidence differs from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys

United States District Court
Northern District of California

have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Jury Instruction # 6: DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Jury Instruction # 7: WITNESS CREDIBILITY**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Jury Instruction # 8: BIAS**

Each one of us has biases about or certain perceptions or stereotypes of other people. We may be aware of some of our biases, though we may not share them with others. We may not be fully aware of some of our other biases. Our biases often affect how we act, favorably or unfavorably, toward someone. Bias can affect our thoughts, how we remember, what we see and hear, whom we believe or disbelieve, and how we make important decisions.

United States District Court
Northern District of California

As jurors you are being asked to make very important decisions in this case. You must not let bias, prejudice, or public opinion influence your decision. You must not be biased in favor of or against parties or witnesses because of their disability, gender, gender identity, gender expression, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status.

Your verdict must be based solely on the evidence presented. You must carefully evaluate the evidence and resist any urge to reach a verdict that is influenced by bias for or against any party or witness.

**Jury Instructions # 9: IMPEACHMENT EVIDENCE**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Jury Instructions # 10: EXPERT OPINION**

You have heard testimony from certain individuals on both sides who testified to opinions and the reasons for their opinions. This expert opinion testimony is allowed because of the education or experience of these witnesses.

Such expert opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Jury Instruction # 11: BURDEN OF PROOF**

Preponderance of the Evidence: When Comet has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that Comet's claim is more probably true than not true. When XP has the burden of proving any defense by a preponderance of the evidence, it means you must be persuaded by the the evidence that XP's defense is more probably true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

United States District Court
Northern District of California

**Jury Instruction # 12: MISAPPROPRIATION OF TRADE SECRETS -INTRODUCTION**

Now I will instruct you on the elements of Comet's claims for trade secret misappropriation. Comet claims that information related to its radio-frequency generators and matching networks are its trade secrets and that XP misappropriated them. The Alleged Comet Trade Secrets are listed below:

1. Alleged Trade Secret D: Da Vinci RF Generator Control, Digital Measurement, and Software
2. Alleged Trade Secret E: Next Generation RF Matching Network
3. Alleged Trade Secret L: Kiyo Matching Network Trade Secrets
4. Alleged Trade Secret S: AMAT Matching Network

The listing of the Alleged Comet Trade Secrets has been done for your convenience. It does not mean that they are (or are not) in fact trade secrets. Comet must still prove that each one both qualifies as a trade secret and was misappropriated by XP.

The jury is no longer being asked to evaluate Alleged Comet Trade Secret T. Alleged Comet Trade Secret T will not appear on the verdict form. You should not speculate as to the reason why.

**Jury Instruction # 13: MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS**

Comet claims that XP has misappropriated certain of Comet's trade secrets. To succeed on its claim, Comet must prove all of the following:

1. That Comet owned the following:
    - Alleged Trade Secret D: Da Vinci RF Generator Control, Digital Measurement, and Software
    - Alleged Trade Secret E: Next Generation RF Matching Network
    - Alleged Trade Secret L: Kiyo Matching Network Trade Secrets
    - Alleged Trade Secret S: AMAT Matching Network

United States District Court
Northern District of California

2. That these were trade secrets at the time of the misappropriation; and

3. That XP improperly acquired or used the trade secrets.

**Jury Instruction #14: TRADE SECRET INFORMATION GENERALLY**

A trade secret is information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that (l) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

The term "trade secret" can include compilations of public information when combined or compiled in a novel way, even if a portion or every individual portion of that compilation is generally known. Combinations or compilations of public information from a variety of different sources, when combined or compiled in a novel way, can be a trade secret. In such a case, if a portion of the trade secret is generally known or even if every individual portion of the trade secret is generally known, the compilation or combination of information may still qualify as a trade secret if it meets the definition of a trade secret set forth in the preceding paragraph.

**Jury Instruction # 15: TRADE SECRET CONCRETENESS**

In articulating a trade secret, it is not enough for Comet to point to broad areas of technology. Instead, it is Comet's burden by a preponderance of the evidence to identify concrete information that it contends to constitute its Alleged Trade Secrets.

**Jury Instruction # 16: SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. For example, it may be disclosed to employees involved in Comet's use of the Alleged Trade Secret as long as they are obligated to keep the information secret. It may also be disclosed to

United States District Court
Northern District of California

nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

**Jury Instruction # 17: REASONABLE EFFORTS TO PROTECT TRADE SECRETS**

To establish that the information is a trade secret, Comet must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Comet, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Comet claims to be a trade secret.

In determining whether or not Comet made reasonable efforts to keep the Alleged Trade Secrets secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1. Whether documents or computer files containing the information were marked with confidentiality warnings;
2. Whether Comet instructed its employees to treat the information as confidential;
3. Whether Comet restricted access to the information to persons who had a business reason to know the information;
4. Whether Comet kept the information in a restricted or secured area;
5. Whether Comet required employees or others with access to the information to sign confidentiality or nondisclosure agreements;
6. Whether Comet took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;
7. The extent to which any general measures taken by Comet would prevent the unauthorized disclosure of the information; and

United States District Court
Northern District of California

8. Whether there were other reasonable measures available to Comet that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Jury Instruction # 18: INDEPENDENT ECONOMIC VALUE**

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from its disclosure or use. In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which the owner obtained or could have obtained economic value from the information in keeping it secret;
2. The extent to which others could have obtained economic value from the information if it were not secret;
3. The amount of time, money, or labor that the owner expended in developing the information; and
4. The amount of time, money, or labor that defendant saved by using the information.

The presence or absence of any one or more of these factors is not necessarily determinative. This requirement applies separately to each item that is alleged to be a trade secret.

**Jury Instruction # 19: DEFINITION OF MISAPPROPRIATION**

If you find that Comet has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether that trade secret information was misappropriated by XP. To prove that a misappropriation occurred, Comet must prove by a preponderance of the evidence that:

United States District Court
Northern District of California

1. XP acquired Comet's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or
2. XP disclosed or used Comet's trade secret without Comet's express or implied consent, and XP:
   - A. Used improper means to acquire knowledge of the trade secret; or
   - B. At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:
     - i. Derived from or through a person who used improper means to acquire it; or
     - ii. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
     - iii. Derived from or through a person who owed a duty to Comet to maintain its secrecy or limit its use.

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means, or downloading copies of confidential information for purposes other than serving the interests of an employer.

On the other hand, the phrase "improper means" does not include acquiring information through reverse engineering, independent development, or obtaining the information from public sources.

**Jury Instruction # 20: AFFIRMATIVE DEFENSE: INFORMATION READILY ASCERTAINABLE BY PROPER MEANS**

XP did not misappropriate a Comet trade secret if XP proves by a preponderance of evidence that the trade secret information allegedly used or disclosed by XP was readily ascertainable by proper means at the time of the alleged misappropriation. Information that is generally known in the field or is readily ascertainable by proper

means by those skilled in the art at the time of the alleged misappropriation cannot qualify as a trade secret. There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, reverse-engineered, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials or if it could be readily determined by those skilled in the art. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is readily ascertainable by proper means.

**Jury Instruction # 21: RESPONDEAT SUPERIOR**

You have heard testimony about whether certain individuals were employed by Comet or XP throughout the course of this trial. XP can be held liable for harm resulting to Comet from the conduct of another if XP knows that the other's conduct constituted a breach of duty and gives substantial assistance or encouragement to the other.

As a corporation, XP can only act through its employees, agents, directors, or officers.

Therefore, XP is responsible for the acts of its employees, agents, directors, and officers performed within the scope of employment. An employee is acting within the scope of his or her employment if:

1. His or her conduct is reasonably related to the kinds of tasks that the employee was employed to perform; or
2. His or her conduct is reasonably foreseeable in light of the employer's business of the employee's job responsibilities.

Conduct is within the scope of employment when actuated, at least in part, by a purpose to serve the employer. A corporation knows what its employees know about subjects that are within the scope of the employees' duties and responsibilities.

An illegal act may still be within the scope of employment, so as to impose liability on the corporation. A different rule applies with regard to punitive damages.

United States District Court
Northern District of California

United States District Court
Northern District of California

**Jury Instruction # 22: DAMAGES: INTRODUCTION**

It is my duty to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you decide that Comet has proved one or more of its trade secret misappropriation claims against XP, then you also must decide how much money will reasonably compensate Comet for the harm. It is for you to determine what damages, if any, have been proven. Your award, if any, must be based upon evidence and not upon speculation, guesswork, or conjecture.

You can find that Comet should be awarded damages only if XP's actions were a substantial factor in bringing about the damages. A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor.

**Jury Instruction # 23: UNJUST ENRICHMENT**

Comet is seeking compensatory damages under two alternative theories. First, Comet is seeking damages based on unjust enrichment. XP was unjustly enriched if its misappropriation of Comet's trade secrets caused XP to receive a benefit that they otherwise would not have achieved. Unjust enrichment does not occur, however, where the benefit would have been realized anyway.

If you find XP misappropriated an Alleged Trade Secret and was thereby unjustly enriched, then you must decide whether Comet has proven by a preponderance of the evidence a calculable dollar value for the unjust enrichment by XP of that Alleged Trade Secret. Comet must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.

To decide the amount of any unjust enrichment, first determine the value of XP's benefit that would not have been achieved except for their misappropriation. Then subtract from that amount XP's reasonable expenses, including the value of the specific categories of expenses in evidence, such as labor, materials, rents, and interest on invested capital.

Moreover, Comet had a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. XP has the burden of proving by a preponderance of evidence:

1. that Comet failed to use reasonable efforts to mitigate damages; and
2. the amount by which damages would have been mitigated.

**Jury Instruction # 24: REASONABLE ROYALTY**

As an alternative to unjust enrichment, you may award Comet compensatory damages for trade secret misappropriation in the form of a reasonable royalty. If you find that a reasonable royalty should be awarded to Comet for trade secret misappropriation by XP, you may determine the amount of the royalty.

Generally speaking, a reasonable royalty is defined as the reasonable amount that someone wanting to use a trade secret or other protected intellectual property should expect to pay the owner, and the owner should expect to receive, for its use, calculated from the time of the misappropriation to the date of your verdict. Said another way, a reasonable royalty aims to calculate what the parties would have agreed to as a fair licensing price at a time just before the alleged misappropriation occurred.

In this case, the reasonable royalty is the payment that would have resulted from a hypothetical negotiation between Comet and XP. You should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the information allegedly misappropriated was lawfully protected, and that it was improperly acquired, used, or disclosed by XP. In addition, you must assume that the parties were willing to enter into an agreement.

The measure of damages is the royalty that would have resulted from this hypothetical negotiation, and not simply what royalty either party would have preferred. You should assume that Comet and XP knew at that time such things as the level of sales and profits that XP would make using the intellectual property, the research and development cost-savings XP would avoid using the intellectual property, and the sales

and profits that Comet would lose as a result of XP's use of Comet's intellectual property. You should also assume that Comet was willing to grant XP a license to use its protected intellectual property and that XP was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Comet would consider in setting the amount XP would pay. I will list for you a number of factors which you may consider. This is not intended as an exclusive list of the factors which you may consider, although it will give you an idea of the kinds of things to consider in setting a reasonable royalty. Among the factors which you may find relevant are the following:

1) The resulting and foreseeable change in the parties' competitive posture;

2) The prices past purchasers or licensees of the trade secrets may have paid;

3) The total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business;

4) The nature and extent of the use the defendant intended for the secret; and finally,

5) Whatever other unique factors in a particular case which might have affected the parties' agreement, such as the availability or absence of alternative processes.

**Jury Instruction # 25: REASONABLE ROYALTY CALCULATION**

A reasonable royalty can be in the form of either a percentage of a royalty base such as, for example, sales or profits, or alternatively based upon a fixed price. Another way to calculate a royalty is to determine a one-time lump sum payment that XP would have paid at the time of the hypothetical negotiation for a license covering use of the trade secrets through the date of trial. You may decide to adopt either of these approaches, provided that it corresponds to what you believe would have resulted from the hypothetical negotiation previously described. You may consider opinion testimony received in the trial in determining which method of calculating a royalty is more appropriate.

United States District Court
Northern District of California

**Jury Instruction # 26: PUNITIVE DAMAGES**

If you find for Comet on one or more of its trade secret misappropriation claims, you may, but are not required to, assess additional punitive damages against XP. The purposes of punitive damages are to punish XP for its conduct and to deter XP and others from engaging in similar conduct in the future.

In order for Comet to recover punitive damages, you must find that Comet has proved by a preponderance of the evidence that XP's acts of trade secret misappropriation were willful and malicious. "Willfull" means that XP acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. Conduct is "malicious" if it is accompanied by ill will or spite, or if it is done for the purpose of injuring Comet.

Punitive damages may be awarded against an employer because of an act by its employee if, but only if you find:

1. The employer authorized the doing and the manner of the act;

2. The employee was unfit and the employer was reckless in employing him or her;

3. The employee was employed in a managerial capacity and was acting in the scope of his or her employment; or

4. The employer or a manager of the employer ratified or approved of the act.

In determining whether an employee is acting in a managerial capacity, you should consider the employee's authority and discretion to make decisions and not only the employee's title.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either party. In determining the amount of any punitive damages, you should consider the following factors:

United States District Court
Northern District of California

1. The reprehensibility of the conduct;
2. The impact of the conduct on Comet;
3. The relationship between Comet and XP;
4. XP's financial condition;
5. The likelihood that such conduct would be repeated by XP or others if an award of punitive damages is not made; and
6. The relationship of any award of punitive damages to the amount of actual harm Comet suffered.

If you find that XP acted willfully and maliciously, you may award Comet an amount of exemplary damages up to 2 times the total amount of the compensatory damages you award Comet for trade secret misappropriation.

**Jury Instruction # 27: ARGUMENTS OF COUNSEL ARE NOT EVIDENCE OF DAMAGES**

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Jury Instruction # 28: DO NOT CONSIDER ATTORNEY FEES AND COURT COSTS**

You must not consider, or include as part of any award, attorney fees, or expenses that the parties incurred in bringing or defending this and a prior lawsuit between the parties.

**Jury Instruction # 29: EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; and how to locate and view the exhibits on the computer. You will also be provided with a paper list of all exhibits received in evidence. If you need additional

equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view in your note to my courtroom deputy.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any “outside” website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

The physical devices you received are evidence in this trial. You may inspect them in your deliberations as they were presented in trial, but must not alter or modify the devices in any way, including by opening the devices or by removing device components. You must not plug the devices into an electrical outlet.

**Jury Instruction # 30: DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous, meaning you must all agree.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Jury Instruction # 31: COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through my courtroom deputy signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Jury Instruction # 32: VERDICT FORM**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise my courtroom deputy that you are ready to return to the courtroom.

**IT IS SO ORDERED.**

Dated: March 21, 2022

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California