Adam Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay Deoras (SBN: 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Attorneys for Plaintiffs
COMET TECHNOLOGIES USA INC.,
COMET AG AND YXLON INTERNATIONAL
GMBH

Sharre Lotfollahi (SBN: 258913)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900

Leslie M. Schmidt (pro hac vice)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Kat Li (pro hac vice)
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9167
Facsimile:    (512) 678-9101

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

COMET TECHNOLOGIES USA INC. , a
Delaware corporation, COMET AG, a Swiss
corporation, and YXLON
INTERNATIONAL GMBH, a German
corporation,

          Plaintiffs,

    v.

XP POWER LLC, a California Limited
Liability Company,

          Defendant.

CASE NO. 5:20-cv-6408

**PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

**PUBLIC - REDACTED VERSION**

# **TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ......................................................................................................... 1

    A.    XP Should Be Enjoined from Its Ongoing Use of Comet's Trade Secrets ...................... 2

        1.    XP's Possession And Ongoing Use Of Comet's Trade Secrets And
            Documents And Technologies Derived From Comet's Trade Secrets Will
            Irreparably Injure Comet ........................................................................... 2

            a.    XP's Misappropriation Has Already, and Will Continue to,
                Irreparably Harm Comet's Business And Market Position if Not
                Enjoined ...................................................................................... 2

            b.    XP's Misappropriation Is Causing Comet Reputational Harm and
                Devaluing Its R&D ...................................................................... 6

            c.    XP's Continued Possession and Use of Comet's Trade Secrets
                Risks Disclosure ......................................................................... 7

        2.    Comet's Remedies Available At Law Are Inadequate To Compensate It
            For XP's Misappropriation ....................................................................... 7

        3.    The Balance Of Hardships Weighs In Favor Of Enjoining XP ............................. 8

        4.    The Public Interest Strongly Favors Enjoining XP's Unlawful Conduct ............. 9

    B.    The Injunction Should Be Worldwide and Give Comet the Ability to Ensure that
        XP Has Stopped Its Use of Comet's Trade Secrets ........................................ 10

    C.    If No Injunction is Granted, XP Should Pay Ongoing Royalties .................................. 12

II.    CONCLUSION ..................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    2007 WL 4180682 (D. Or. Nov. 20, 2007)..............................................................6

*Anacomp, Inc. v. Shell Knob Servs., Inc.*,
    1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) ..............................................................6

*Asa v. Pictometry Int'l Corp.*,
    757 F. Supp. 2d 238 (W.D.N.Y. 2010) ...............................................................6

*Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*,
    1994 WL 125173 (N.D. Cal. Mar. 31, 1994)........................................................5

*Bianco v. Globus Med., Inc.*,
    2014 WL 1049067 (E.D. Tex. Mar. 17, 2014) ..................................................12

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)............................................................................6

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    2013 WL 890126 (N.D. Cal. Jan. 23, 2013) .....................................................4, 8

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
    2021 WL 1186335 (N.D. Cal. Mar. 1, 2021).......................................................2

*Chanel, Inc. v. Bryan*,
    2008 WL 11336327 (N.D. Ga. Nov. 18, 2008) ...................................................9

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
    2014 WL 1883474 (S.D.N.Y. May 9, 2014) ....................................................4, 5

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013)............................................................................6

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)..............................................................................................1

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
    730 F.2d 61 (2d Cir. 1984)....................................................................................7

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
    593 F. Supp. 2d 1088 (N.D. Cal. 2009) ............................................................5, 8

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)....................................................................................4

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
   2010 WL 141402 (S.D. Cal. Jan. 8, 2010)...................................................................5, 8

*i4i Ltd. P'Ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)........................................................................................8

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
   2017 WL 4038884 (E.D. Tex. Sept. 13, 2017) ...........................................................13

*Intertek Testing Servs. v. Pennisi*,
   443 F. Supp. 3d 303 (E.D.N.Y. 2020) ...........................................................................9

*Inventus Power, Inc. v. Shenzen Ace Battery Co.*,
   2020 WL 3960451 (N.D. Ill. July 13, 2020).................................................................10

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
   762 F.3d 867 (9th Cir. 2014) .........................................................................................1

*Lam Rsch. Corp. v. Deshmukh*,
   2005 WL 8173156 (W.D. Wash. Jan. 3, 2005)..............................................................9

*Netlist Inc. v. Diablo Techs. Inc.*,
   2015 WL 153724 (N.D. Cal. Jan. 12, 2015) ..................................................................8

*NuScience Corp. v. Henkel*,
   2009 WL 10700220 (C.D. Cal. Apr. 14, 2009) .....................................................6, 8, 10

*OmniGen Research, LLC v. Yongqiang Wang*,
   2017 WL 5505041 (D. Or. Nov. 16, 2017)...................................................................10

*PepsiCo Inc. v. Redmond*,
   54 F.3d 1262 (7th Cir. 1995) .........................................................................................9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   2013 WL 4068833 (S.D. Cal. Aug. 12, 2013) ...............................................................8

*Richard Feiner & Co. v. Turner Entm't Co.*,
   1998 WL 78180 (S.D.N.Y. Feb. 24, 1998)..................................................................10

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011).....................................................................................8

*Solarbridge Techs., Inc. v. Ozkaynak*,
   2012 WL 2150308 (N.D. Cal. June 12, 2012) ...............................................................7

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
   No. 15-cv-00211, Dkt. 993 (S.D.N.Y. May 18, 2021) ...........................................2, 12

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
   2014 WL 1457797 (D. Del. Apr. 14, 2014)..................................................................13

*Update Art, Inc. v. Modiin Pub., Ltd.*,
   843 F.2d 67 (2d Cir. 1988)................................................................................11

*Vertical Doors Inc. v. J.T. Bonn Inc.*,
   2008 WL 11343051 (C.D. Cal. Dec. 15, 2008) ......................................................10

*WeRide Corp. v. Kun Huang*,
   379 F. Supp. 3d 834 (N.D. Cal. 2019) ..........................................................5, 7, 8, 9

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018)..................................................................................10

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ........................................................................4

**Statutes**

18 U.S.C. § 1836................................................................................................1, 12

18 U.S.C. § 1837................................................................................................11

1    Comet Technologies USA Inc., Comet AG, and YXLON International GmbH (collectively,

2    "Comet" or "Plaintiffs") respectfully request that the Court enter a permanent injunction enjoining XP

3    Power ("XP"), its officers, agents, servants, employees, and attorneys, and all those acting together with

4    any of them, from continuing to misappropriate Comet's trade secrets, including possession, use,

5    duplication, or advertisement of Comet's trade secrets anywhere in the world.  As confirmed by the jury's

6    verdict, XP engaged in a multi-year scheme to willfully and maliciously steal Comet's trade secrets—

7    including those relating to its highly anticipated, yet-to-be-released next generation technology, which

8    reflects years of product development and substantial investment.  Immediate injunctive relief is essential

9    in this case:  as the evidence at trial confirmed, XP is on the verge of releasing its copycat matching

10   network and generator technologies, and has already begun discussions with customers including Comet's

11   primary customers.  Yet, for years, XP's soon-to-be-released products have been based on Comet trade

12   secret technologies, and, as shown at trial, XP repeatedly returned to Comet's technologies throughout the

13   years as part of its development process.  As discussed below, in view of its substantial investment to

14   produce its industry-leading technologies (including its next generation technologies) and the importance

15   of being first to market with new technologies, Comet will unquestionably be irreparably harmed if XP is

16   not immediately and permanently enjoined from moving forward with marketing and selling products

17   incorporating Comet's trade secrets.

18   ## I.    ARGUMENT

19       The Defend Trade Secrets Act (DTSA) authorizes federal courts to grant permanent injunctions to

20   prevent actual or threatened trade secret misappropriation.  18 U.S.C. § 1836(b)(3)(A).  To determine

21   whether a permanent injunction should issue, courts consider whether a prevailing plaintiff has

22   demonstrated: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as

23   monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

24   hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

25   interest would not be disserved by a permanent injunction.  *La Quinta Worldwide LLC v. Q.R.T.M., S.A.*

26   *de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

27   391 (2006)).  Comet succeeded on the merits in this case, and as explained below, each of the relevant

28   factors weigh in favor of entry of a worldwide injunction to halt XP's continued willful and malicious

misappropriation. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 15-cv-00211, Dkt. 993 (S.D.N.Y. May 18, 2021) (entering worldwide permanent injunction).  In the alternative, and while such an approach would be we fully insufficient to protect the market position that Comet has rightfully earned through its ingenuity and hard work, if the Court does not enter an injunction, then a substantial ongoing royalty should be awarded for XP's continued use of Comet's trade secrets.

### A.    XP Should Be Enjoined from Its Ongoing Use of Comet's Trade Secrets

####     1.    XP's Possession And Ongoing Use Of Comet's Trade Secrets And Documents And Technologies Derived From Comet's Trade Secrets Will Irreparably Injure Comet

Comet succeeded on the merits of its misappropriation claim when the jury found that all of the Asserted Trade Secrets are, in fact, Comet's trade secrets, and XP had misappropriated through improper means three of Comet's trade secrets, including the critical trade secrets relating to Comet's next generation radio frequency (RF) matching network and generator technologies and Comet's match network technologies for its customer Lam.  Dkt. 406.  The jury also awarded punitive damages for XP's willful and malicious conduct.  *Id.*  Comet will be irreparably injured by XP's willful and malicious misappropriation absent an injunction.  *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2021 WL 1186335, at \*10 (N.D. Cal. Mar. 1, 2021).[1]  The record overwhelmingly demonstrates that Comet obtained its market position through substantial investments in research, development, and protection of its intellectual property, all of which will continue to be irreparably harmed if XP is not enjoined from its continued possession and use of the trade secrets.  That harm will only become more severe as XP gears up to launch its next generation products, which were developed with Comet's trade secrets.  And although the jury awarded past compensatory damages to Comet for XP's misappropriation in the form of XP's unjust enrichment, that award does not remediate the broader, future harms to Comet's market position and its ability to protect its trade secrets if XP is not enjoined.

#####       a.    XP's Misappropriation Has Already, and Will Continue to, Irreparably Harm Comet's Business And Market Position if Not Enjoined

---

[1] Comet's success on its misappropriation claim is "sufficient to support a finding of irreparable harm" under governing law.  *Carl Zeiss*, 2021 WL 1186335, at \*10.  Although the "Ninth Circuit has not reached the question of whether a court may presume irreparable harm in trade secrets cases[,] . . . courts within this District have consistently reached the conclusion that a plaintiff 'will suffer irreparable harm if its proprietary information is misappropriated.'"  *Id.*

As the trial record demonstrates, development of market-competitive RF power products, particularly matching networks and generators for use in the semiconductor fabrication process, requires significant monetary and time investment.  There are also few competitors in this space.  PX3217.  Comet's RF matching networks and generators power technologies are purchased and used to power and precisely control plasma used in the manufacturing of semiconductors.  Trial Tr. at 123:13-124:3, 124:17-19, 178:16-179:1.  Comet developed its RF matching network and generator technologies by investing more than $100 million over more than 15 years, after already leading the market for development of vacuum capacitors, another RF power technology, for decades.  *Id.* at 90:8-91:11, 91:24-92:10, 93:15-95:2, 97:6-13, 153:22-154:9, 683:20-684:10.  Through its investments in its RF match and generator technologies, Comet strengthened its position as a leader in a competitive and highly specialized market, and in particular, developed strong forward-looking relationships with its customers, including the world's largest semiconductor capital equipment manufacturers in Applied Materials and Lam.  *Id.* at 95:3-96:13, 147:1-6, 489:6-490:19.  As explained during trial, Comet protects these technologies as trade secrets and values those trade secrets as some of its most important assets.  *Id.* at 99:25-101:2, 127:10-15, 132:1-133:21, 137:13-15, 150:23-151:6, 216:4-18.  Critically, Comet's misappropriated trade secrets are also important centerpieces of Comet's future RF match and generator business.  Comet's next generation RF match and generator technologies—including, trade secrets D and E, which the jury found XP misappropriated—are projected to advance the state of the art and disrupt the current market.  *See id.* at 132:1-134:7  (Mr. Grede explaining that Comet's next generation control systems are technologies never before seen in the market), 141:15-24 (explaining that next generation generators build upon and improve existing technology), 153:9-21, 202:21-203:2 (explaining that next generation match is built upon and improves existing match technologies); PX3561 (showing Comet's investments in its RF generator and next generation match); PX3565 (showing Comet's additional, increasing R&D investments in technologies building upon its trade secrets).  They have taken years of R&D investment to develop.  Trial Tr. at 97:6-98:8, 130:23-131:1, 140:12-15, 141:15-24, 149:11-19, 153:22-24, 201:13-203:2.  XP's theft of Comet's trade secrets will irreparably harm Comet by directly and irremediably diminishing Comet's market position and devaluing the unique trade secret technologies Comet has invested in as part of its forthcoming products.  Ex. 1 ¶¶ 17-29; Trial Tr. at 108:10-109:13, 689:19-690:4, 718:3-10, 734:12-17,

3

735:17-24, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 890126, at *9 (N.D. Cal. Jan. 23, 2013) ("[c]ommercial advantage is grounds for finding irreparable harm")[2]; *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 2014 WL 1883474, at *12-13 (S.D.N.Y. May 9, 2014) ("[I]t is well-established that a movant's loss of current or future market share may constitute irreparable harm.") (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007)).

If not enjoined, XP's misappropriation will irreparably damage Comet's market position and cause Comet to lose customers. Ex. 1 ¶¶ 11-16. Absent using misappropriated Comet documents and information, XP did not have the technology or technological capability to develop competitive RF match and generator products. Trial Tr. at 680:24-682:7, 683:5-19, 685:5-686:8; Morin Dep. Tr. at 140:21-141:13; PX3217, PX3229, PX3231. XP was not in the RF power market prior to its acquisition of Comdel at the end of 2017. Trial Tr. 678:21–679:7, 680:24-682:7, 683:5-19, 685:5-686:8. And the RF power technology XP acquired through Comdel was outdated based on Comdel's lack of research and development investment, causing XP to repeatedly criticize its Comdel line of products and expressing that "NEW PRODUCT [was] NEEDED." *Id.*; *see also id.* at 683:20-684:10. Comet, on the other hand, is recognized as a leader in RF power products and the market leader in RF match, in a market with few competitors. *Id.* at 773:18-774:5. Thanks to its significant head start obtained through its misappropriation, however, as of June 2021, XP's CTO admitted that it had anticipated ███████████ ████████████████████████████████████████████████████████████ *Id.* at 961:21-962:10. Although XP suggested at trial that its products ██████████████████████████, that was belied by its CTO's admissions, its presentation at trial of a completed matching network product (which XP implausibly claimed ███████████████████████████████████████████, and its ███████████ ████████████████████████████████████████████████. *Id.* at 513:11-518:15; PX3335. By contrast, XP provided no documentary evidence that its development process is delayed from the timeframes its CTO admitted to—strongly suggesting that XP was merely waiting for the trial to be completed to launch. Once XP releases RF power products that are competitive with

---

[2] Although the court in *Brocade* evaluated an irreparable harm pursuant to injunctive relief under the California Uniform Trade Secrets Act, "[i]njunctions in the area of trade secrets are governed by principles applicable to injunctions in general." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1449 (2002).

Comet's, and which were developed using Comet's disruptive next generation technology (and other Comet technologies), there will be significant and irremediable harm to Comet's market-leading position (in match) and market share because Comet will be forced to compete with its own technology.  Loss of market share and customers constitutes irreparable harm.  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853-854 (N.D. Cal. 2019) ("It is well established that the loss of market position . . . can constitute irreparable harm."); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088 (N.D. Cal. 2009) (loss of market share (finding the negative effect of patent infringement on plaintiff's relationship with third party) satisfied irreparable harm); *I-Flow Corp. v. Apex Med. Techs., Inc.*, 2010 WL 141402, at *1 (S.D. Cal. Jan. 8, 2010) (lost market share as a result of defendants' conduct was sufficient to demonstrate irreparable injury).

Moreover, this loss of market share and customers is exactly what XP intends.  As XP has made clear throughout this case and at trial, XP wants to use the products it is developing with Comet's trade secrets to target and take specific business from Comet's largest customers:  Lam and Applied Materials. Trial Tr. at 95:34-17, 95:25-96:17, 447:10-15, 490:10-19, 501:12-502:16, 685:2-22, 685:23-686:22, 776:18-25; PX3229 (XP presentation explaining need for new RF products in order to capture "[h]uge revenue opportunities at AMAT and Lam").  As shown at trial, there are only a few significant producers of RF match and generator products for the semiconductor fabrication market, so XP's joining of that elite company through misappropriation will directly impact Comet's market position.  Trial Tr. at 567:9-15, 773:18-774:5, 786:24-787:3.  Indeed, XP has made no secret that taking these customers from Comet is its goal.  *Id.* at 690:8-19; PX2641; PX3517 (Email from Mr. Beuerman to Mr. Penny, XP's then CEO, explaining XP's plan to take more than $70 million of Comet's business from Applied Materials and Lam, which would have a significant impact on Comet's revenues); *see also* Trial Tr. at 883:23-884:17 (XP wants to be "first company people think about when they are thinking about RF.").  XP's direct competition for Comet's core business, using Comet's misappropriated technologies, will certainly irreparably harm Comet.  Ex. 1 ¶¶ 11-16; *see Complex Sys.*, 2014 WL 1883474, at *12-13 ("[P]laintiff was irreparably injured because defendant's unauthorized use and misappropriation of plaintiffs['] music database enabled defendant to compete directly with plaintiff's core business.") (internal quotation marks omitted); *Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*, 1994 WL 125173, at *3 (N.D. Cal. Mar. 31,

1   1994).   And Comet's loss of goodwill with its core customers from having to compete against a new

2   copycat competitor would likewise irreparably harm Comet's business.  *Asa v. Pictometry Int'l Corp.*, 757

3   F. Supp. 2d 238, 244 (W.D.N.Y. 2010) (finding irreparable harm where "[plaintiff] stands to lose customer

4   goodwill, as well as actual customers"); *Acumed LLC v. Stryker Corp.*, 2007 WL 4180682, at *4 (D. Or.

5   Nov. 20, 2007) (finding irreparable injury and inadequate remedies at law based on patent plaintiff's "loss

6   of market share and customers.").   Moreover, not only will XP's competition risk displacing Comet in

7   the near term, that displacement will irreparably harm Comet for years to come as RF power

8   implementations with customers have extended revenue cycles due to the design-in process.  Trial Tr. at

9   97:14-98:23, 1078:7-20; *see Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013)

10  (explaining that irreparable harm from lost market share is "compounded" in a market with a limited

11  number of customers, which is characterized by long-term sales relationships and an incumbency effect).

12  If XP is permitted to offer products to Comet's customers using Comet's technologies, the change in

13  Comet's market position (and hence, its entire business, which Mr. Crofton testified is the vast majority

14  of Comet's business, Trial Tr. at 93:15-95:2) will immeasurably and irretrievably harm Comet's future

15  business opportunities with those customers.

16              b.      XP's Misappropriation Is Causing Comet Reputational Harm and
17                      Devaluing Its R&D

18          If not enjoined, XP's continued misappropriation will also damage the value of Comet's R&D and

19  will cause Comet reputational harm by forcing Comet to compete against its own trade secret technology.

20  *NuScience Corp. v. Henkel*, 2009 WL 10700220, at *6 (C.D. Cal. Apr. 14, 2009); *Douglas Dynamics,*

21  *LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); Trial Tr. at 108:10-109:12, 153:7-21,

22  689:19-690:4; *see* Ex. 1 ¶¶ 12-14.  XP intends to release RF power products that use Comet's trade secrets.

23  Trial Tr. at 940:12-941:19, 961:21-962:11.   XP also intends to scoop Comet on the release of next-

24  generation products, which will be the leading product lines for many years to come—creating the false

25  impression with customers that **XP** is the innovator for the next-generation, as opposed to Comet.  *See,*

26  *e.g., id.* at 513:11-518:15; PX3335.  Not only will this harm Comet's reputation as an innovator, *see*

27  *Anacomp, Inc. v. Shell Knob Servs., Inc.*, 1994 WL 9681, at *5 (S.D.N.Y. Jan. 10, 1994), XP's theft will

28

allow it to catch up to, or bypass, Comet in the market because of the significant time saved in R&D through its theft.  Trial Tr. at 108:10-109:12, 153:9-21, 697:11-21.

> c.    XP's Continued Possession and Use of Comet's Trade Secrets Risks Disclosure

XP's continued possession and use of Comet's trade secrets also irreparably harms Comet by its loss of control over the disclosure of its trade secrets.  "It is well established that . . . the disclosure of trade secrets can constitute irreparable harm."  *WeRide Corp.*, 379 F. Supp. 3d at 853-854; *Solarbridge Techs., Inc. v. Ozkaynak*, 2012 WL 2150308, at *6 (N.D. Cal. June 12, 2012) (finding plaintiff suffered and would continue to suffer irreparable harm unless defendant was enjoined from disclosure of further trade secrets of plaintiff).  As confirmed by the jury's verdict, XP made extensive, multi-year use of Comet's trade secrets to develop its next generation RF power products.  XP has also widely disseminated the trade secrets throughout XP.  *Id.* at 949:21-951:19, 991:20-992:24; PX3299 (Mr. Beuerman presents slideshow containing Comet trade secret information to executives at XP), Trial Tr. at 478:22–479:12; 949:21–951:19; PX3502, PX3424 (Mr. Rummel collects and distills everything he can find from Mr. Beuerman); Trial Tr. at 479:13–24, 494:10–19; PX3320 (Mr. Irvine and Mr Rummel creating specifications based on Comet next generation controller technology).  XP did not materially deny this use; rather XP argued throughout this case, and at trial, that Comet's trade secrets are actually public (an argument the jury rejected).  Trial Tr. at 817:7-16, 828:7-829:4, 942:17-943:11, 1002:10-1003:12, 1018:15-1019:23, 1033:24-1034:12.  Without an injunction, Comet cannot control to whom XP further discloses Comet's trade secrets.  For example, XP could widely disclose the trade secrets it misappropriated from Comet (*e.g.* through patent applications), thereby destroying the trade secret status Comet spent time, effort, and resources to maintain.  "'A trade secret once lost is, of course, lost forever.'"  *WeRide Corp.*, 379 F. Supp. 3d at 853 (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)).  This irreparable harm favors entry of an injunction.

> 2.    Comet's Remedies Available At Law Are Inadequate To Compensate It For XP's Misappropriation

Remedies available at law, such as monetary damages, are wholly inadequate to compensate for the injuries discussed above.  Ex. 1 ¶¶ 17-29.  The jury's award of past damages does not protect against

the irreparable harm XP's misappropriation has caused, and will continue to cause, Comet if its misappropriation continues.  As discussed above, Comet has already suffered reputational harm as a result of XP's misappropriation, and allowing XP to launch its next generation products developed with Comet's trade secrets will cause Comet to suffer loss of market share and customers.  *WeRide Corp.*, 379 F. Supp. 3d at 853; *Funai Elec. Co., Ltd.*, 593 F. Supp. 2d at 1088; *I-Flow Corp.*, 2010 WL 141402, at *1.  Money damages are insufficient to compensate for such loss.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2013 WL 4068833, at *5 (S.D. Cal. Aug. 12, 2013) ("Loss of market share . . . 'may frequently defy attempts at valuation.'" (citing *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010))).   Indeed, it is essentially undisputed that XP obtained an unfair head start through its misappropriation.  "An injunction may be used to eliminate any unfair head start a defendant may have gained by improper use of confidential information, and is appropriate if it 'place[s the defendant] in the position it would have occupied if the breach' had not occurred." *Netlist Inc. v. Diablo Techs. Inc.*, 2015 WL 153724, at *7 (N.D. Cal. Jan. 12, 2015).  Here, XP presented no evidence that it had the capability to develop a single one of Comet's trade secrets, let alone even tried to do so.  *See Brocade Commc'ns Sys.*, 2013 WL 890126, at *9 (entering injunction where defendant failed to provide evidence of inevitable discovery "through proper means" or "evidence about how long those proper means would take").  To the contrary, XP was forced to rely on Comet's trade secrets to enter the market and take Comet's customers, which is likewise not compensable with monetary damages.  *NuScience*, 2009 WL 10700220, at *6 (C.D. Cal. Apr. 14, 2009); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155-1156 (Fed. Cir. 2011).

Lastly, as discussed above, without an injunction, XP could widely disseminate Comet's trade secrets, and could therefore eliminate the trade secret status of Comet's trade secret technologies.  As courts in this District have held, "[m]oney damages alone cannot protect against that dissolution," and therefore "remedies at law are inadequate." *Brocade Commc'ns Sys., Inc.* 2013 WL 890126.  Accordingly, this factor too favors the issuance of an injunction.

### 3.   The Balance Of Hardships Weighs In Favor Of Enjoining XP

XP has not identified, and will not suffer, any legally cognizable harm from being prohibited from continuing to use the trade secrets that it maliciously stole.  According to XP, its next generation RF matching network and RF generator have not actually been sold yet.  Trial Tr. at 831:25-832:21, 940:12-

941:21.  XP thus will not lose any current revenues as a result of the injunction, and the status quo will be maintained.  XP has also maintained that Comet's trade secrets have no value to it, meaning XP will face no hardship from ceasing to use them.  *Id.* at 788:22-789:2, 801:13-803:1.  Even if the injunction caused XP some harm, "[i]t is no burden for [defendants] to do what the law already requires."  *WeRide Corp.* 379 F. Supp. 3d at 853.  Moreover, nothing in the requested injunction stops XP from competing fairly in the RF power market with the products it purchased from Comdel (provided those products are not infected with Comet's trade secrets) or with any new products that it lawfully develops without use of Comet's trade secrets.  The proposed injunction is narrowly tailored to prohibit XP from continuing to possess and use Comet's trade secrets.

By contrast, Comet will face significant and irreparable harm if XP's future illegal actions are not enjoined, and may be forced to again turn to the Court to protect its property interests.  *See Chanel, Inc. v. Bryan*, 2008 WL 11336327, at *7 (N.D. Ga. Nov. 18, 2008); *see* Ex. 1 ¶¶ 30-35.  Comet's potential burden of having to try to monitor XP's actions, without any audit rights, is significant given XP's refusal to acknowledge that it has Comet's trade secrets in its possession or that it has used those trade secrets throughout the development of its next generation RF power products.  *See* § I.A.1.a, *supra*.  This harm to Comet outweighs the zero recognizable harm that XP would face if a permanent injunction issues in this case.

### 4.    The Public Interest Strongly Favors Enjoining XP's Unlawful Conduct

The public interest also supports granting Comet the relief it requests.  Trade secret law serves to protect "standards of commercial morality" and "encourage [] invention and innovation" while maintaining "the public interest in having free and open competition in the manufacture and sale of unpatented goods."  *Lam Rsch. Corp. v. Deshmukh*, 2005 WL 8173156, at *3 (W.D. Wash. Jan. 3, 2005) (quoting *PepsiCo Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995)); *Intertek Testing Servs. v. Pennisi*, 443 F. Supp. 3d 303, 347 (E.D.N.Y. 2020) ("injunctive relief would serve the public interest by ensuring that . . . protecting plaintiff's . . . secrecy of its trade secrets and confidential information.").  As a result, "[c]ourts often find that the public has a strong interest in protecting intellectual property rights," *WeRide Corp.*, 379 F. Supp. 3d at 854 ("an injunction would also promote fair and lawsuit competition in an emerging market."), as well as an interest in an injunction "serving as a deterrent to Defendants and third

1  parties that seek to misappropriate the trade secrets of [plaintiff] or others." *NuScience Corp.*, 2009 WL

2  10700220, at \*11.

3      These interests are especially served here, where Comet invested many years and hundreds of

4  millions of dollars to develop products that are based on its trade secret intellectual property.  Trial Tr. at

5  90:8-91:11, 91:24-92:10, 93:15-95:2, 97:6-13, 153:22-154:9, 683:20-684:10.  Granting an injunction in

6  this case would encourage continued and future investment in innovation, which favors the public's

7  interest.  *See* Ex. 1 ¶¶ 36-38.  Indeed, XP's witnesses and own CEO recognized the wrongful nature of

8  using someone else's confidential information without authorization.  *Id.* at 839:2-15 (Mr. Penny

9  admitting that "trade secret theft threatens the modern innovation economy"), 840:15-18, 841:23-842:4.

10  And there is no public interest served by allowing XP to continue its illegal acts—if anything, that would

11  encourage others to engage in the same unlawful conduct.  *Vertical Doors Inc. v. J.T. Bonn Inc.*, 2008 WL

12  11343051, at \*4 (C.D. Cal. Dec. 15, 2008) ("[I]f [Defendants] are allowed to continue selling their

13  infringing products, it may well encourage others to do the same.").

14      **B.      The Injunction Should Be Worldwide and Give Comet the Ability to Ensure that XP**
15             **Has Stopped Its Use of Comet's Trade Secrets**

16      Based on the DTSA, the jury's verdict, and XP's conduct throughout this case, the injunction

17  should be worldwide, preclude use of all of Comet's trade secrets, and require that XP quarantine and

18  remove the Comet trade secret information in its possession.  *First*, a worldwide injunction enjoining XP's

19  conduct should be entered.  *See, e.g.*, *Inventus Power, Inc. v. Shenzen Ace Battery Co.*, 2020 WL 3960451,

20  at \*7 (N.D. Ill. July 13, 2020) (recognizing likely extraterritorial application of DTSA); *OmniGen*

21  *Research, LLC v. Yongqiang Wang*, 2017 WL 5505041, at \*24 (D. Or. Nov. 16, 2017) (worldwide

22  injunction "appropriate and necessary" where "Defendants' wrongful actions have included conduct

23  occurring in China"); *Richard Feiner & Co. v. Turner Entm't Co.*, 1998 WL 78180, at \*1-3 (S.D.N.Y.

24  Feb. 24, 1998) (issuing worldwide injunction in copyright infringement case).  A worldwide injunction is

25  an appropriate domestic application of the DTSA because XP's misappropriation and copying (the

26  "focuses" of the relevant statutes) occurred in the United States, as explained below.  *See WesternGeco*

27  *LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) ("If the conduct relevant to the statute's

28  focus occurred in the United States, then the case involves a permissible domestic application of the

1   statute, even if other conduct occurred abroad."); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73

2   (2d Cir. 1988).  At a minimum, a worldwide injunction is appropriate because XP committed acts in

3   furtherance of its misappropriation in the United States (also discussed below), thus, the DTSA would

4   apply to extraterritorial conduct.  18 U.S.C. § 1837.

5       Comet maintains confidential documents related to its trade secrets in the United States.  *See, e.g.*,

6   Trial Tr. at 244:2-23 (Mr. Russell explaining that Comet's trade secret documents are stored on Comet's

7   servers).  Mr. Beuerman and Mr. Mason downloaded Comet's trade-secret materials from San Jose,

8   California and took those materials to XP in Sunnyvale, California.  Trial Tr. at 159:1-161:19, 164:16-23,

9   373:25-376:24, 378:4-381:3, 389:3-394:3; PX2695, PX2703, PX2711, PX2712, PX2713, PX2974,

10  PX3014, PX3025, PX3027, PX3443, PX3552-PX3554.  XP then shared those materials with employees

11  located throughout the company for use in products XP intends to sell around the world.  *See* PX3299,

12  PX3502, PX3424.  XP's theft and continued misappropriation of Comet's trade secrets, without an

13  injunction, will allow XP to enrich itself from sales of services using that stolen intellectual property

14  around the world.  Because XP's illegal conduct has continued around the world—and will continue absent

15  an injunction reaching its activities abroad—a worldwide injunction should issue.

16      *Second*, the jury concluded that each of the Trade Secrets D, E, L, and S are, in fact, trade secrets.

17  Although the jury concluded that XP misappropriated Trade Secrets D, E, and L, XP has no right to use

18  any of Comet's trade secrets, including trade secret S.  Similarly, the jury's award of past damages for

19  only Trade Secrets D and E does not mean XP has the unfettered right to use Trade Secrets L and S.

20  Indeed, the jury's award for Trade Secret E confirms that XP benefitted from the R&D work that Comet

21  performed in connection with Trade Secrets L and S, and the jury concluded that all of Comet's trade

22  secrets have actual or potential economic value.  Dkt. 406.  The injunction should therefore cover all of

23  the trade secrets the jury adjudicated at trial.

24      *Third*, the injunction should include quarantine and removal provisions, along with audit rights for

25  Comet, to ensure that XP no longer has the ability to use Comet's trade secrets.  These quarantine and

26  removal and audit provisions are critical here because XP has taken no steps to stop using Comet's trade

27  secrets in development of its RF match and generator products nor has it given any indication that it will

28  stop using the trade secret information in its future RF power technologies.  Instead, XP has continued to

ratify, or at a minimum, willfully blind itself to the misappropriation of Comet's trade secrets, even after Comet gave XP notice of the initial misappropriation in March 2018.  Trial Tr. 471:25-472:14, 854:4-24, 1096:7-10.  After being put on notice of Comet's misappropriation claims, and having Mr. Beuerman *confirm* that he had taken and used Comet materials at XP, XP made no changes to the development of its technologies or the employees working on those technologies for years.  *Id.* at 859:13-23, 1096:16-20. Indeed, XP itself admits that its engineers were accessing and using Comet's trade secrets as part of the development of XP's current RF matching network just eight months ago.  PX3527 (Mason termination memorandum confirming Mason had Comet documents on his XP laptop within the last year); Mason Dep. Tr. at 286:10-15.  Particularly concerning were XP's responses to being put on notice of its misappropriation:  rather than quarantine and remove Comet materials, XP continued allowing its engineers to access the materials and attempted to cover up its use of the trade secrets.  Trial Tr. at 857:6-858:19; PX3524 (XP Board Meeting Minutes planning to withhold reprimanding Mr. Beuerman until after conclusion of Comet legal case); PX3502, PX3424; PX3320.  XP's refusal to take responsibility or acknowledge the inadequacy of its response to the allegations in this case confirms that quarantine and removal provisions, along with audit provisions, are necessary, as other courts have recognized.  *See Syntel*, No. 15-cv-00211, Dkt. 993 (entering permanent injunction order including quarantine and removal provisions).

## C.    If No Injunction is Granted, XP Should Pay Ongoing Royalties

No "exceptional circumstances that render an injunction inequitable" exist here, and, for the reasons explained above, a permanent injunction should enter.  18 U.S.C. § 1836(b)(3)(A)(iii).  If, however, the Court disagrees, XP should at a minimum be required to pay Comet a substantial ongoing royalty for its continued use of the misappropriated trade secrets.  *Bianco v. Globus Med., Inc*., 2014 WL 1049067, at *12 (E.D. Tex. Mar. 17, 2014).  Consistent with XP's actions in this case, if an injunction is not entered, an ongoing royalty based on XP's profit margins for its next generation RF Power and RF Match products.  Ex. 1 ¶¶ 39-42.  In addition, because the jury found XP's misappropriation to be willful and malicious misappropriation, to the extent XP intends to continue its willful and malicious

1  misappropriation, the ongoing royalty should be enhanced.[3]  For the reasons explained above, however,

2  an ongoing royalty will not halt the irreparable harm to Comet from XP's misappropriation.  Nor will it

3  adequately compensate Comet or safeguard its trade secrets.  Thus, an injunction is the only appropriate

4  remedy here.

5  **II.   CONCLUSION**

6  For the foregoing reasons, Comet respectfully requests that the Court enter a permanent injunction,

7  the terms of which are set forth in Exhibit 2.

8

9  DATED: March 25, 2022                                  Respectfully submitted,

10                                                         KIRKLAND & ELLIS LLP

11                                                         By: */s/  Leslie M. Schmidt*
                                                           Adam Alper (SBN: 196834)
12                                                         *adam.alper@kirkland.com*
                                                           Akshay Deoras (SBN: 301962)
13                                                         *akshay.deoras@kirkland.com*
                                                           KIRKLAND & ELLIS LLP
14                                                         555 California Street
                                                           San Francisco, CA 94104
15                                                         Telephone:    (415) 439-1400
                                                           Facsimile:    (415) 439-1500
16
17                                                         Michael W. De Vries (SBN: 211001)
                                                           *michael.devries@kirkland.com*
18                                                         KIRKLAND & ELLIS LLP
                                                           555 South Flower Street
19                                                         Los Angeles, CA 90071
                                                           Telephone:    (213) 680-8400
20                                                         Facsimile:    (213) 680-8500

21                                                         Sharre Lotfollahi (SBN: 258913)
                                                           *sharre.lotfollahi@kirkland.com*
22                                                         KIRKLAND & ELLIS LLP
                                                           2049 Century Park East, Suite 3700
23                                                         Los Angeles, CA 90067
                                                           Telephone:    (310) 552-4200
24                                                         Facsimile:    (310) 552-5900

25
26
27  [3] *See, e.g.*, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co*., 2017 WL 4038884, at *3 (E.D. Tex. Sept. 13, 2017) (enhancing damages where "[d]efendants' continued infringement [is] unreasonable, deliberate and willful in nature"); *Telcordia Techs., Inc. v. Cisco Sys., Inc*., 2014 WL
28  1457797, at *4 (D. Del. Apr. 14, 2014) (similar).

Leslie M. Schmidt (pro hac vice)
*leslie.schmidt@kirkland.com*
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Kat Li (*pro hac vice*)
*kat.li@kirkland.com*
401 Congress Avenue
Austin, TX 78701
Telephone:      (512) 678-9167
Facsimile:      (512) 678-9101

Attorneys for Plaintiffs
COMET TECHNOLOGIES USA INC., COMET
AG AND YXLON INTERNATIONAL GMBH

Plaintiffs' Motion For Permanent Injunction                    Case No. 5:20-cv-06408-NC