LATHAM & WATKINS LLP
Joseph B. Farrell (Bar No. 137435)
joe.farrell@lw.com
Thomas W. Yeh (Bar No. 287118)
thomas.yeh@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213).485-1234
Facsimile: (213)891-8763

Patricia Young (Bar No. 291265)
patricia.young@lw.com
Jeffrey G. Homrig (Bar No. 215890)
jeff.homrig@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Blake R. Davis (Bar No. 294360)
blake.davis@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
Russell Mangas (*pro hac vice*)
russell.mangas@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

(Additional Counsel listed on Signature Page)

*Attorneys for Defendant XP Power LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

COMET TECHNOLOGIES USA INC., a Delaware corporation, COMET AG, a Swiss corporation, and YXLON International GmbH, a German corporation,

Plaintiffs,

v.

XP POWER LLC, a California Limited Liability Company.

Defendant.

CASE NO. 5:20-cv-06408-NC

**XP POWER LLC'S NOTICE OF MOTION UNDER RULE 59 AND MOTION TO ALTER OR AMEND JUDGMENT OR FOR A NEW TRIAL ON DAMAGES AND MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon.  Nathanael Cousins
Hearing Date: December 21, 2022
Time: 1:00 PM

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1                          **NOTICE OF MOTION AND MOTION**

2       **TO ALTER OR AMEND JUDGMENT OR FOR A NEW TRIAL ON DAMAGES**

3 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

4         PLEASE TAKE NOTICE that on December 21, 2022 at 1:00 PM, or as soon thereafter as

5 the parties may be heard, Defendant XP Power LLC ("XP") hereby brings this motion to amend

6 or alter the judgment or for a new trial pursuant to Federal Rule of Civil Procedure 59.

7         On March 23, 2022, the jury in this case returned a verdict in favor of Plaintiff Comet

8 Technologies USA Inc., Comet AG, and YXLON (collectively, "Comet"), finding that XP's

9 misappropriation of two Comet trade secrets were a substantial factor in causing damages, and

10 awarding $20 million in "unjust enrichment" compensatory damages and $20 million in punitive

11 damages.  On September 30, 2022, the Court issued a permanent injunction and entered judgment

12 pursuant to Federal Rule of Civil Procedure 54(b) reflecting the jury's verdict and the Court's

13 permanent injunction.

14         Pursuant to Rule 59, XP requests that the Court order a new trial on damages or alter the

15 judgment for three reasons.  First, $15 million in compensatory damages that the jury awarded for

16 Trade Secret E is excessive and unsupported by the evidence at trial.  Comet's own expert's

17 analysis supported a maximum award of $6 million and Comet's own counsel encouraged the jury

18 to enter that award.  Having awarded $15 million instead, the jury's verdict is incompatible with

19 the evidence and cannot stand.  The same issue applies to the jury's verdict for Trade Secret D.

20 Second, the jury's punitive damages award should be reduced in kind with the reduced

21 compensatory damages available on Trade Secret E and Trade Secret D. The jury awarded an

22 amount of punitive damages equal to the compensatory damages it found; if the latter is reduced,

23 the former should be reduced in kind to avoid an excessive verdict.  Third, the permanent

24 injunction for Trade Secrets E and D should be vacated, or a new trial on damages granted, to

25 avoid an improper double recovery.  At trial, Comet obtained unjust enrichment damages premised

26 on the purported value to XP of the head start it secured from accessing Comet's trade secrets.  But

27 the permanent injunction imposed by this Court renders any purported head start valueless, directly

28 undermining the basis of the jury's damages verdict and affording Comet a double recovery.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1       The foregoing motion is based on the Federal Rules of Civil Procedure, the files and records

2   in this action, and any and all other materials submitted to the court on or before the time of its

3   decision in this matter.  For the above reasons and as set forth in the following memorandum of

4   points and authorities in support, XP requests that the court order a new trial on damages and/or

5   alter the judgment to reduce the amount of compensatory damages, punitive damages, and to

6   vacate the permanent injunction.

7       Dated: October 28, 2022          Respectfully submitted,

8               LATHAM & WATKINS LLP

9

10           By */s/ Patricia Young*
           Joseph B. Farrell (Bar No. 137435)
           *joe.farrell@lw.com*

11             Thomas W. Yeh (Bar No. 287118)
           *thomas.yeh@lw.com*

12             355 South Grand Avenue, Suite 100
           Los Angeles, CA 90071

13             Telephone: (213) 485-1234
           Facsimile: (213) 891-8763

14

15             Patricia Young (Bar No. 291265)
           *patricia.young@lw.com*

16             Jeffrey G. Homrig (Bar No, 215890)
           *jeff.homrig@lw.com*

17             140 Scott Drive
           Menlo Park, California 94025

18             Telephone: (650) 328-4600
           Facsimile: (650) 463-2600

19

20             Blake R. Davis (Bar No. 294360)
           *blake.davis@lw.com*
           505 Montgomery Street, Suite 2000

21             San Francisco, California 94111
           Telephone: (415) 391-0600

22             Facsimile: (415) 395-8095

23             Matthew W. Walch (*pro hac vice*)
           *matthew.walch@lw.com*

24             Russell Mangas (*pro hac vice*)
           *russell.mangas@lw.com*

25             Laura Zenzerovich (*pro hac vice*)
           *laura.zenzerovich@lw.com*

26             330 North Wabash Avenue, Suite 2800
           Chicago, Illinois 60611

27             Telephone: (312) 876-7700
           Facsimile: (312) 993-9767

28             Stephen D. O'Donohue (*pro hac vice*)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1

*stephen.odonohue@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone (212) 906-1200
Facsimile (212) 751-4864

Razi Safi (*pro hac vice*)
*razi.safi@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*Attorneys for Defendant XP Power LLC*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND STATEMENT OF ISSUES ................................................. 1

II.    FACTUAL BACKGROUND ......................................................................... 2

III.   LEGAL STANDARD ................................................................................ 5

     A.     Motion for New Trial .............................................................. 5

     B.     Remittitur ................................................................................ 6

IV.   ARGUMENT .............................................................................................. 6

     A.     The Jury's Compensatory Damages Award For Trade Secrets D And E Was Excessive And Should Be Reduced To $10.9 Million ..................... 6

     B.     The Punitive Damages Awarded By The Jury Were Excessive And Should Be Reduced ......................................................................... 9

     C.     The Permanent Injunction for Trade Secrets D and E Should Be Vacated As Constituting Double Recovery And Improperly Punitive, Or A New Trial On Damages Should Be Granted .............................. 12

           1.     The Permanent Injunction for Trade Secrets D and E Constitutes An Impermissible Double Recovery And Is Improperly Punitive ..................................................... 12

           2.     The Court Should Grant A New Trial On Damages If The Permanent Injunction For Trade Secrets D and E Is Not Vacated ............................................................... 14

V.     CONCLUSION .......................................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

# TABLE OF AUTHORITIES

<b>Page(s)</b>

## CASES

*Alexander v. McKnight*,
    7 Cal. App. 4th 973 (1992) ...................................................................................13, 16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    No. C 10-3428 PSG, 2013 WL 890126 (N.D. Cal. Jan. 23, 2013)....................................13, 14

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001)..............................................................................................9

*Cosby v. AutoZone, Inc.*,
    445 F. App'x 914 (9th Cir. 2011) ..........................................................................6, 9

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
    980 F.3d 1117 (7th Cir. 2020), cert. denied, 212 L. Ed. 2d 343, 142 S. Ct. 1400 (2022) .......10

*Fenner v. Dependable Trucking Co., Inc.*,
    716 F.2d 598 (9th Cir. 1983) .................................................................................5

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
    593 F. Supp. 2d 1088 (N.D. Cal. 2009), *aff'd* 616 F.3d 1357 (Fed. Cir. 2010).........................5

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996)..............................................................................................5

*Harris v. ShopKo Stores, Inc.*,
    2013 UT 34, 308 P.3d 449 (Utah 2013)....................................................................9

*Hetzel v. Prince William County, Va.*,
    523 U.S. 208 (1998)..............................................................................................6

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
    340 F.3d 1314 (Fed. Cir. 2003)...............................................................................5

*Honda Motor Co. v. Oberg*,
    512 U.S. 415 (1994)..............................................................................................9

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ................................................................................12

*Junker v. Eddings*,
    396 F.3d 1359 (Fed. Cir. 2005)..............................................................................12

*Landes Const. Co. v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ..........................................................................5, 6, 8

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
   791 F.2d 1356 (9th Cir. 1986) ...................................................................5

*Modine Manufacturing Co. v. Allen Group Inc.,*
   14 U.S.P.Q. 2d 1210 (N.D. Cal. 1989) ...................................................10

*Murray v. Toyota Motor Distributors,*
   664 F.2d 1377 (9th Cir. 1982) ...................................................................6

*O2 Micro Int'l Ltd.  V. Monolithic Power Sys., Inc.,*
   2006 U.S. Dist.  LEXIS 13678 (N.D. Cal. 2006) .....................................5

*Oracle Corp. v. SAP AG,*
   765 F.3d 1081 (9th Cir. 2014) ...............................................................6, 9

*Payne v. Jones,*
   711 F.3d 85 (2d Cir. 2013)......................................................................10

*Riles v. Shell Expl. & Prod.  Co.,*
   298 F.3d 1302 (Fed. Cir. 2002)...............................................................13

*Seymour v. Summa Vista Cinema, Inc.,*
   809 F.2d 1385 (9th Cir. 1987) ...................................................................5

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
   251 F.3d 814 (9th Cir. 2001) ...............................................................5, 12

*Simon v. U.S.,*
   891 F.2d 1154 (5th Cir. 1990) .................................................................16

*Spaulding v. Cameron,*
   38 Cal. 2d 265 (1952) ........................................................................13, 15

*State Farm Mut.  Automobile Ins.  Co. v. Campbell,*
   538 U.S. 408 (2003)..................................................................................10

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
   2018 WL 6272893 (E.D. Va.  Nov. 30, 2018)........................................12

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.,*
   No. 15 CIV. 211 (LGS), 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021)............11

*Thomas v. iStar Fin., Inc.,*
   652 F.3d 141 (2d Cir. 2011)....................................................................10

*United States v. Klaus,*
   No. 09-cv-579-WDK, 2011 WL 13143350 (C.D. Cal. July 25, 2011)....................6

*Wang v. Hsu,*
   1991 U.S. Dist.  LEXIS 4398 (N.D. Cal. 1991) ........................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

*Watec Co. v. Liu,*
    403 F.3d 645 (9th Cir. 2005) ................................................................................6, 9

**RULES**

Fed. R. Civ. P.
    59.............................................................................................................................5, 12
    59(a).............................................................................................................................5

**TREATISES**

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806 (1973)..................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

I.      INTRODUCTION AND STATEMENT OF ISSUES

This case proceeded to trial on five alleged trade secrets.  Comet argued that the damages for each alleged trade secret should be measured in terms of XP's "unjust enrichment" or "R&D cost savings" from the misappropriation.  According to Comet, the cost savings to XP was approximated by the cost that Comet itself expended to develop each alleged trade secret.  After hearing the evidence, the jury found liability for three of Comet's trade secrets, but concluded that only two—Trade Secrets D and E—were a "substantial factor" in causing XP to be unjustly enriched.

XP does not dispute the jury's liability findings in this motion.  However, the Court should grant a new trial on damages for Trade Secrets E and D, or alter the judgment, for three reasons.

First, the Court should find that that the jury's award of $15 million in "unjust enrichment" damages for Trade Secret E was excessive, and contrary to the evidence and the law.  Comet's damages expert testified that Comet's cost to develop Trade Secret E, even after generous upward "adjustments" to the financial data, was $6 million.  That is the maximum damages supportable by the evidence, and the Court should order a remittitur in that amount.  Similarly, the jury's award on Trade Secret D included an arbitrary and unsupported increase, and the Court should order a remittitur.  Alternatively, Comet can elect to proceed with a new trial on damages for Trade Secrets E and D.

Second, if the Court finds that compensatory damages should be reduced, it should reduce the jury's punitive damages in kind.  That result gives effect to the jury's intent to award punitive damages in a 1:1 ratio with compensatory damages, respects constitutional limits on the scope of punitive damages available in cases where substantial compensatory damages are awarded, and reflects what other courts have determined is the "highest permissible" punitive damages ratio in similar cases involving the DTSA.

Third, the Court should vacate the permanent injunction against XP with respect to Trade Secrets E and D, or a new trial on damages for those trade secrets should be granted.  There is no dispute that XP has not sold any products incorporating Comet's trade secrets.  *See, e.g.,* Trial Tr. at 717:23-718:2.  Thus, the jury's "unjust enrichment" award was based entirely on XP's alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

saved R&D costs for *future* product development.  But the injunction prohibits any future product incorporating the trade secrets at issue.  Comet is effectively being compensated for "unjust enrichment" that is wholly illusory in view of the injunction—an impermissible double recovery. If the permanent injunction for Trade Secrets E and D is not vacated, a new trial on damages is warranted because the terms of the permanent injunction directly refute Comet's arguments in support of unjust enrichment damages and undermine the basis of the jury's damages verdict.

## II.    FACTUAL BACKGROUND

Comet originally brought this action on 20 alleged trade secrets under both the California Uniform Trade Secret Act ("CUTSA") and the Federal Defend Trade Secrets Act ("DTSA").  At trial, Comet withdrew its CUTSA claims with prejudice, proceeding only on misappropriation under the DTSA for the following five alleged trade secrets: (1) Alleged Trade Secret D: Da Vinci RF Generator Control, Digital Measurement, and Software, (2) Alleged Trade Secret E: Next Generation RF Matching Network, (3) Alleged Trade Secret L: Kiyo Matching Network Trade Secrets, (4) Alleged Trade Secret S: AMAT Matching Network, and (5) Alleged Trade Secret T: Comet's Manufacturing, Sales, and Pricing.  Midway through trial, the Court granted XP's motion for judgment as a matter of law as to Alleged Trade Secret T. Trial Tr. at 757:8-758:9.

Comet's damages expert, Mr. Malackowski, advanced two alternative theories of damages in this case: unjust enrichment and reasonable royalty.  The jury only awarded damages based on Comet's unjust enrichment theory.  Dkt. 406 at 5.  Under that theory, Mr. Malackowski asserted that unjust enrichment must be measured in terms of the "cost that [XP] saved" by the alleged misappropriation because "[XP's] products are going to be introduced in the future"—i.e., as of trial, XP had not received any profits as a result of the alleged misappropriation.  Trial Tr. at 689:4-13.  To determine XP's saved costs, Mr. Malackowski testified that Comet's research and development costs to develop each particular trade secret could serve as a proxy for XP's unjust enrichment.  Trial Tr. at 658:13-15.

Mr. Malackowski calculated Comet's research and development costs separately for each of Comet's four "technical" alleged trade secrets D, E, L and S, and XP's alleged unjust enrichment in equal amount, using a three-step process:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

First, Mr. Malackowski accumulated all of the research and development time that engineers had attributed by identifying Comet's "project codes" that were "purely related to [each] trade secret[]."   Trial.   Tr. at 693:18-21, 694:3-5 (testifying that his schedules show "in excruciating detail" which of the "project codes relate to which trade secret").   He then "simply total[ed] up all the costs of each of those collections of project codes."   Trial Tr. at 694:16-695:2. Mr. Malackowski explained that while his analysis looked to the project codes attributable "purely" to each trade secret, his analysis also took into account "components that will be used across products together" to the extent there may have been overlapping development costs with other trade secrets.   *Id.* at 694:8-13.   Mr. Malackowski referred to the values he calculated based on Comet's project code data as the "unadjusted" total R&D for each trade secret.   *See* Ex. 1 at PDX9.17.

Second, Mr. Malackowski adjusted the actual research and development numbers from Comet's project code data upwards to account for an alleged "underreporting of time cards."   Trial Tr. 729:18-730:11.   Those adjustments simply took the data and "ratchet[ed] it up" by a certain percent depending on the year.   Trial Tr. at 695:13-696:4.   Mr. Malackowski justified his increases because he believed that XP's unjust enrichment should include, for example, the costs when Comet's engineers were "in the washroom" over a ten year period.   Trial Tr. at 724:19-725:10.

Third, Mr. Malackowski took the upwardly adjusted costs that he concluded Comet expended to create the trade secrets, and adjusted them downward to remove non-trade secret "build-to-print engineering time."   Trial Tr. at 696:24-697:10.

Mr. Malackowski's adjustments to Comet's project code data were significant.   For Trade E, they accounted for a nearly 65% increase over what the project codes actually showed. *Compare* Ex. 1 at PDX9.17 (unadjusted R&D total for Trade Secret E), *with* Ex. 1 at PDX9.20 (adjusted R&D total for Trade Secret E showing an increase of $2,446,512).   To the extent that Mr. Malackowski's opinions are a reliable computation of damages,[1] they reflect the maximum

---

[1] XP contends that they are not for the reasons set forth in its prior Daubert motion, which the Court denied.   *See* Dkt. 118.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    values presented to the jury for "XP's R&D Cost Savings For Comet's Trade Secrets" as shown

2    in Mr. Malackowski's excerpted demonstrative below.

| XP's R&D Cost Savings for Comet's Trade Secrets (D, E, L, S) | | | | |
|---|---|---|---|---|
| | Trade Secret D: Da Vinci RF Generator Control, Digital Measurement, and Software | Trade Secret E: Next Gen RF Matching Network | Trade Secret L: Kiyo Matching Network | Trade Secret S: AMAT Matching Network |
| | | * * * * * * * | | |
| Trade Secret R&D Costs | $4,883,630 | $5,992,807 | $11,101,237 | $10,537,910 |

10   Ex. 1 at PDX9.20 (excerpted to remove intermediate calculations); *see* Trial Tr. at 697:11-15 ("Just

11   to be clear on the question, this is the amount that Comet spent that XP didn't have to; they saved").

12          On March 23, 2022, the jury entered a special verdict addressing each element of Comet's

13   trade secret misappropriation claim under the DTSA on a trade secret by trade secret basis.  For

14   Trade Secret S, the jury found there had been no misappropriation.  XP did not "acquire or use the

15   information by improper means" and unjust enrichment damages were "$0."  Dkt. 406 at 4.  For

16   Trade Secret L, the jury found that XP had acquired or used the information by improper means,

17   but found that "XP's improper acquisition or use of the information" was *not* a "substantial factor

18   for causing damages for misappropriation of the information."  Dkt. 406 at 4.  Thus, for Trade

19   Secret L, the jury found XP's unjust enrichment was also "$0."  *Id.* at 5.

20          For Trade Secrets D and E, the jury found that XP was liable for misappropriation and

21   awarded unjust enrichment damages.  The *amount* of those damages, $5 million for Trade Secret

22   D and $15 million for Trade Secret E (*id.* at 5), do not match any of the figures that were presented

23   in court.  The damages for Trade Secret E in particular are excessive and should be reduced because

24   they are two and a half times greater than the $6 million in R&D cost savings that even Comet's

25   expert calculated.  The jury also awarded $20 million in punitive damages, a 1:1 ratio with its

26   compensatory damages award for Trade Secrets D and E.

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    Following the verdict, Comet moved for a permanent injunction on each of Trade Secrets

2    D, E, L and S.  On September 30, 2022, the Court granted Comet's permanent injunction on Trade

3    Secrets D, E and L, and entered judgment to reflect the jury verdict and the injunction.  Dkt. 469.

4    **III.    LEGAL STANDARD**

5    The Court has two alternatives for handling an excessive damages award.  The Court may

6    (1) order a new trial "without qualification" or (2) condition the denial of a new trial on the

7    agreement by the prevailing party to a reduction in damages, known as remittitur.  *Gasperini v.*

8    *Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *see also Funai Elec.  Co. v. Daewoo Elecs.*

9    *Corp.*, 593 F. Supp. 2d 1088, 1093 (N.D. Cal. 2009), *aff'd* 616 F.3d 1357 (Fed. Cir. 2010); *Fenner*

10   *v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983).

11   **A.    Motion for New Trial**

12   A motion for new trial is governed by the law of the regional circuit.  *See, e.g., Hewlett-*

13   *Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003); Fed. R. Civ. P. 59.  The

14   threshold for a new trial is lower than that for a judgment as a matter of law.  *O2 Micro Int'l Ltd.*

15   *V. Monolithic Power Sys., Inc.*, 2006 U.S. Dist.  LEXIS 13678, *46 (N.D. Cal. 2006).  The Court's

16   power to set aside the verdict has long been regarded as "an integral part of trial by jury as we

17   know it."  *Wang v. Hsu*, 1991 U.S. Dist.  LEXIS 4398, *21 (N.D. Cal. 1991).

18   The court may grant a motion for a new trial "for any reason for which a new trial has

19   heretofore been granted in an action at law in federal court."  *Id.* at *18-19, *citing* Fed. R. Civ. P.

20   59(a).  Such a motion may be granted "if the verdict is contrary to the clear weight of the evidence,

21   or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a

22   miscarriage of justice."  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814,

23   819 (9th Cir. 2001) (citation omitted).  In assessing the clear weight of the evidence, "the judge

24   can weigh the evidence and asses the credibility of witnesses, and need not view the evidence from

25   the perspective most favorable to the prevailing party."  *Landes Const.  Co. v. Royal Bank of*

26   *Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  Where an award of damages is "grossly excessive

27   or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork,"

28   a new trial may be in order.  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    791 F.2d 1356, 1360 (9th Cir. 1986); *Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1387

2    (9th Cir. 1987).

3        **B.      Remittitur**

4        Instead of ordering a new trial, the court may condition the denial of a new trial on plaintiff

5    agreeing to a remittitur.  A remittitur must reflect "the maximum amount sustainable by the proof."

6    *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (internal citations omitted).  Thus,

7    remittitur is appropriate when, based on the evidence submitted at trial, a court may calculate the

8    amount or portion of the jury verdict that was excessive.  *See Murray v. Toyota Motor Distributors*,

9    664 F.2d 1377, 1380 (9th Cir. 1982).  In performing this analysis, a district court must consider

10   the evidence in the same manner and under the same standards that apply in addressing a motion

11   for a new trial.  And as before, the district court "need not view the evidence from the perspective

12   most favorable to the prevailing party."  *United States v. Klaus*, No. 09-cv-579-WDK, 2011 WL

13   13143350, at *1 (C.D. Cal. July 25, 2011) (*citing Landes Const.  Co.*, 833 F.2d at 1372); *see also*

14   *Hetzel v. Prince William County, Va.*, 523 U.S. 208, 210-11 (1998)).

15       If a plaintiff rejects a remittitur and opts for a new trial, that proceeding is limited to

16   damages unless there is evidence suggesting that "passion or prejudice affected the jury's verdict

17   on liability."  *Cosby v. AutoZone, Inc.*, 445 F. App'x 914, 917 (9th Cir. 2011); *Watec Co. v. Liu*,

18   403 F.3d 645, 655 (9th Cir. 2005).

19   **IV.    ARGUMENT**

20       **A.    The Jury's Compensatory Damages Award For Trade Secrets D And E Was
                 Excessive And Should Be Reduced To $10.9 Million**

21       Comet's own expert and counsel told the jury that XP was unjustly enriched by $6 million

22   with respect to Trade Secret E.[2]  Nonetheless, the jury inexplicably found that XP was unjustly

23   enriched by $15 million.  Because that excessive and speculative award is incompatible with the

24   evidence, it must be reduced to no more than $6 million or XP is entitled to a new trial.

25

26

27

28   ---

     [2] For ease of description in this motion, we refer to Mr. Malackowski's valuation of Trade Secret
     E's cost as $6 million.  The actual cost he calculated was $5,992,807, and the compensatory
     damages award for Trade Secret E should be reduced to that number.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    Trade Secret E is the "Next Gen RF Matching Network" trade secret.  Comet's expert,

2   Mr. Malackowski, calculated that it cost Comet $6 million to develop that trade secret (*see supra*

3   Section II), and that XP was unjustly enriched by the same amount.  *See* Trial Tr. at 697:11-15

4   ("Just to be clear on the question, this is the amount that Comet spent that XP didn't have to; they

5   saved"); *see* Ex. 1 at PDX9.20.  Even crediting the generous adjustments[3] provided by Comet's

6   expert, the maximum unjust enrichment from Trade Secret E that is supportable by the evidence

7   is thus $6 million—i.e., the maximum cost to Comet to develop that trade secret.  Indeed, Comet's

8   counsel argued in closing that $6 million was the number the jury should "put down" for unjust

9   enrichment damages as to Trade Secret E. Trial Tr. at 1337:4-7 ("You are going to be required to

10  put down a number in question 8 for each of the trade secrets.  Those are the numbers; 4.9 million

11  for D, 6 million for E, 11.1 million for L, 10.5 million for S.").

12    There is no evidentiary support for the jury's award of $15 million, which exceeds the $6

13  million that Mr. Malackowski calculated and Comet's counsel argued Comet spent to develop the

14  alleged trade secret.  Because the jury found unjust enrichment—as measured by Comet's own

15  costs of development—to be the appropriate measure of damages, there is no evidence to support

16  the jury's $15 million award that far exceeds Comet's costs.  The Court should therefore order a

17  remittitur, requiring Comet to elect between reducing compensatory damages to $6 million for

18  Trade Secret E, or choosing a new trial on damages.

19    Comet may try to argue that the jury could have found that XP's unjust enrichment for

20  misappropriation of Trade Secret E could exceed $6 million if the jury credited Mr. Malackowski's

21  conclusory assertion that "if you find any of the next generation trade secrets are misappropriated,

22  it's not just the 6.0 million, its everything, because those were built upon" the information in Trade

23  Secrets L and S.  *See* Trial Tr. at 697:24-698:13.  That assertion cannot support the jury's unjust

---

[3] Mr. Malackowski's "adjustments" in steps (2) and (3) resulted in a total cost of $5,992,807, an increase of more than 65% over the only "unadjusted" R&D costs backed-up by Comet's "project code" data shown in step (1) of his calculation.  *See* Ex. 1 at PDX9.17, PDX9.19-20.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1   enrichment damages for Trade Secret because the jury expressly rejected Comet's claim that XP

2   was unjustly enriched with respect to Trade Secrets L and S.[4]

3       Starting with alleged Trade Secret S, the jury's special verdict found that XP did *not* acquire

4   or use the information Comet associated with Trade Secret S by improper means.  Dkt. 406 at 4

5   (Question 6).  Thus, there was no misappropriation, and the jury concluded that XP's "unjust

6   enrichment" caused by Trade Secret S was "$0."  Dkt. 406 at 5 (Question 8).  Because alleged

7   Trade Secret S was not misappropriated, it also cannot be part of XP's unjust enrichment for the

8   misappropriation of Trade Secret E.

9       The jury's verdict as to Trade Secret L similarly confirms that it was not a factor for causing

10  XP to be "unjustly enriched" as part of the misappropriation of Trade Secret E.  Specifically, the

11  jury found that XP had improperly used or acquired information associated with Trade Secret L

12  (Dkt. 406 at 4 (Question 6)), but concluded that the use or acquisition of that information was *not*

13  "a substantial factor in causing any damages for misappropriation of the information."  Dkt. 406

14  at 4 (Question 7).  The jury found XP's "unjust enrichment" for Trade Secret L was "$0."  Dkt.

15  406 at 5 (Question 8).  Because the jury found that Trade Secret L was not a substantial factor in

16  causing XP to "save" R&D costs—the only "unjust enrichment" for Trade Secret L alleged at

17  trial—Comet's costs of developing Trade Secret L cannot be part XP's unjust enrichment

18  associated with Trade Secret E.

19      In sum, the jury found that XP did not improperly acquire or use Trade Secret S *at all*, and

20  any improper use or acquisition of Trade Secret L was *not* a substantial factor in causing damages.

21  So any asserted damages stemming from those two trade secrets could not reasonably be factored

22  into the damages calculations for Trade Secret E.  *See Landes Const. Co. v. Royal Bank of Canada*,

23  833 F.2d 1365, 1371 (9th Cir. 1987) (explaining that in considering whether to grant a new trial,

24  the trial court should give "full respect to the jury's findings"), *quoting* 11 C. Wright & A. Miller,

25  *Federal Practice and Procedure* § 2806, at 48–49 (1973).  No other evidence was presented at

26

27  [4] The jury's damages award also facially does not reflect acceptance of Mr. Malackowski's theory.
    Mr. Malackowski alleged unjust enrichment damages of $11.1 million for Trade Secret L and
28  $10.5 million for Trade Secret S, neither of which explain the jury's $9 million increase for Trade
    Secret E.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
8
DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1   trial for increasing the compensatory damages of Trade Secret E.  Absent any evidence to support

2   it, the jury's compensatory damages award of $15 million for Trade Secret E is wholly speculative

3   and cannot stand.  There is simply no evidence from which the jury could pull an additional $9

4   million—no more, no less—in unjust enrichment not found by Comet's expert.[5]  *See Oracle*, 765

5   F.3d at 1096 (affirming district court's grant of new trial conditioned on rejection of remittitur

6   where the jury reached its verdict "based on undue speculation"); *Harris v. ShopKo Stores, Inc.*,

7   2013 UT 34, ¶ 32, 308 P.3d 449, 458 (Utah 2013) (remanding for new trial because "the jury must

8   have a reasonable basis for apportioning damages, and apportionment may not be based on 'pure

9   speculation.'").  The jury's compensatory damages for Trade Secret E is excessive and should be

10   reduced to $5,992,807, the maximum amount sustainable by proof.  To the extent that Comet does

11   not agree to a remittitur and instead elects for a new trial, that proceeding should be limited solely

12   to damages for Trade Secret E. *See Cosby*, 445 Fed. App'x. at 917 (limiting retrial to damages);

13   *Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005) (same).

**B.     The Punitive Damages Awarded By The Jury Were Excessive And Should Be Reduced**

14

15      The jury awarded Comet $20 million in punitive damages to match the $20 million it

16   awarded in compensatory damages.  Dkt. 406 at 5.  Because Comet's compensatory damages

17   award must be reduced for the reasons set forth in Section IV.A, its punitive damages award should

18   be reduced in kind.  *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 421 (1994) (explaining

19   '[j]udicial review of the size of punitive damages awards" is a necessary safeguard against

20   excessive verdicts); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437, (2001)

21   (finding the amount of punitive damages is not a "fact," and a court's review of a jury's award

22   "does not implicate [] Seventh Amendment concerns").  That result is necessary for three reasons,

23   (1) it gives effect to the jury's intent, (2) respects constitutional limits on the scope of punitive

24

---

25   [5]   The arbitrary and speculative nature of the jury's award was also reflected in its $100,000
     increase in compensatory damages award for Trade Secret D.  *Compare* Dkt. 406 at 5 (awarding
26   $5 million for Trade Secret D), *with* Ex. 1 at PDX9.21 (Mr. Malackowski's calculation of $4.9
     million for Trade Secret D).  The only explanation for the jury's $5 million award appears to be
27   that it rounded up its compensatory damages award to the nearest million.  But the jury was
     obligated to award only those damages supported by the evidence; it had no license to "round up"
28   to $5 million.  Accordingly, the jury's verdict on Trade Secret D should be reduced to $4,883,630
     as well, or Comet may elect for a new trial limited solely to damages for Trade Secret D.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

damages available in cases where substantial compensatory damages are awarded, and (3) reflects what other courts have determined is the "highest permissible" punitive damages ratio in cases involving the DTSA where compensatory damages are awarded based on the defendant's benefit rather than the plaintiff's harm.

First, reducing punitive damages in equal proportion to compensatory damages gives effect to the jury's intent because the jury was asked to use "sound reason in setting the amount of" punitive damages based on a consideration of six factors and constrained to limit any punitive damages award to "up to 2 times the total amount of the compensatory damages you award Comet for trade secret misappropriation." *See* Dkt. 391 (closing jury instructions) at 15-16.  Here, the jury applied its "sound reason" to determine that an award of punitive damages in a 1:1 ratio with the award of compensatory damages was appropriate.  There is no reason to offer Comet a windfall in punitive damages based on the jury's miscalculation of the appropriate amount of compensatory damages.  *See Modine Manufacturing Co. v. Allen Group Inc.,* 14 U.S.P.Q. 2d 1210 (N.D. Cal. 1989) (granting motion for new trial because "[a]lthough Modine is entitled to fair compensation, it is not entitled to a windfall").

Second, setting punitive damages so that they do not exceed a 1:1 ratio with compensatory damages also respects constitutional limits on punitive damages.  As explained by the Supreme Court, a ratio of punitive damages "equal to compensatory damages" can "reach the outermost limit of the due process guarantee" when compensatory damages are substantial.  *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.").  Here, compensatory damages are substantial even when reduced to $10.9 million.  Indeed, courts routinely find compensatory damages of far less to be "substantial."  *See, e.g., id.* at 426 ($1M in compensatory damages substantial); *Payne v. Jones*, 711 F.3d 85, 103 (2d Cir. 2013) ($60,000 compensatory damages award substantial); *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 149 (2d Cir. 2011) (agreeing $279,450 in compensatory damages was substantial).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    Third, courts have held that punitive damages cannot exceed a 1:1 ratio to compensatory

2  damages where, as here, a plaintiff's *actual* economic harm from trade secret misappropriation

3  under the DTSA was much smaller than the compensatory damages it was awarded based on the

4  defendant's benefit —e.g., by assessing "cost savings" and "unjust enrichment." *Epic Sys. Corp.*

5  *v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1145 (7th Cir. 2020), cert. denied, 212 L. Ed. 2d

6  343, 142 S. Ct. 1400 (2022) (reducing punitive damages to a 1:1 ratio with "avoided costs"

7  compensatory damages, and noting that if actual harm damages were used it "would in turn

8  drastically change the relevant ratio."); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,

9  *Inc.*, No. 15 CIV. 211 (LGS), 2021 WL 1553926, at *11 (S.D.N.Y. Apr. 20, 2021) (granting

10  remittitur of punitive damages because a "1:1 ratio relative to the compensatory award is the

11  highest permissible award" when compensatory damages were "calculated based on Syntel's

12  benefit" and a comparison to "actual loss" damages would result in a much higher ratio).

13    In this case, using actual economic harm as the comparator for punitive damages would

14  result in an infinitely higher ratio because Comet could not quantify *any* actual economic harm.

15  The president of Comet's PCT division, Mr. Kammerer, testified that Comet did not change "any

16  of its business projections in light of the claims that were asserted against XP." Dkt. 412-1

17  (Kammerer Tr.) at 25:3-5, 25:7-8.  He was likewise unaware of any customers Comet lost due to

18  any alleged misappropriation.  *Id.* 43:7-43:9, 43:16-43:20.  Nor could he identify any "bids that

19  Comet has lost to XP due to the alleged misappropriation."  *Id.* at 44:8-11.  Similarly, Comet's

20  damages expert could not identify any "actual lost sale" by Comet due to the alleged

21  misappropriation.  Trial Tr. at 717:1-3.  Nor could he identify a single sale that XP made as a

22  result.  Trial Tr. at 717:23-718:2 ("Q.  Now, you have not identified any sale – I know you've

23  talked about potential, but you haven't identified any sale that XP has made as a result of the

24  alleged misappropriation either, right?  A. Correct.  No actual lost sales.").  Because there was no

25  quantifiable economic harm to Comet *and* significant compensatory damages, the Court should

26  reduce punitive damages in kind with any reduction of the compensatory damages award.

27    For these reasons and the reasons discussed in Section IV.A, the Court should order a

28  remittitur reducing compensatory damages for Trade Secret E to $5,992,807 and Trade Secret D

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    to $4,883,630, reducing the total compensatory damages awarded by the jury to $10,876,437.

2    Punitive damages should likewise be reduced to no more than $10,876,437, for a combined total

3    of $21,752,874 in damages.

**C.    The Permanent Injunction for Trade Secrets D and E Should Be Vacated As Constituting Double Recovery And Improperly Punitive, Or A New Trial On Damages Should Be Granted**

6    After the jury returned its verdict granting unjust enrichment damages for Trade Secrets D

7    and E, Comet moved for a permanent injunction broadly enjoining XP and its employees from any

8    use of Comet's trade secrets and from developing any products "derived" therefrom.  The Court

9    granted Comet's request as to Trade Secrets D, E and L, and in doing so, manifestly changed the

10   factual landscape that Comet used at trial to justify the compensatory damages the jury awarded.

11   By enjoining XP from any future use of the alleged trade secrets, the permanent injunction ensures

12   that XP will not be unjustly enriched *at all* by those trade secrets—entirely undermining the basis

13   for Comet's compensatory damages award.  It is undisputed that XP has never released any product

14   based on the alleged trade secrets, and the injunction bars XP from ever doing so in the future.

15   Accordingly, the injunction by itself means that XP will not financially benefit and thus has not

16   been enriched in any way.  As explained below, the Court thus should either vacate the permanent

17   injunction or grant a new trial on damages as to Trade Secrets D and E,[6] in which XP can introduce

18   the terms of the permanent injunction.  *See* Fed. R. Civ. P. 59; *Silver Sage Partners*, 251 F.3d at

19   819 (courts may grant a new trial if it finds there would be a "miscarriage of justice"); *Jorgensen*

20   *v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (courts "enjoy[] considerable discretion" in

21   deciding a new trial motion).

**1.    The Permanent Injunction for Trade Secrets D and E Constitutes An Impermissible Double Recovery And Is Improperly Punitive**

24   The Court should amend the final judgment to vacate the permanent injunction for Trade

25   Secrets D and E because double recovery is not allowed.  *See Junker v. Eddings*, 396 F.3d 1359,

26   1368 (Fed. Cir. 2005).  Here, the "unjust enrichment" damages that were awarded at trial were

---

[6] This motion does not request that the permanent injunction as to Trade Secret L be vacated because the jury did not award unjust enrichment damages for that alleged Trade Secret.  Dkt. 406 at 5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1    entirely forward looking, and so the Court should find that the permanent injunction and

2    compensatory damages cannot both stand because, together, they amount to an impermissible

3    double recovery. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 6272893 at *5 (E.D. Va. Nov.

4    30, 2018) at *5 (finding that an injunction would constitute an impermissible "double recovery"

5    when the plaintiff had already been compensated for forward-looking harm); *see* Trial Tr. at 689:4-

6    13 ("Q.  Is there a particular type of unjust enrichment at issue in this case?  A.  Yes.  So typically

7    this would be one of two different categories.  Either the additional sales and profits that the

8    defendant made that they shouldn't have, or the cost that they saved by misappropriating the trade

9    secrets rather than conducting the R&D themselves.  In this case, because the products are going

10   to be introduced in the future, we are focused on that second point: the cost that was saved by XP

11   as a result of using the Comet trade secrets.").

12           As discussed above, the evidence Comet introduced of "unjust enrichment" at trial was

13   directed to XP's saved R&D costs for forward looking product development.  But the injunction

14   prohibits precisely that same forward looking product development, *in toto*.  This means that

15   Comet is effectively being compensated for benefits that XP never received (because XP is barred

16   from the injunction from ever benefitting from the trade secret for product development).  This is

17   inequitable. "[A]n injunction is not justified where 'the defendant retains no unfair advantage from

18   the appropriation.'" *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG,

19   2013 WL 890126, at *4 (N.D. Cal. Jan. 23, 2013) (granting permanent injunction enjoining use of

20   trade secrets where jury awarded only $1 in compensatory damages).

21           The injunction here establishes that XP cannot retain any unfair advantage from the

22   appropriation *and*, as discussed in the following section, the appropriation did not cause any past

23   harm to Comet.  The Court should therefore find that Comet is entitled to compensatory damages

24   for Trade Secrets D and E, or a permanent injunction, but not both.  *See Spaulding v. Cameron*, 38

25   Cal. 2d 265, 269 (1952) ("Plaintiff would obtain a double recovery if she could recover for the

26   depreciation in value and also have the cause of that depreciation removed."); *Alexander v.*

27   *McKnight*, 7 Cal. App. 4th 973, 978 (1992) ("problems corrected through equitable relief may not

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1  be compensated through an award of damages.  To hold otherwise permits a plaintiff to be unjustly

2  enriched, receiving financial compensation when there is no compensable loss").

3  　　　　At the same time that the compensatory damages and permanent injunction provide Comet

4  with a double recovery, they are also impermissibly punitive for XP.  "Compensatory damages,

5  by definition, make the [plaintiff] whole, as opposed to punishing the [defendant]."  *Riles v. Shell*

6  *Expl. & Prod.  Co.,* 298 F.3d 1302, 1312 (Fed. Cir. 2002).  Here, the compensatory damages made

7  Comet whole by compensating it for the head start XP allegedly enjoyed by misappropriating

8  Comet's trade secrets; but the injunction negates that head start, and the benefits XP supposedly

9  received, in its entirety.  Thus, the permanent injunction transforms the compensatory damages

10  from compensating Comet for XP's benefit, into a strictly punitive award against XP.  *See Brocade*

11  *Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *11 (N.D.

12  Cal. Jan. 23, 2013) ("injunctions are not meant to be punitive in nature.").

13
14  　　　　**2.**　　　　**The Court Should Grant A New Trial On Damages If The Permanent Injunction For Trade Secrets D and E Is Not Vacated**

15  　　　　If the Court does not vacate the permanent injunction for Trade Secrets D and E, the Court

16  should grant a new trial on damages for those trade secrets because the terms of the permanent

17  injunction directly refute Comet's arguments in support of unjust enrichment damages and

18  undermine the basis of the jury's damages verdict.  Each of the trade secrets the jury addressed in

19  its verdict are "technical" trade secrets, which only have value when used to design a product.[7]  In

20  particular, Comet's damages expert opined that the "particular type of unjust enrichment at issue

21  in this case" was "the cost that [XP] saved by misappropriating the trade secrets rather than

22  conducting the R&D themselves."  Trial Tr. at 689:4-13.  It is undisputed, however, that that in

23  the 4+ years from when the alleged misappropriation occurred, XP never introduced any product

24  incorporating the alleged trade secrets or any information derived therefrom.  *See* Trial Tr. at

25
26  [7] Comet also argued that XP had misappropriated a non-technical alleged trade secret, "Trade
27  Secret T."  The Court granted XP's judgment as a matter of law as to Trade Secret T for two
independent reasons, (1) there was not "sufficient evidentiary basis for any reasonable basis to find
that there was a trade secret" and (2) no reasonable jury could find for Comet based on "the
28  valuation analysis done by Mr. Malackowski" because it was "so bad that no reasonable juror
could find that there was a valuation that they could use to make a decision on those injuries"
purportedly related to Trade Secret T.  Trial Tr. at 757:8-758:9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

680:10-13, 1165:9-16.   Thus, Mr. Malackowski's opinion that XP had received "R&D cost savings" was based entirely on XP's development of *future* products.   Trial Tr. at 689:4-13 (explaining that "[i]n this case, because the products are going to be introduced in the future, we are focused on... the cost that was saved by XP as a result of using the Comet trade secrets"); *see also id.* at 687:15-25 (opining "that the nexus, the connection between the [trade secrets] and ultimately the business value" was that XP could use the trade secrets to determine the attributes to design into its products); *id.* at 686:20-23 (explaining that "these trade secrets would be high value, they would allow [XP] to bring new products to the market that customers were looking for"); *id.* at 697:16-21 (advocating that the jury should award the full amount of unjust enrichment because XP was able to use Comet's trade secrets to "leapfrog" Comet and create better technology); *id.* at 737:5-11 (same).

These "R&D cost savings" for future products that Mr. Malackowski presented at trial are illusory in view of the permanent injunction.   As requested by Comet, the injunction enjoins XP both from "using the Comet trade secrets" *and* from developing a product that is "derived from" the Comet trade secrets.   Dkt. 469 at 6-7.   All that is permitted under the order is for XP to do its "own research and development to make its own products" (*id.* at 5), which is exactly the opposite of what Mr. Malackowski argued formed the basis of XP's unjust enrichment.   *See, e.g.,* Trial Tr. at 697:11-21 (opining that XP's product development would "leverage" Comet's trade secrets and allow XP to "leapfrog[]" and "get ahead of Comet in an unfair way"); *id.* at 737:5-11 (similar).

The injunction also nullifies Mr. Malackowski's other assertions to the jury.   For example, Mr. Malackowski testified that Comet should be awarded damages because XP would be able to use Comet's trade secrets to go to prospective customers and "offer[] them the same thing" as Comet.   Trial Tr. 689:19-690:4.   Mr. Malackowski argued this would result in Comet losing the "Halo effect of being an innovator in the industry" if XP were permitted to offer products utilizing Comet's trade secrets.   Trial Tr. 689:10-690:4.   That argument cannot stand in view of the injunction.   It prohibits XP from "making, offering to sell, selling, or otherwise distributing anywhere in the world any product derived from Comet's Trade Secret Information."   Dkt. 469 at 6. It also enjoins XP from "advertising, promoting, offering to sell, selling, or otherwise providing

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
15
DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1   services anywhere in the world using or claiming the benefit of Comet's Trade Secret

2   Information." Dkt. 469 at 7. Thus, Mr. Malackowski's claim that XP would benefit, or Comet

3   would be harmed, by XP's future use of the alleged trade secrets is no longer true. *See Spaulding*

4   *v. Cameron*, 38 Cal. 2d 265, 269 (1952) ("If defendant obeys the injunction and takes such

5   measures that the property of the plaintiff will not be endangered or threatened by the existence of

6   [the continuing nuisance], there will no longer be a threat to depreciate the value of the property.").

7        Mr. Malackowski also opined that XP was unjustly enriched based on an "option value"

8   theory, wherein XP had the "option value of going to [Comet's trade secret] library and getting

9   what they need." Trial Tr. at 731:25-732:20. This prospective "use" of Comet's trade secrets is

10   again barred by the Court's permanent injunction, which prohibits XP from "possessing, accessing,

11   reviewing, using, or disclosing Comet's Trade Secret Information, in whole or in part, anywhere

12   in the world." Dkt. 469 at 6-7. The injunction also requires that XP engage a third party forensic

13   company to "remove from their possession and quarantine any information associated with trade

14   Secrets D, E and L." Dkt. 469 at 7. And under the order, Comet has the ability to audit XP as

15   much as twice a year. *Id.* Thus, the injunction ensures that XP will not have any "option" of

16   returning to Comet's trade secret information.

17        Of course, at the time that Mr. Malackowski offered his unjust enrichment arguments to

18   the jury, Comet had not sought a permanent injunction and the Court had not entered one as to

19   Trade Secrets D and E. XP thus did not—and could not—argue that any future possession or use

20   of the trade secrets and information derived therefrom would be enjoined and should not be

21   encompassed in any damages award. *Cf. Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990)

22   (explaining that motions for a new trial "cannot be used to raise arguments which could, and

23   should, have been made before the judgment issued"). As a result, Comet was awarded

24   compensatory damages for Trade Secrets D and E based on theories that are no longer valid in

25   light of the injunctive relief the Court has now entered against XP. *See Alexander v. McKnight*, 7

26   Cal. App. 4th 973, 978 (1992) ("[P]roblems corrected through equitable relief may not be

27   compensated through an award of damages. To hold otherwise permits a plaintiff to be unjustly

28   enriched, receiving financial compensation when there is no compensable loss."). Accordingly, if

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1   the permanent injunction for Trade Secrets D and E is not vacated, the Court should order a new

2   trial on damages for Trade Secrets D and E where XP can introduce the permanent injunction as

3   evidence to be considered in setting any damages in this matter.

4   **V.      Conclusion**

5          For the reasons set forth above, XP's motion for a new trial or to alter the judgment should

6   be granted.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1   Dated: October 28, 2022                    Respectfully submitted,

2                                      LATHAM & WATKINS LLP

3

4                                      By /s/ Patricia Young
                                          Joseph B. Farrell (Bar No. 137435)
5                                         joe.farrell@lw.com
                                          Thomas W. Yeh (Bar No. 287118)
6                                         thomas.yeh@lw.com
                                          355 South Grand Avenue, Suite 100
7                                         Los Angeles, CA 90071
                                          Telephone: (213) 485-1234
8                                         Facsimile: (213) 891-8763

9                                         Patricia Young (Bar No. 291265)
                                          patricia.young@lw.com
10                                        Jeffrey G. Homrig (Bar No, 215890)
                                          jeff.homrig@lw.com
11                                        140 Scott Drive
                                          Menlo Park, California 94025
12                                        Telephone: (650) 328-4600
                                          Facsimile: (650) 463-2600

13                                        Blake R. Davis (Bar No. 294360)
                                          blake.davis@lw.com
14                                        505 Montgomery Street, Suite 2000
                                          San Francisco, California 94111
15                                        Telephone: (415) 391-0600
                                          Facsimile: (415) 395-8095

16
                                          Matthew W. Walch (pro hac vice)
17                                        matthew.walch@lw.com
                                          Russell Mangas (pro hac vice)
18                                        russell.mangas@lw.com
                                          Laura Zenzerovich (pro hac vice)
19                                        laura.zenzerovich@lw.com
                                          330 North Wabash Avenue, Suite 2800
20                                        Chicago, Illinois 60611
                                          Telephone: (312) 876-7700
21                                        Facsimile: (312) 993-9767

22                                        Stephen D. O'Donohue (pro hac vice)
                                          stephen.odonohue@lw.com
23                                        1271 Avenue of the Americas
                                          New York, NY 10020
24                                        Telephone (212) 906-1200
                                          Facsimile (212) 751-4864

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Razi Safi (*pro hac vice*)
*razi.safi@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*Attorneys for Defendant XP Power LLC*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

DEFENDANT'S MOTION TO ALTER OR AMEND
JUDGMENT UNDER RULE 59
5:20-cv-06408-NC