# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> HYTERA COMMUNICATIONS CORPORATION LTD., et al., <br><br> Defendants. | Case No. 1:17-cv-01973 <br><br> Hon. Charles R. Norgle |

## ORDER

Defendant Hytera Communications Corporation Ltd.'s motion for instructions under Local Rule 54.3(g) [1187] [1188] is denied. Plaintiffs' supplemental motion for attorneys' fees from Hytera Communications Corporation Ltd. [1203] is granted. The Court awards attorney fees to Plaintiffs from Hytera Communications Corporation Ltd. in the amount of $34,244,385.50.

## MEMORANDUM OPINION

Plaintiffs, Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD., prevailed on their trade secret misappropriation and copyright infringement claims against Defendants, Hytera Communications Corporation Ltd., Hytera America, Inc., and Hytera Communications America (West), Inc., ultimately securing an award from the Court totaling $543.7 million, Dkt. 1099, as well as a reasonable royalty that the Court will soon determine, Dkt. 1097, 1105, 1112. Motorola thereafter moved for attorney fees from Hytera Communications Corporation Ltd.,[1] which the Court granted as to Motorola's entitlement to reasonable attorney fees as the prevailing party. Dkt. 1156 at 4. However, the Court denied Motorola's initial attorney fee motion as to the amount of the fee award because the parties failed to comply with the pre-

---

[1] Motorola does not seek fees from the other Hytera Defendants because the case was automatically stayed against them as a result of their voluntary petitions under chapter 11 of the Bankruptcy Code. Dkt. 981.

motion requirements under Local Rule 54.3. Ibid. The Court instructed the parties to comply with Local Rule 54.3 and granted Motorola leave to file a supplemental motion on the amount of the attorney fee award if the parties were unable to reach an agreement. Ibid.

Now before the Court are two motions. First is Hytera's motion for instructions under Local Rule 54.3(g), in which Hytera requests discovery from Motorola on the billing arrangement between Motorola and its counsel as well as counsel's billing records for the other matters that were included in counsel's flat fee invoices to Motorola. Second is Motorola's supplemental motion for attorney fees, in which Motorola ultimately requests $34,244,385.50.

## I. LEGAL STANDARD

On Motorola's supplemental attorney fee motion, where the only remaining issue is the amount of reasonable attorney fees to which Motorola is entitled, the starting point for reasonable fees is calculation of a lodestar, each attorney's reasonable hourly rate multiplied by the number of hours the attorney reasonably expended. Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014). Although the lodestar is presumptively reasonable, ibid., it may be adjusted based on factors like the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation, Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856-57 (7th Cir. 2009).

## II. ANALYSIS

Motorola argues that its attorneys' hourly rates, which range from $555 to $1565, and the 35,005 total hours they expended are reasonable based on the complexity of the case and Motorola's preemptive reduction in the hours and fees actually incurred. Hytera objects to the reasonableness of both the rates and hours of Motorola's counsel.

2

## A. The hourly rates of Motorola's counsel sought by Motorola are reasonable.

Hytera's first argument against the reasonableness of the rates charged by Motorola's counsel overlaps with Hytera's arguments in its motion for instructions. In each, Hytera raises concerns about the billing arrangement between Motorola and its counsel in which Motorola's counsel periodically invoiced Motorola large amounts for this litigation and numerous other matters related to Hytera with little explanation. Hytera claims that arrangement makes it impossible for it or even for Motorola to know how much of each invoice was related to this litigation, and how many hours and at what hourly rate contributed to the portion of each invoice related to this litigation. In its motion for instructions, Hytera insists that it needs that and more information to be able to calculate an effective billing rate for Motorola's counsel in this litigation. And in its response to Motorola's supplemental attorney fee motion, Hytera suggests that Motorola's requested award should be reduced considerably because Motorola has not produced any evidence of what amounts and what rates Motorola actually paid its counsel in this litigation.

But, as Motorola explains, Hytera's arguments miss the mark. To begin, Hytera's suggestion that Motorola has not produced any evidence of what amounts and what rates Motorola actually paid its counsel in this litigation is not true. Sure, the invoices that Motorola produced from its counsel aggregated fees related to several matters other than this litigation with little explanation and without attaching detailed billing records. But the invoices and their lack of detail are a red herring. Motorola has produced and submitted all time-keeping entries for the fees it seeks, which Hytera cannot dispute given its objections, addressed below, to a variety of the entries. The time-keeping entries also include the applicable hourly rate, which were confirmed by declarations produced by Motorola. And Motorola produced and submitted a declaration from in-house counsel confirming that Motorola agreed to pay the applicable rates for each attorney who

3

performed work in this litigation. Further, contrary to Hytera's suspicion, Motorola's counsel expressly disclaimed the existence of any flat fee arrangement with Motorola to Hytera's counsel. Accordingly, the Court concludes that Motorola's production documents and declarations satisfied its obligations under Local Rule 54.3 to provide Hytera with the time, work, and hourly rate records on which its attorney fee request is based. Hytera's motion for instructions is therefore denied.

Hytera's opposition to Motorola's supplemental attorney fee motion on this point stresses its disbelief that Motorola has in fact paid to its counsel at least as much as Motorola seeks in attorney fees. Hytera characterizes the declaration of Motorola's in-house counsel that Motorola has paid at least $34,325,064 to its counsel related to this litigation as carefully worded to conceal the fact that Motorola is attempting to "use this fee petition to subsidize its global campaign against Hytera." Dkt. 1214 at 3. But the Court accepts the declaration for what it plainly says—that Motorola has paid its counsel more than $34 million for this litigation. Hytera's argument to the contrary pure speculation. And a more important point as to whether Motorola has or has not paid its counsel the fees the two agreed to is that, though perhaps "the *best evidence* of whether attorney's fees are reasonable is whether a party has paid them," Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008) (emphasis added), a party seeking attorney fees does not necessarily have to prove that the fees sought have in fact been paid to be found reasonable. Rather, reasonableness of hourly rates may also be supported by what the client agrees to pay, which also serves as an upper limit. Bell v. Lantz, 825 F.3d 849, 854 (7th Cir. 2016). As mentioned above, Motorola has established that it agreed to pay the applicable hourly rate for each attorney that performed work in this litigation.

To justify Hytera's proposed reduction in the attorney fees to which Motorola is entitled, Hytera also invokes Straight Path IP Grp., Inc. v. Cisco Sys., Inc., No. C 16-03463 WHA, 2020

4

WL 5522993, at *17 (N.D. Cal. Mar. 4, 2020) *report and recommendation adopted*, 2020 WL 2539002 (N.D. Cal. May 19, 2020), where a district court adopted a special master's report and recommendation awarding only half of the petitioner's documented flat monthly fees to its counsel where the petitioner failed to provide detailed billing records and invoices appeared to show that counsel's work involved other matters to limit the risk of fee stuffing or matter swapping. But however persuasive that case is on its own facts, this case's facts are completely distinguishable. Unlike Straight Path, Motorola and its counsel do not have any documented flat monthly fee billing arrangement. Instead, Motorola's counsel has disclaimed any such arrangement and Motorola's in-house counsel submitted declarations that acknowledge that Motorola agreed to pay applicable hourly rates for each attorney who performed work in this litigation. That Motorola received invoices from its counsel that aggregated the outstanding amounts due across multiple matters does not change that agreed billing arrangement. And Motorola has also submitted detailed and contemporaneous records of the time, tasks, and rates for which Motorola seeks fees.

Next, Hytera argues that the hourly rates that Motorola seeks to recover for each of its attorneys—between $555 to $1565—is unreasonable. On hourly rates, reasonableness is "based on the 'market rate' for the services rendered." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999). In other words, hourly rates must "be reasonable within the community." Jeffboat, LLC v. Dir., Off. Of Workers' Comp. Programs, 553 F.3d 487, 490 (7th Cir. 2009). But reasonableness of hourly rates is also dependent on the specific attorney's experience and qualifications. Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co., 570 F.3d 890, 905 (7th Cir. 2009). Thus, "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012). "'[T]he next best evidence' of the market rate for an attorney," is "'evidence of rates similarly experienced attorneys

in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" Ibid.

Instead of Motorola's proposed rates, Hytera suggests the Court should use the 75th percentile rates in Chicago from the American Intellectual Property Law Association 2019 Report of the Economic Survey—$415 for associates and $644 for partners—as the ceiling on reasonable rates. Hytera notes that courts regularly apply local 75th percentile rates in AIPLA reports as reasonable, including a case in which a party represented by Motorola's counsel successfully argued that hourly rates for attorney fees sought by the opposing party should be reduced to the 75th percentile rates in Texas from the 2011 AIPLA report. See Pact XXP Techs., AG v. Xilinx, Inc., No. 2:07-cv-563, 2013 WL 4735047, at *2 (E.D. Tex. Sept. 3, 2013); see also T&M Inventions, LLC v. Acuity Brands Lighting, Inc., No. 14 C-947, 2016 WL 7441650, at *1 (E.D. Wis. Dec. 27, 2016); Intellect Wireless, Inc. v. HTC Corp., No. 09 C 2945, 2015 WL 136142, at *7 (N.D. Ill. Jan. 8, 2015); Prenda Law, Inc. v. Godfread, No. 13-CV-4341, 2014 WL 2699817, at *3 (N.D. Ill. June 12, 2014).

Though rates in AIPLA reports can serve as proper points of reference for determining reasonable rates in intellectual property cases, they are not determinative. Though many courts have referenced AIPLA reports, other courts have referenced rates included in reports from Valeo Partners. See Ballinasmalla Holdings Ltd. v. FCStone Merch. Servs., LLC, No. 18-CV-12254 (PKC), 2020 WL 814711, at *2 (S.D.N.Y. Feb. 19, 2020); Howmedica Osteonics Corp. v. Zimmer, Inc., No. CV 05-897 (WHW)(CLW), 2018 WL 2378406, at *15-*16 (D.N.J. May 23, 2018); Ferriss v. All. Publ'g, Inc., No. 15-CV-05675-EMC, 2016 WL 7116110, at *14 (N.D. Ca. Dec. 6, 2016). Motorola references the Valeo 2019 Attorney Hourly Rate Report in support of the reasonableness of the hourly rates Motorola was charged and seeks.

Though the Court considers both AIPLA and Valeo reports proper points of reference for determining the reasonableness of hourly rates, other relevant considerations lead the Court to conclude that the hourly rates Motorola asserts are reasonable. First, the Court finds that in the context of this case the Valeo report on which Motorola relies includes data that is more comparable to Motorola's counsel than the AIPLA report as to rates of similarly experienced attorneys in the relevant community. This case is not a run-of-the-mill intellectual property case confined to the Chicago area. It is a case between global competitors with hundreds of millions of dollars at stake where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market." Jeffboat, 553 F.3d at 490. Additionally, the Court finds that the qualifications, experience, skills, and performance of Motorola's counsel justifies an hourly rate that exceeds the Chicago rates in the AIPLA report. Motorola also notes that the hourly rates charged by Hytera's counsel significantly exceeds the Chicago rates in the AIPLA report, which in the Court's view is likewise justified based on the qualifications, experience, skills, and performance of Hytera's counsel. Further, as mentioned above, though Hytera disputes the matter, the Court concludes that Motorola has submitted evidence that it in fact paid its counsel the hourly rates it asserts, which is "[t]he best evidence of an attorney's market rate." Johnson, 668 F.3d at 933. Accordingly, the Court concludes that Hytera's arguments and heavy reliance on the 2019 AIPLA report fail to establish "'a good reason why a lower rate is essential.'" People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1313 (7th Cir. 1996) (quoting Gusman v. Unisys Corp., 986 F.2d 1146, 1151 (7th Cir. 1993)).

## B. The hours sought by Motorola for time expended by Motorola's counsel are reasonable.

Hytera next objects to Motorola's requested hours as excessive, duplicative, and otherwise unreasonable. Hytera first suggests that the Court should reduce 17,554.3 of Motorola's claimed hours by 30% because the corresponding 3,113 time-keeping entries were block-billed or vague, whether on their own or because of Motorola's redactions. Hytera concedes that block billing is not a prohibited practice but notes that certain circumstances support reduction or outright exclusion of block billed time. But such circumstances exist only "when it becomes impossible to tell how much time was spent on specific tasks." Samirah v. Lynch, No. 03 CV 1298, 2015 WL 3524790, at *4 (N.D. Ill. June 1, 2015) (citing Nat'l Rifle Ass'n of Am. v. Vill. of Oak Park, 871 F. Supp. 2d 781, 791 (N.D. Ill. 2012)). And, importantly, the nature and complexity of a case is a significant factor in determining whether block billed entries "allow a reasonable assessment of the overall amount of properly compensable time." Phoenix Bond & Indem. Co. v. Bridge, Nos. 05 C 4095 and 07 C 1367, 2012 WL 6091112, at *7 (N.D. Ill. Dec. 7, 2012). In large and complex cases, "attorneys are routinely performing multiple tasks on any given day" such that "it is neither surprising nor inappropriate for them to aggregate their work into a single entry." Ibid. (citing Top Tobacco, L.P. v. N. Atl. Operating Co., No. 06 C 950, 2007 WL 2688452, at *4 (N.D. Ill. Sept. 6, 2007)). This case was not just large and complex. It is not an understatement to say that this case falls in the category of the largest and most complex. And the Court concludes that the entries Hytera identifies as block billed nevertheless "are sufficiently detailed to allow a determination that those entries are reasonable." Baier v. Rohr-Mont Motors, Inc., 175 F. Supp. 3d 1000, 1024 (N.D. Ill. 2016).

Much the same analysis applies to the entries that Hytera characterizes as vague. The overarching standard is whether the entries are sufficiently detailed to allow a determination that

8

those entries are reasonable. Ibid. Most of the entries Hytera objects to on vagueness grounds are generic references to preparing for trial without detailing which specific trial-related tasks. But "[f]or lawyers preparing for trial . . . it is common and reasonable for them to record preparation time as just that—trial preparation—without further specificity." Phoenix Bond & Indem. Co., 2012 WL 6091112, at *7 n. 5. In fact, "[i]t would be entirely unreasonable to impose, at the risk of forfeiting a fee award, a standard that would require them to disaggregate such time into its components" because "[t]rial preparation involves a variety of interrelated tasks that cannot be neatly subdivided for billing purposes." Ibid. Hytera's citation to First Midwest Bank v. City of Chi., 337 F. Supp. 3d 749, 796 (N.D. Ill. 2018), where the court reduced by half a paralegal's single entry for 174.5 hours for "preparing for and assisting at trial" is unhelpful. So is Gibson v. City of Chi., 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012), where the court reduced by half, 3.55 hours, time related to vague entries for "'preparation' for various court appearances."

Hytera also requests a 30% reduction in the 194 hours associated with 54 entries that Motorola partially redacted because, according to Hytera, those redactions render the entries vague. Redaction of time records are allowed by Local Rule 54.3(d)(5)(A), but "should be limited to the extent necessary to protect" privileged information "while, to the extent possible, maintaining the opposing party's ability to determine the reasonableness of the entry." Kurgan v. Chiro One Wellness Centers LLC, No. 10-cv-1899, 2015 WL 1850599, at *7 (N.D. Ill. Apr. 21, 2015). Hytera selectively quotes Reid v. Unilever United States, Inc., No. 12 C 6508, 2015 WL 3653318, at *8 (N.D. Ill. June 10, 2015) for the proposition that a court may disallow redacted entries if the entries are "so redacted that it is 'difficult if not impossible' for a court to sufficiently evaluate the services rendered and fees charged." But Hytera disregards the clause in the same sentence that adds a condition to rejection of redacted entries. Not only must the redactions render

9

the entries difficult or impossible to sufficiently evaluate them, but they must also result in "'the exclusion of basic material information which undermines the integrity of the entire petition.'" Reid, 2015 WL 3653318, at *8 (quoting Vitug v. Multistate Tax Comm'n, 883 F. Supp. 215, 223-24 (N.D. Ill. 1995)). Though Motorola offered to make unredacted entries available for in camera review, the Court finds that is not necessary because the redacted entries are minor and do not undermine the entirety of Motorola's request. Additionally, the Court's review of the redacted entries allows the Court to conclude that the entries relate to this litigation and are reasonable.

In their response to Motorola's supplemental motion, Hytera does not address the other entries that it identified as vague, so the Court declines to address them too. See Baier, 175 F. Supp. 3d at 1024 ("If a defendant fails to 'specifically object to the requested attorneys' fees, the Court will generally award the requested fees." (quoting Boim v. Quranic Literacy Inst., No. 00 C 2905, 2003 WL 1956132, at *7 (N.D. Ill. Apr. 24, 2003))).

Hytera next argues that Motorola's fees should be reduced for overstaffing at depositions and more generally. As to overstaffing at depositions, Hytera acknowledges that Motorola agreed not to seek fees for attendance at depositions by more than two attorneys, but Hytera insists that only one attorney's attendance at defensive depositions is reasonable and views any more than that as unreasonable training opportunities for associates. To be sure, for some cases, like relatively simple contract disputes or even somewhat straightforward constitutional claims, it may be unreasonable to award fees for more than one attorney to attend a deposition. See, e.g., Entertainment Software Ass'n v. Blogojevich, No. 05 C 4265, 2006 WL 3694851, at *8 (N.D. Ill. Aug. 9, 2006) ("Two or three attorneys regularly attended depositions when one would have sufficed" in case raising First Amendment challenge to laws that restricted sales of violent and sexually explicit video games); Chi. Messenger Serv. V. Nextel Commc'ns, Inc., No. 01 C 8820,

2005 WL 643270, at *3 (N.D. Ill. Mar. 16, 2005) (in contract dispute, two attorneys attending depositions of three witnesses and to a motion call to extend discovery was unreasonable). But attendance of two lawyers at a deposition is not inherently unreasonable and may be reasonable particularly in complex cases with voluminous documents. See, e.g., Littlefield v. Mack, 750 F. Supp. 1395, 1405 (N.D. Ill. 1990) (presence of more than one attorney at deposition is standard practice and particularly appropriate in complex case with numerous exhibits); Phoenix Bond & Indem. Co., 2012 WL 6091112, at *8 (multiple attorneys charging for, among other things, deposition preparation and attendance reasonable based on complexity of case and evidence). The Court reiterates that this case is in the category of the largest and most complex, with exceptionally voluminous documents. Motorola's limited request for attendance of at most two attorneys at depositions is reasonable.

Hytera concludes that a global deduction of 20% is warranted because of partner-heavy staffing and other overstaffing for internal meetings, motions, trial attendance, witness preparation, expert reports, and administrative tasks. In some sense, Hytera generally attacks the overall "billing judgment" of Motorola's counsel in a sense arguing counsel could not have properly and reasonably billed Motorola for the fees it seeks from Hytera. True, under the reasonableness standard, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from his fee submission." Hensley v. Eckhart, 461 U.S. 424, 434 (1983). But Motorola has done just that. Motorola excluded from its fee request time expended on pre-litigation investigation, this fee motion, and post-judgment enforcement proceedings, as well as all time expended by paralegals and other staff and time expended by

11

attorneys who worked fewer than 1,000 hours on this litigation (including, as Hytera notes, nine partners who entered appearances, at least four of whom examined witnesses at trial).

Ultimately, Hytera's objections to Motorola's requested hours are, as Motorola suggests, largely improper hypocritical attacks that the Local Rule 54.3 process is designed to prevent. Farfaras v. Citizens Bank & Tr. Of Chicago, 433 F.3d 558, 569 (7th Cir. 2006). Accepting Hytera's arguments would require the Court to conclude that Motorola should be awarded fees for about 10,000 fewer hours than Hytera's counsel expended in this litigation with similar staffing and billing practices. Like Motorola, Hytera too engaged in block billing, generic trial preparation entries, and use of redactions. Hytera's counsel also staffed attorneys who billed at partner-level rates at similar levels to Motorola's counsel. Based on those examples, among others, the Court rejects Hytera's position. Hytera claims that its billing practices and recordkeeping as a defendant should not be viewed the same way as Motorola's because only Motorola, as the plaintiff, could have expected to seek attorney fees after prevailing. But the Court is not convinced by Hytera's argument on that point because both Motorola and Hytera are represented by large elite law firms that maintain staffing, recordkeeping, and billing practices that are very regimented even if not perfect or perfectly efficient. See Phoenix Bond & Indem. Co., 2012 WL 6091112, at *7 ("this sort of timekeeping is the norm in the marketplace").

The Court reiterates that the most significant factor that supports the Court's finding that Motorola's requested fees are reasonable is the scale and complexity of this case. Hytera's objections largely disregards that factor in its response to Motorola's supplementary motion, as well as the response's selective citations to caselaw. But this litigation has spawned more than 1,200 docket entries and, as Motorola notes, it involved more than 68 million pages of documents, 528 hours of depositions, unparalleled motion practice, and a trial that occurred over more than

three and a half months where several thousand exhibits were exchanged of which 761 were ultimately admitted. And Hytera's conduct in this litigation significantly added to Motorola's litigation costs because, as the Court concluded in its prior order finding that Motorola is entitled to reasonable attorney fees, many of Hytera's litigating positions were objectively unreasonable. Dkt. 1156 at 4. Nevertheless, Hytera's competent counsel consistently manifested their determination to do their professional best on behalf of their client. Accordingly, the Court grants Motorola's supplemental motion and awards attorney fees to Motorola from Hytera Communications Corporation Ltd. in the amount of $34,244,385.50.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 15, 2021

13