Adam Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay Deoras (SBN: 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Attorneys for Plaintiffs
COMET TECHNOLOGIES USA INC.,
COMET AG AND YXLON
INTERNATIONAL GMBH

Sharre Lotfollahi (SBN: 258913)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900

Leslie M. Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Kat Li (*pro hac vice*)
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9100
Facsimile:    (512) 678-9101

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMET TECHNOLOGIES USA INC., a Delaware corporation, COMET AG, a Swiss corporation, and YXLON INTERNATIONAL GMBH, a German corporation,<br><br>Plaintiffs,<br><br>v.<br><br>XP POWER LLC, a California Limited Liability Company,<br><br>Defendant. | CASE NO. 5:20-cv-6408<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRE-JUDGMENT INTEREST**<br><br>Judge: Hon. Nathanael Cousins<br>Hearing Date: December 21, 2022<br>Hearing Time: 1:00 PM<br>Courtroom: 5 |

Plaintiffs Comet Technologies USA Inc., Comet AG, and YXLON International GmbH (collectively, "Comet" or "Plaintiffs") respectfully request an order amending the Final Judgment to include pre-judgment interest as set forth in Comet's proposed order, filed concurrently herewith.

## I.    INTRODUCTION

XP began plotting its theft of Comet's trade secrets nearly five years ago.  *See, e.g.*, PX3004; PX3211.  Although Comet quickly uncovered the theft and commenced legal action to protect its trade secrets, XP hid the extent of its theft of Comet's trade secrets for years, all the while using those trade secrets to develop next generation RF Matching Network and Generator products so it could compete with Comet.  *See* Trial Tr. 364:1–11; 459:12–484:16, 486:17–488:8.  In March 2022, a jury held XP to account, finding: (1) Comet owned all four trade secrets presented to the jury—trade secrets D, E, L, and S; (2) XP misappropriated three of the four trade secrets; and (3) XP's misappropriation was willful and malicious.  Dkt. 406.  The jury awarded Comet $20 million in damages based on XP's unjust enrichment (in the form of R&D costs it avoided spending due to the theft) from its misappropriation of Comet's trade secrets, and an additional $20 million in punitive damages for the willful and malicious nature of XP's misappropriation.  The Court granted Comet's motion for an injunction as to trade secrets D, E, and L and entered final judgment under Rule 54(b) on September 30, 2022.  Dkt. 474.

To ensure that the full amount of the benefit that XP obtained through its misappropriation is disgorged, Comet now seeks an award of prejudgment interest on the jury's damages award.  In actions brought under federal law, an award of prejudgment interest "is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities," *see Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971), and here, the balance of equities clearly favors awarding Comet prejudgment interest.  Accordingly, Comet respectfully requests that Court award prejudgment interest in the amount of $4,341,761 on the jury's damage award to restore the interest that accrued on Comet's damages over the past four years and to account for future interest until the Court's judgment is fully satisfied by XP. *See AgroFresh, Inc. v. Essentiv LLC*, No. 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020).

## II.    LEGAL STANDARD

An award of prejudgment interest serves as an element of compensation necessary to make an aggrieved plaintiff whole.  *See, e.g.*, *Barnard v. Theobald*, 721 F. 3d 1069, 1078 (9th Cir. 2013); *see*

*also Schneider v. Cnty. of San Diego*, 285 F. 3d 784, 789 (9th Cir. 2002) (explaining that prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."); *AgroFresh*, Inc., 2020 WL 7024867, at *26 ("Prejudgment interest is awarded to restore a plaintiff to the position it would have been in had there been no wrongdoing."). Generally, "[t]he award of pre-judgment interest in a case arising under federal law rests within the sound discretion of the court." *Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam*, 952 F.2d 1152, 1162 (9th Cir. 1991); *see Termine ex rel. Termine v. William S. Hart. Union High School Dist*., 288 Fed. Appx. 360, 363 (9th Cir. 2008) ("Compound prejudgment interest is the norm in federal litigation and the decision whether to award it is left to the trial court's discretion."); *In re: Cathode Ray Tube (CRT) Antitrust Litig*., C-07-5944 JST, 2016 WL 6216664, at *1 (N.D. Cal. Oct. 25, 2016) ("Because federal statutes do not define the rate of prejudgment interest, an award of prejudgment interest in a federal question case is addressed to the sound discretion of the trial court."). Courts have awarded prejudgment interest for claims arising under the DTSA. *See, e.g.*, *Motorola Solutions, Inc. v. Hytera Communications Corp. LTD.*, No. 1:17-cv-01973, Dkt. 1225 (N.D. Ill. Aug. 10, 2021) (order awarding prejudgment interest on compensatory damages awarded under the DTSA and Illinois Trade Secrets Act ("ITSA"); *AgroFresh, Inc.,* 2020 WL 7024867 (D. Del. Nov. 30, 2020).

The broad discretion afforded the trial court in awarding prejudgment interest also "extends to a determination of the appropriate interest rate to apply." *See AgroFresh, Inc.*, 2020 WL 7024867, at *26 (awarding prejudgment interest "for unjust enrichment resulting from trade secret misappropriation" under the DTSA and assessing such interest "compounded quarterly at the prime rate."). Although prejudgment interest is typically assessed at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment[,]" *see* 28 U.S.C. § 1961, the trial judge may apply a different rate where, "on substantial evidence . . . the equities of a particular case require a different rate." *See Davis v. Prison Health Services*, No. C-09-2929, 2012 WL 4462520, at *6 (N.D. Cal. Sept. 25, 2012) (quoting *Ford v. Alfaro*, 785 F. 2d 835, 842 (9th Cir. 1986) (awarding prejudgment interest at

a rate of 5.07% because "the use of the current federal interest rate" of .11% "would, in effect, deny plaintiff prejudgment interest . . ..").

### III.    ARGUMENT

Prejudgment interest should be awarded to ensure that Comet is not penalized, and XP does not maintain any unjust benefit, from the passage of time between the beginning of XP's misappropriation and the judgement in this case. *See Barnard*, 721 F. 3d at 1078; *see also Schneider*, 285 F. 3d at 789 (9th Cir. 2002). Here, the jury awarded $20 million in R&D costs that XP avoided spending due to its misappropriation. Dkt. 406. XP's gains from its illegal activities thus include the $20 million that its theft allowed it to keep. *S.E.C. v. Cross Fin. Servs., Inc.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). XP's gains also include interest that accrued on the $20 million its theft allowed it to save (and hence keep), from the beginning of XP's theft through the final judgment in this case. *Id.* ("The ill-gotten gains include prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity.").

Additionally, because XP's infringement was willful and malicious, and the Treasury Bill rate was historically low during the relevant period (as much reported in the current economic environment), prejudgment interest should be calculated using the prime rate, compounded quarterly, because it is the "most accurate estimate of the interest rate [Comet] would have charged [XP], a corporation, for a $20 million loan." *Atmel Corp. v. Silicon Storage Technology, Inc.*, 202 F. Supp. 2d 1096, 1098–1101 (N.D. Cal. 2002) (awarding prejudgment interest at the prime rate, compounded quarterly, because it more accurately estimated the interest rate the plaintiff would have charged the defendant for the damages amount); *Illumina, Inc. v. BGI Genomics Co., Ltd.*, No. 19-cv-03770-WHO, 2022 WL 899421, at *31–*32 (N.D. Cal. Mar. 27, 2022) (similar); *see also  Agio Int'l Co., Ltd. v. Zhejiang Longda Force Co., Ltd.*, No. 1:15-cv-00192-MR, 2019 WL 1302634, at *6 (W.D.N.C. Mar. 21, 2019) (awarding prejudgment interest at the prime rate, compounded quarterly, noting that "[i]n a case . . . where the infringing party has acted wrongfully over such an extended period of time . . . compound interest can be properly awarded."); *see Osborn v. Griffin*, 865 F. 3d 417, 456–460 (6th Cir. 2017) (awarding prejudgment interest, compounded annually on the plaintiff's disgorgement claims where the defendants' conduct was "highly unjust and inequitable . . ..").  Additionally, the prime rate more accurately approximates the rate that Comet, a large corporation, would have been charged by a bank on

a loan for the same amount. *See Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-EMC, 2019 WL 2389150, at *19, *21 (N.D. Cal. June 5, 2019); Ex. 1, Malackowski Decl. ¶¶ 9–12.

Comet's proposed award of prejudgment interest is clearly correct under the law for at least the following reasons.

*First*, awarding prejudgment interest based on damages for unjust enrichment is appropriate. *See, e.g.*, *AgroFresh, Inc.*, 2020 WL 7024867, at *26 (awarding prejudgment interest "for unjust enrichment resulting from trade secret misappropriation" under the DTSA); *Sikirica v. Wettach*, 511 B.R. 760, 772 (W.D. Penn. 2014) ("[P]rejudgment interest is particularly appropriate where 'a defendant holds money or property which belongs in good conscience to the plaintiff, and the object of the court is to force disgorgement of his unjust enrichment.'"); *see also Osborn v. Griffin*, 865 F. 3d 417, 456– (6th Cir. 2017) (awarding prejudgment interest on the plaintiff's disgorgement claims where the defendants' conduct was "highly unjust and inequitable . . ..");  *Shamrock Power Sales, LLC v. Scherer*, No. 2016 WL 7647597, at *14–*15 (S.D.N.Y. 2016) (awarding prejudgment interest on unjust enrichment and disgorgement damages for misappropriation of trade secrets).  Awarding prejudgment interest in cases such as this serves to compensate plaintiffs for "delay in receiving" damages "by partially offsetting the reduction in the value of the . . . [damages] caused by inflation," *see Donovan v. Sovereign Sec, Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984), and "to ensure that wrongdoers do not profit from their illegal conduct." *See Sec. & Exch. Comm'n v. Rothenberg*, 428 F. Supp. 3d 246, 249 (N.D. Cal. 2019) (noting that, where the defendant "unlawfully received" a benefit, it is "the rough equivalent of an 'interest free loan . . ..'").

At trial, Comet's damages expert, James Malackowski, analyzed Comet and XP's respective investments in RF technology research and development prior to XP's misappropriation.  Mr. Malackowski explained that Comet had invested over $30 million dollars in R&D associated with its trade secrets as of February 2018. *See* Trial Tr. 683:20–684:10. The jury credited that testimony and ultimately awarded Comet $20 million in damages based on its various findings in the verdict. *See* Dkt. 406.  The jury's determination confirmed that XP's misappropriation resulted in $20 million in avoided costs calculated based on Comet's actual R&D investments up to the start of 2018, and accordingly that Comet had been damaged in the amount of $20 million dollars.  But that $20 million does not reflect the appreciation in value that would have naturally occurred between February 2018, when XP's

misappropriation began, and the time the judgment ultimately issued in 2022.  Instead, Comet was "denied . . . use" of the damages award from February 2018 through entry of judgment, so an award of prejudgment interest here would "serve[] the compensatory purpose [of prejudgment interest] by making up for the delay in receiving the money . . . and by partially offsetting the reduction in value . . . caused by inflation."  *See Donovan*, 726 F.2d at 58.  Not only is prejudgment interest appropriate to compensate Comet for the additional harm it suffered as a result of being denied use of the funds associated with the damages amount earlier, an award of prejudgment interest here would also serve to disincentivize trade secret misappropriators, like XP, from engaging in delay tactics and "enjoy[ing] an interest free loan" on ill-gotten gains.  *See id.*; *see also Sec. & Exch. Comm'n v. Rothenberg*, 428 F. Supp. 3d at 249 (noting that, where the defendant "unlawfully received" a benefit, it is "the rough equivalent of an 'interest free loan'" and that "[d]isgorgement, therefore, typically includes prejudgment interest to ensure that wrongdoers do not profit from their illegal conduct."); *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1190 (D. Nev. 2009) (noting that prejudgment interest "removes any economic incentive to delay" payment for ill-gotten gains).

The Southern District of New York's decision in *Syntel v. TriZetto* denying prejudgment interest does not suggest a different result, as here both the facts and law are very different.  In the Second Circuit, "[p]rejudgment interest is generally not awarded."  *See Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020).  That presumption does not apply in the Ninth Circuit. *See Home Sav. Bank, F.S.B. by Resolution Trust Corp.* 952 F.2d at 1162; *Termine ex rel. Termine*, 288 F.App'x. at 363 ("Compound prejudgment interest is the norm in federal litigation and the decision whether to award it is left to the trial court's discretion.").  Moreover, the compensatory damages award in *TriZetto* was $285 million, which is more than 14 times the size of the award here.  In addition, the *TriZetto* Court relied on the award of punitive damages (also 14 times the punitive damages award here) to deny prejudgment interest, but in the Ninth Circuit prejudgment interest is regularly awarded along with punitive damages.  *See, e.g.*, *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1053–1056 (9th Cir. 2013) (awarding both punitive damages and prejudgment interest); *O2 Micro*, 420 F. Supp. 2d at 1076–1077 (awarding both punitive damages and prejudgment interest); *Atmel Corp. v.*

*Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101, 1108 (N.D. Cal. 2002) (awarding both enhanced damages and prejudgment interest).

*Second*, prejudgment interest should be calculated on the jury's award of $20 million starting in February 2018, when Messrs. Beuerman and Mason began their employment at XP. Trial Tr. at 382:5-9, 393:15-25. That is when Comet's damages began accruing and the benefit to XP began. Messrs. Beuerman and Mason took all of Comet's trade secrets with them when they left Comet and began accessing and using Comet's trade secrets in their work at XP immediately. *Id.*; *See O2 Micro Intern Ltd. v. Monolithic Power Systems Inc.*, 420 F. Supp. 2d 1070, 1077 (N.D. Cal. 2006) (assessing prejudgment interest as of the date of an email indicating the defendant's intent to misappropriate the plaintiff's trade secrets). As confirmed consistently at trial, XP realized the full benefit of its illegal activities as soon as Messrs. Beuerman and Mason began their roles at XP in February 2018 because it had thousands of Comet's trade secret files "at [its] fingertips," and could, and did, use Comet's trade secrets at its leisure. *See, e.g.*, Trial Tr. 444:25–445:24, 456:10–458:19, 466:23–467:6, 564:18–565:1, 700:1–14. XP went on to exploit its misappropriation for years, causing significant damage to Comet by using Comet's trade secrets in an effort to develop RF match and generator technologies, and to enter the market as a direct competitor of Comet's despite not having the technological capability to develop competitive RF match and generator products on its own. Trial Tr. 685:5–690:4. As such, Comet should be awarded prejudgment interest from February 2018 through the judgment.[1] *Id.*

*Third*, given the historically low T-Bill rate during the relevant period, and the egregiousness of XP's damage to Comet, prejudgment interest should also be awarded based on the prime rate, compounded quarterly. Courts in the Northern District of California regularly exercise their discretion to apply the prime rate instead of the 28 U.S.C. §1961 rate in circumstances like this case. *See, e.g.*, *Illumina, Inc.*, 2022 WL 899421, at *31–*32 (awarding pre-judgment interest based on the prime rate,

---

[1] At the latest, prejudgment interest should begin to accrue as of the date of Comet's first complaint against Mr. Beuerman—March 6, 2018. *See Agrofresh, Inc.*, 2020 WL 7027867, at *27 (assessing prejudgment interest from the date the complaint was filed where neither the plaintiff nor the defendant pointed "to record evidence as to when the trade secret misappropriation causes of action actually began to accrue against [d]efendants under the DTSA or PUTSA . . ..").

compounded annually); *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1042–43 (N.D. Cal. 2016) (awarding pre-judgment interest based on the prime rate, compounded quarterly).

Assessing prejudgment interest on Comet's damages award here based on the Treasury bill rate "would, in effect, deny [Comet] prejudgment interest . . .." *See Davis*, 2012 WL 4462520, at *6. The 1-year constant maturity Treasury yield rate for the relevant period (February 15, 2018–September 30, 2022) primarily varied from a low of .04% to a high of 2.7%, and has, in the last two months, reached highs of 4.17%. Ex. 1, Malackowski Decl. ¶ 12, Appendix 7.1. Applying these rates would effectively deprive Comet of *any* prejudgment interest for the period where the Treasury bill rate was historically low, regardless of how the interest was compounded. However, the annual prime rate for the same period ranges from 3.25% to 5.28%, Ex. 1, Malackowski Decl. ¶ 15, Appendix 6.1, which would more adequately compensate Comet for XP's willful and malicious misappropriation. Indeed, the DTSA itself contemplates assessing prejudgment interest using the prime rate for wrongful seizure, *see, e.g.*, 18 U.S.C. 1836(b)(2)(G) (citing 15 U.S.C. 1116(d)(11)), and courts have taken this to heart, awarding prejudgment interest for judgments under the DTSA at the prime rate, compounded quarterly. *See AgroFresh, Inc.*, 2020 WL 7024867, at *26–*27 (assessing prejudgment interest "compounded quarterly at the prime rate" on unjust enrichment damages awarded under the DTSA, and refusing to apply the Treasury bill rate, noting that "it is not necessary for [p]laintiff to 'demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate.'"). Further, the prime rate more accurately approximates Comet's own borrowing rate. *See Opticurrent, LLC*, 2019 WL 2389150, at *19, *21; Ex. 1, Malackowski Decl. ¶¶ 9–12.

In addition, other courts have justified awards of prejudgment interest compounded quarterly where, as here, the defendants wrongful conduct was particularly severe. *See Agio Int'l Co., Ltd*, 2019 WL 1302634, at *6; *see also Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 4346502, at *2 (D. Del. Sept. 12, 2019) (the "prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time."). Because applying interest at the prime rate, compounded quarterly, will more appropriately compensate Comet for XP's willful and malicious misappropriation, and better deter XP from future unlawful activity, such an award would more closely track the purpose behind prejudgment interest awards.

Comet respectfully requests that prejudgment interest, calculated on the jury's damages award, using the prime rate compounded quarterly, be awarded in the amount of $4,341,761.

### IV.    CONCLUSION

For the foregoing reasons, Comet respectfully requests the Court award Comet prejudgment interest in the amount of $4,341,761.  If, however, the Court decides that prejudgment interest based on the Treasury bill rate is appropriate, the prejudgment interest award would be $1,309,245. *See* Ex. 1, Malackowski Decl. ¶¶ 16–17, Fig. 3, Appendix. 4.0.

DATED: November 11, 2022

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Sharre Lotfollahi*

Adam R. Alper (SBN: 196834)
adam.alper@kirkland.com
Akshay Deoras (SBN: 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Michael W. De Vries (SBN: 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 S. Flower Street
Los Angeles, CA 90071
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500

Sharre Lotfollahi (SBN: 258913)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900

Leslie M. Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Kat Li (*pro hac vice*)
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9100
Facsimile:    (512) 678-9101

Attorneys for Plaintiffs
COMET TECHNOLOGIES USA INC., COMET AG
AND YXLON INTERNATIONAL GMBH